E-filing

Kenneth Barker and Lois Anne Barker,
2349 Royal Oaks Drive,
Alamo, CA.94507.
Phone ( 925 ) 820-0198.
Fax.    ( 925) 820-0198.

Plaintiffs In Pro Se.

**FILED**

**JUN 1 7 2008**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ADR

| | |
|---|---|
| KENNETH BARKER<br>and<br>LOIS ANNE BARKER<br><br>Plaintiffs,<br><br>vs.<br><br>ROUND HILL COUNTRY CLUB;<br>CAROLE CARLUCCIO; GREG<br>GONSALVES; DAVID PLOTNIK;<br>PETE DAVIS; MARVIN B. STARR;<br>MILLER STARR REGALIA; DOES<br>1 to 50 inclusive.<br><br>Defendants. | CASE NO._____<br><br>C08-02977<br><br>COMPLAINT FOR VIOLATIONS OF<br>THE RACKETEER INFLUENCED<br>AND CORRUPT ORGANIZATIONS<br>ACT (18USCS 1961-1968)<br>(RICO)<br><br><br>DEMAND FOR JURY TRIAL |

1.

**COMPLAINT**

Plaintiffs, Kenneth and Lois Anne Barker, allege:

1 ) **Jurisdiction.** This Court has jurisdiction over this complaint because it arises under the

laws of the United States.

2 ) **Venue.** Venue is appropriate in either Oakland, or San Francisco, because the

complained of acts, events, and omissions occurred in Contra Costa County.

1.

3 ) **Intradistrict Assignment.** This lawsuit could be assigned to either the Oakland

Division of this Court or the San Francisco Division of this Court, because the complained

of acts, events or omissions which gave rise to this lawsuit occurred in Contra Costa

County.

4 ) Plaintiffs do not know the true name and capacities of defendants sued herein as DOES

1 through 50 inclusive, and plaintiffs sues these defendants by such fictitious names and

will amend this complaint to allege their true names and capacities when the same have

been ascertained.

5 ) Defendant,Round Hill Country Club, is now and at all times herein mentioned was, a

corporation organized and existing under the laws of the State of California, with a place

of business in Contra Costa County, California.

6 ) In August 1974, plaintiffs purchased their home ( hereinafter premises ) which is located

at 2349 Royal Oaks Drive, Alamo, CA 94507. **( Exhibit No. 1 )**

7 ) Plaintiffs premises is located the Round Hill Estates Development at the end of

the Round Hill Country Club ( hereinafter RHCC ) golf course driving range. The lot was

sold by Round Hill Estates ( the predecessor company of RHCC ) to a builder in 1972 for

the purpose of building and selling a house on the property. The house was built in

completed in 1973 and purchased by plaintiffs in August 1974.

8 ) Prior to purchasing the premises in 1974,  plaintiff diligently checked the length and

alignment of the golf course driving range and determined it was 270 yards long.

Additionally, the premises were protected from trespass from driving range golf balls by a

fifteen ( 15 ) high wire mesh fence which was  located  on the premises at the at the end the

driving range. Therefore, to trespass onto the premises, a range golf ball had to be able to carry the fifteen ( 15 ) foot high wire mesh fence at a distance of 270 yards, which even for professional golfers, was well nigh impossible in 1974.

9 ) The premises title contained an EASEMENT ( **Exhibit No. 2** ). Plaintiffs expressly relied upon the terms, conditions, and legal promises, contained in the Easement when purchasing the premises. Defendants, however, have fraudulently refused to comply with the terms of the Easement, and thereby, sold the lot for mis represented purposes, and damaged plaintiffs. As further explained below, plaintiff alleges that by their conduct defendants have violated the " Racketeer Influenced And Corrupt Organizations Act ( 18 USCS 1961- 1968 ) ( herein after RICO ) because they are associated in fact, acting jointly as a racketeering enterprise, engaged in an illegal scheme via a pattern of fraud, mis representation, and conspiracy, using the U.S. Mail and Interstate Wires to harm plaintiff for defendants illegal financial gain.

10 ) For about 22 years plaintiffs lived in peace and harmony with defendant Round Hill Country Club, ( hereinafter RHCC ) and it's predecessor companies, Round Hill Estates, Round Hill Golf and Country Club, and Round Hill Enterprises. There were no disputes between plaintiff and any of these parties.

11 ) Commencing, however, in about 1995, defendants started making preparations for making major changes to the golf course club house; the swimming pool; tennis courts, golf course and driving range. As a proximate result of these changes, driving range golf balls began to repeatedly trespass onto plaintiffs premises. Additionally, as defendants made even further changes to the golf course and driving range, the invasion of plaintiffs

3.

premises from driving range golf balls became ever more serious, and it is now intolerable.

12 ) Commencing in 1996 with completion in 1997, defendants tore down the existing club house and replaced it with a new  large 48,000 S.F. clubhouse, along with a new, relocated putting green, new club house landscaping, new golf cart path ways, and other significant golf course changes. These changes materially shortened and realigned the driving range. Thereafter, starting in about  2003,and completing in 2005, defendants made even further major changes to the golf course and driving range. **( Exhibit No.  3 )** As a proximate result of these changes, the driving  range is now between 160 yards to 200 yards in length, and plaintiffs premises are bombarded on a daily basis with driving range golf balls. Innumerable ( i.e. multi thousands ) driving range golf balls have now trespassed and invaded plaintiffs premises. Significantly, present day design standards for new golf courses require driving ranges to be at least 375 yards long. Thus, the driving range is far too short, and the crux of the problems.

13 ) Golf balls can be lethal. Plaintiffs, Kenneth Barker and Lois Anne Barker, have each been hit seven ( 7 ) times, numerous windows have been broken, and even plaintiffs beloved cat was  hit by a trespassing driving range golf ball. Therefore, because of the danger of being hit by a golf ball, plaintiffs are unable to use their gardens, or safely enjoy rooms with windows that face the driving range.

14 ) Since 1995, plaintiff has made hundreds of telephone call complaints to defendants Golf Pro Shop to complain about the golf ball trespass problems. Additionally, plaintiff has written numerous letters of complaint, and has had several meetings with defendant and it's attorneys. Although defendants made multiple promises to stop the golf ball trespass onto

4.

plaintiffs premises, their promises were simply bad faith fraudulent representations. The bombardment of plaintiffs premises is ongoing, and defendants have refused to stop their illegal bombardment of plaintiffs premises.

15 ) As a proximate result of defendants bombardment of plaintiffs premises with driving range golf balls, the value of the premises has been reduced by at least $600,000.00 from it's 2006 value. Critically,  plaintiffs attempts to sell the premises in 2006 were unsuccessful, because plaintiff had to disclose the golf ball trespass problems to potential buyers.

16 ) The Easement ( **Exhibit No. 2** ) states in material part in Contra Costa County Records Book 6965, Page 24,  the following:

" ( *c* )  *Second Party ( i.e. defendants ) shall indemnify First Parties ( i.e. plaintiffs )* *against any loss or damage which shall be caused by the exercise of said* egress ***or by any*** ***wrongful  or negligent act  or omission of Second Party or of its agents or employees in*** ***the course of their employment.***" ( emphasis added )

17 ) Unquestionably, the continual bombardment of plaintiffs premises with thousands of driving range golf balls, thus making the gardens unusable; rooms with windows unsafe; premises unsalable; and reducing the reasonable value of the premises by at least $600,000.00 is a :

"... ***wrongful or negligent act or omission of Second Party or of its agents or employees*** ***in the course of their employment.***".

Accordingly, pursuant to the terms of the Easement, defendant shall indemnify plaintiff which it has repeatedly refused to do.

5.

1

2  18 ) Defendants fraudulent refusal to comply with the Easement Agreement was further

3  confirmed by defendants letter of June 19, 2007.( **Exhibit No. 4** ) Using U.S. Mail the

4  letter from Marvin B. Starr, of the law firm of Miller Starr Regalia, states in material part,

5  the following:

6
7  " *Please be advised that the Board of Directors of the Round Hill Country Club has*

8  *concluded it will no longer pursue its futile attempt to find a mutually agreeable resolution*

9  *to whatever problem may exist with respect to the prevention of practice range balls from*

10  *landing on your property. "*

11
   That is a breach of the Easement, and fraud per se. That is a  predicate act and civil
12
13  RICO violation.

14  *19* ) The said letter further stated:

15  *"As such , from here on Round Hill Country Club will, on its own, take such*

16  *preventative steps as it deems advisable and in its own best interests in the matter. "*

17
18  That is a breach of the Easement and fraud per se. That is a predicate act and civil

19  RICO violation.

20  20 ) On July 6, 2007 defendant's attorney, Marvin B. Starr, sent a second letter to plaintiff

21  using U.S. Mail. **(Exhibit No. 5 ).** It states ( page No. 4 ) in pertinent part, the following:

22  " ... *even if it was the case that your property would, in fact, lose some of its present value,*
23
24  *the 1973 Fence Easement clearly imposes such a loss on the owner of your property and*

25  *not the Club . "*

26  That is a breach of the Easement and fraud per se. That is a  predicate act  and a civil

27  RICO violation.

6.

1
2   21 ) In response to plaintiffs complaints of trespassing driving range golf balls, on June 13,
3   2007, defendant's General Manager, Greg Gonsalves, using U.S Mail, sent a letter to
4   plaintiff ( **Exhibit No. 6** ). It stated in pertinent part:

5   *" Unless you would like to change your position on this matter* ( i.e. accept defendants
6
7   bombardment of plaintiffs property with driving range golf balls ) *we really have nothing*
8   *further to discuss. "*

9   That is a breach of the Easement and fraud per se. That is are predicate act and a civil
10  RICO violation.

11  22 ) Using U.S Mail and Interstate Wires, defendants, as persons, set up an enterprise
12
13  structure  association in fact, consisting of the Round Hill Country Club, it's President,
14  ( Carluccio ) it's previous President ( Davis ), it's General Manager, ( Gonsalves ) it's
15  lawyer ( Marvin B. Starr  ), and it's law firm, ( Miller Starr and Regalia ), and it's
16  employees, and agents. They functioned together as a racketeering organization to engage
17  in a pattern of racketeering activity designed to damage and defraud  plaintiff. That is a
18
19  civil RICO violation.

20  23 )  Defendants agreed by, and between themselves, to engage in a pattern of overt acts in
21  an unlawful scheme to defraud plaintiffs by repeatedly refusing to comply with the
22  Easement Indemnification provisions, thereby selling the lot under false pretenses and
23
24  damaging plaintiffs. Clearly, as confirmed by defendants above noted letters, defendants
25  never had any intention of complying with the the Easement indemnity provisions. The
26  Easement was part and parcel of defendants conspiratorial scheme to defraud plaintiff.
27  These facts constitute multiple civil RICO violations.

7.

**11.**

**LAW**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

**(18  USCS 1961 -1968)  FOR CIVIL VIOLATIONS.**

24 ) *SEDIMA S.P.R.L. v. IMREX COMPANY, INC., 473US 479,481(1985 )*is considered

the seminal law for civil RICO. This case holds the:

" Racketeer Influenced And Corrupt Organizations Act  ( 18 USCS 1961-1968 ) is to be

read broadly, not only because of Congress' expansive language and over all approach, but

also because of it's express admonition that the ACT is to be liberally construed to

effectuate its remedial purposes." Also, *Sedima* does not require racketeering activity

distinct from that occurring as a result of predicate acts themselves.

25 ) Furthermore, " ...injury **not** from the predicate acts themselves, but from the fact they

were performed as part of the conduct of the enterprise..." goes to the heart of civil RICO.

*American Bank and Trust Company v. Harco Inc., 473 U.S. 606 ( 1985 )*

**111.**

**SUMMARY**

26 ) Defendants entered into a legally binding Easement which provided defendants would

indemnify plaintiffs from any wrongful or negligent act or omission by defendant or of it's

employees or agents in the course of their employment.

8.

27 ) Defendant committed numerous wrongful, and negligent acts and omissions, by making the premises unsafe, making it unsalable, and reducing the value of the premises by at least $600,000.00 from the 2006 price, via multi thousands of trespassing driving range golf balls bombarding plaintiffs premises

28 ) Defendants not only refused to indemnify plaintiffs for defendants wrongful and negligent acts and omissions, defendants operated as an association in fact, corrupt enterprise, via conspiracy and fraud in an illegal scheme to damage and defraud plaintiffs. Thereby, defendants committed multiple civil RICO violations.

WHEREFORE, PLAINTIFFS PRAY FOR:

     1. Judgment against defendants for civil RICO violations.

     2. Triple damages mandated by RICO on the diminished value of the premises of at least $600,000.00, plus interest on that amount, plus plaintiffs legal fees and costs.

     3. For other and such further relief as the Court deems proper.

Dated _06/16/08_

Kenneth Barker, Plaintiff In Pro Se.

Plaintiff Demands A Trial by Jury.

1

2

3 **LIST OF EXHIBITS**

4

5 **Exhibit No. 1** Kenneth and Lois Anne Barker - Deed For Premises located at

6 2349 Royal Oaks Drive, Alamo CA. 94507

7 **Exhibit No. 2** Easement No. 55296, recorded on June 1,1973 in Contra Costa County

8 Records Book 6965, Pages 22 through 26.

9

10 **Exhibit No. 3** Round Hill Country Club Website Description of Facilities.

11 **Exhibit No. 4** Letter From Marvin B. Starr, dated June 19, 2007.

12 **Exhibit No. 5** Letter From Marvin B. Starr, dated July 6, 2007.

13 **Exhibit No. 6** Letter From Greg Gonsalves, dated June 13, 2007.

14

15

16

17

18

19

20

21

22

23

24

25

26

27



**RECORDING REQUESTED BY**

Transamerica Title Insurance Co.

**AND WHEN RECORDED MAIL TO**

Name  Mr. & Mrs. Kenneth Barker
Street Address  2349 Royal Oaks Drive
City State Zip  Alamo, Ca.

**MAIL TAX STATEMENTS TO**

Name  same as above
Street Address
City State Zip

AUG 29 1974
77088

RECORDED AT REQUEST OF
TRANSAMERICA TITLE INS. CO.

AT 9 AUG 29 1974 M.
MIN. PAST

OFFICIAL RECORDS OF
CONTRA COSTA COUNTY
J. R. OLSSON, County Recorder
Fee $ 4.00

AUG 29 1974
CONTRA COSTA CO.
TRANSFER TAX
PAID $ 39.60

SPACE ABOVE THIS LINE FOR RECORDER'S USE

book 7310 pg 342

DOCUMENTARY TRANSFER TAX $ 39.60
___ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
XX OR COMPUTED ON FULL VALUE LESS LIENS AND
ENCUMBRANCES REMAINING AT TIME OF SALE.
Transamerica Title Insurance Co. By [signature]
Signature of Declarant or Agent determining tax. Firm Name

# GRANT DEED

(Escrow No. 347479 D )

By this instrument dated  August 26, 1974 , for a valuable consideration,

JIMMIE R. LYNN AND CAROLE J. LYNN, husband and wife, as joint tenants

hereby GRANTS to

KENNETH BARKER AND LOIS ANNE BARKER, his wife, as joint tenants

the following described Real Property in the State of California, County of CONTRA COSTA

City of (unincorporated)

SEE EXHIBIT "A" ATTACHED HERETO.

[signature] JIMMIE R. LYNN

[signature] CAROLE J. LYNN

STATE OF CALIFORNIA }
COUNTY OF Contra Costa } SS.

On August 26 , 19 74 before me, the undersigned, a Notary Public in and for said County and State, personally appeared Jimmie R. Lynn, Carole J. Lynn known to me to be the person s whose name s are subscribed in the within instrument, and acknowledged to me that the y executed the same.

Notary's Signature Bonnie L. Judd

OFFICIAL SEAL
BONNIE L. JUDD
NOTARY PUBLIC - CALIFORNIA
CONTRA COSTA COUNTY
My Commission Expires Oct. 18, 1978

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Form No. 140    Revised 9-67

EXHIBIT "A"

BOOK 7310 PE 343

The land referred to in this Report is situated in the State of California, County of    Contra Costa.
and is described as follows:

Portion of Lot 3, map of Subdivision 2794, filed May 23, 1962, Map Book 87, page 30, Contra Costa County records, described as follows:

Beginning on the northwest line of Royal Oaks Drive, at the most southerly corner of Lot 3, as designated on said map of Subdivision 2794; thence from said point of beginning, along the exterior lines of said Lot 3, north 43° 35' 08" west, 185 feet; north 46° 24' 52" east, 6 feet and south 89° 44' 05" east, 110 feet to a point on the north lines of said Lot 3, distant thereon north 89° 44' 05" west, 189.57 feet from the most easterly corner thereof; thence south 79° 41' 38" east, 142.79 feet to a point on the northwest line of said Royal Oaks Drive, as designated on said map of Subdivision 2794, distant thereon southwesterly 55 feet from the most easterly corner of said Lot 3; thence along said Royal Oaks Drive, along the arc of a curve to the left with a radius of 310 feet, through a central angle of 11° 48' 56", an arc distance of 63.93 feet and south 46° 24' 52" west, 106 feet to the point of beginning.

EXCEPTING: The mineral rights reserved in the deed from Western Title Guaranty Company, Contra Costa County Division, recorded February 3, 1966, book 5050, page 483, Official Records, as follows:

"An undivided one-half(½) interest in and to all minerals, oil, other hyrocarbons, gas and all associated substances existing in or on said real property, together with the right to explore, drill for, extract, take from, remove and dispose of one-half (½) of any or all of said minerals, oil, other hydrocarbons, gas and all associated substances from said real property, below a depth of five hundred (500) feet from the surface thereof, by wells, equipment and means located on the surface of adjacent land and extended into said real property herein conveyed and hereinabove described at a point or points below a depth of five hundred (500) feet from the surface of said real property."

END OF DOCUMENT

**55296**

JUN −8 1973

After Recording Return To:
Jim Bryson
Vice President
Round Hill Estates
3133 Round Hill Road
Alamo, California

RECORDED AT REQUEST OF
WESTERN TITLE GUARANTY COMPANY,
CONTRA COSTA COUNTY, DIVISION
JUN −8 1973
AT 9:20 O'CLOCK A M.
CONTRA COSTA COUNTY RECORDS

EASEMENT FEE $ 60 W. T. PAASCH,
COUNTY RECORDS 305000-6

BOOK 6965 PAGE 22

JIMMIE R. LYNN and CAROLE J. LYNN, his wife, herein-

after called First Parties, in consideration of value paid by ROUND HILL

ESTATES, a California corporation, hereinafter called Second Party, the

receipt whereof is hereby acknowledged, hereby grants to Second Party those

perpetual and exclusive easements and rights of way to construct, operate,

maintain, repair, reconstruct, replace and remove at any time, and from

time to time, providing however if said fence is down or lowered in any way

from its present elevation the party of the Second Part will cause the driving range

to be closed for the period of time the protection of said fence is affected, a wire

metal screen or fence, consisting of one or more lines of poles and/or other struc-

tures covered by a wire screen for the purpose of preventing golf balls from the

golf course and driving range from trespassing or causing damage to the property

of First Parties or causing damage to any person or persons, or invitees of the

First Parties while on First Parties' premises, and all necessary and proper founda-

tions, footings and fixtures for use in connection with said screen and fence and/or

other structure, together with a right of way on, along and in all of the hereinafter

described strip of those certain lands which are situated in the County of Contra

Costa, State of California and described as follows: −

> A portion of Lot 3 as designated on the Map of
> Tract #2794 Round Hill Country Club area.

The aforesaid strip is described as follows:−

> Following described real property in the subdivision
> 2794 situated in the County of Contra Costa, State

2794 the following two courses:  North 46° 24' 52" East 6.00
feet; South 89° 44' 05" East 110.08 feet; thence leaving said
boundary of lot 3,  South 79° 41' 38" East 142.89 feet to a
point on a 310.21 foot radius curve, being the northerly line
of Royal Oaks Drive; thence from a tangent which bears
South 58° 13' 44" West and along said curve, being the
northerly line of Royal Oaks Drive, to the left through a
central angle of 1° 51' 27" and arc length of 10.06 feet;
thence leaving said line of Royal Oaks Drive North 81° 00'
00" West 76.83 feet, thence North 85° 18' 20" West 169.85
feet to a point on the southwest line of said lot 3; thence
North 43° 35' 08" west along said southwest line 2.00 feet
to the Point of Beginning.

Containing 0.06 Acres more or less.

Second Party shall have the right to maintain grass turf

on said strip of land and to use the same as a part of the fairway and driving

range of said golf course.

First Parties hereby grant to Second Party: −

(a)    The right of ingress to and egress from said

strip over and across said land by means of roads and

lanes thereon, if such there by, otherwise by such route

or routes as shall occasion the least practicable damage

and inconvenience to First Parties;

(b)    The right from time to time to trim and to cut down

and clear away or otherwise destroy any and all trees and brush

now or hereafter on said strip and to trim and to cut down and

clear away any trees on either side of said strip which now or

hereafter in the opinion of Second Party may be a hazard to said

screen, fence, poles and/or other structures, wires or cables, by

reason of the danger of falling thereon, or may interfere with

the exercise of Second Party's rights hereunder.

BOOK 6365 PAGE 23

(d)    The right to mark the location of said strip by suitable markers set in the ground; provided that said markers shall be placed in such location which will not interfere with any reasonable use First Parties shall make of said strip.

(e)    First Parties further agree that nothing herein contained shall be held to change or modify the Indemnity Agreement dated November 10, 1972 between JIMMIE R. LYNN and CAROLE J. LYNN, his wife, and ROUND HILL ESTATES, a California corporation, of record in the office of the County Recorder of the County of Contra Costa, State of California.

Second Party hereby covenants and agrees:-

(a)    Second Party shall not fence said strip;

(b)    Second Party shall promptly backfill any excavations made by it on said strip and repair any damage it shall do to First Parties' land.

(c)    Second Party shall indemnify First Parties against any loss and damage which shall be caused by the exercise of said ingress and egress or by any wrongful or negligent act or omission of Second Party or of its agents or employees in the course of their employment.

First Parties reserve the right to use said strip for purposes which will not interfere with Second Party's full enjoyment of the rights hereby granted; provided that First Parties shall not:

(a)    Erect or construct any building or other structure, or drill or operate any well, or construct any other obstruction, or

rubbish, debris, or any other substance or material, whether combustible or noncombustible, on said strip, or so near thereto as to constitute, in the opinion of Second Party, a hazard to said fence or screen and/or structures, wires and poles.

(c)    Grant any easement or easements on, under, or over said strip without the written consent of Second Party.

The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

IN WITNESS WHEREOF, First Parties have executed these presents this _____ / _____ day of ~~May~~ *June*, 1973.

JIMMIE R. LYNN

CAROLE J. LYNN,

FIRST PARTIES

STATE OF CALIFORNIA    )
                       : SS
COUNTY OF CONTRA
COSTA                  )

On this _____ 1st _____ day of ~~May~~ June, 1973, before me, _____
Linda G. Johnson , a Notary Public in and for the County of Contra Costa, State of California, residing therein, duly commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me to be the persons described in and whose names are subscribed to the within instrument, EASEMENT, and they acknowledged to me that they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed

BOOK 6965 PAGE 25

rubbjsh, debris, or any other substance or material, whether

combustible or noncombustible, on said strip, or so near

thereto as to constitute, in the opinion of Second Party, a

hazard to said fence or screen and/or structures, wires and poles.

(c)    Grant any easement or easements on, under, or over

said strip without the written consent of Second Party.

The provisions hereof shall inure to the benefit of and bind

the successors and assigns of the respective parties hereto, and all covenants shall

apply to and run with the land.

IN WITNESS WHEREOF, First Parties have executed these

presents this ____/____ day of ~~May~~ *June*, 1973.

JIMMIE R. LYNN

CAROLE J. LYNN,

FIRST PARTIES

STATE OF CALIFORNIA )
                     : SS
COUNTY OF CONTRA
COSTA                )

On this ____1st____ day of ~~May~~ June, 1973, before me, _____
__Linda G. Johnson__ , a Notary Public in and for the County of Contra Costa,
State of California, residing therein, duly commissioned and sworn, personally
appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me
to be the persons described in and whose names are subscribed to the within
instrument, EASEMENT, and they acknowledged to me that they executed the
same.

BOOK 6965 PAGE 25



Scale: 1"=40'

Royal Oaks Drive

Portion LOT 3

Northerly Line Lot 3 Per Subd 2794 Record

BOOK 6965 PAGE 26

Home   About Us   Contact Us   Employee Login

---

Club News    Event Calendar    Club Tour    Photo Gallery    Member Login

## ROUNDHILL COUNTRY CLUB

2007-10-12



Welcome to Round Hill!   Round Hill Country Club was originally founded in 1959 as a combination golf course and luxury housing community.   The course was opened in fall of 1960, followed by the clubhouse, tennis facility and pool in 1961.  Round Hill, a private club, offers full service catering facilities to both Members and outside clients.   In the years since opening, Round Hill has made a number of major improvements, including a new Clubhouse in 1997, a new state-of-the-art Aquatics facility in 2004, Golf Course Renovation in 2005, and new Tennis Clubhouse in 2006.  In addition to serving as a full service Club for our Members, Round Hill is one of the premiere venues for Special Events in the East Bay.   We accommodate a wide array of events from elegant weddings, to corporate events, to golf tournaments.   Take a Tour!   Click on the Club Tour link above to view information on Membership, Catering, and the various departments such as Golf, Tennis and Aquatics.     Please visit our Photo Gallery to view a hole by hole tour of our Golf Course, as well as photos from various Member Events.   Whatever your interest in Round Hill Country Club, whether it be for a one-time event or for a life-time of happy memories of being a part of Round Hill, thanks for visiting our website.

View full article »

### Club News

More News »

### Member Login

Member
ID:
Password:

Login

Forgot your username or password?
Don't have an online account?

### Upcoming Events

12/03Fall Swim "Toys for Tots" Drive 12/03 - 12/07

12/03Senior Men's Tennis

12/03Plumbing and Heating Golf T.

12/04Tennis- Free Guest Day

12/04RHWGA - Open Play

12/04RHTC Old/New Board Dinner

12/05Open House-Golf, Fitness and Tennis Shops

12/05Open House-Golf, Fitness and Tennis Shops

12/05Ladies Tennis

12/05RHMA Board

More Events »

### Weather Forecast

4 PM



**62°**

*[handwritten: Delivery event to wrong order — Jean Tate hand delivered letter on June 24 to us. Her address is 2394]*

*[handwritten: ILB]*

**MILLER STARR**
**REGALIA**

1331 N. California Blvd.    T 925 935 9400
Fifth Floor               F 925 933 4126
Walnut Creek, CA 94596    www.msrlegal.com

Marvin B. Starr

June 19, 2007

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507

Re:    Round Hill Country Club Practice Range Management and Operation

Dear Mr. Barker:

Please be advised that the Board of Directors of Round Hill Country Club has concluded that it will no longer pursue its futile attempt to find a mutually agreeable resolution to whatever problem may exist with respect to the prevention of practice range balls from landing on your property.

As such, from here on Round Hill Country Club will, on its own, take such preventative steps as it deems advisable and in its own best interests in the matter.

In the possibility that you have not yet seen or read the Easement recorded against your property on June 8, 1973, I have enclosed a copy of the document for your reference. You may be assured that what Round Hill Country Club elects to do with respect to the "golf ball problem" will be done in full compliance with the rights granted to it by the Easement.

If you have any questions regarding any of the above, please feel free to contact me about them.

Very truly yours,    (se)

*[signature: Marvin B Starr]*

Marvin B. Starr

MBS:vse
cc    Greg Gonsalves, General Manager, Round Hill Country Club
      Carole Carluccio, President, Round Hill Country Club

Mr. Kennett Barker
2349 Royal Oaks Drive
Alamo, Ca. 94507

Re: Round Hill Country Club Practice Range
Management and Operation

Dear Mr. Butler:

Please be advised that
the Board of Directors of Round Hill
Country Club has concluded that
it no longer pursue its ~~futile attempt~~
~~to find a mutually agreeable~~
~~the resolution of whatever problem~~
~~may~~ exist with respect
to the prevention of ~~practice~~
~~range~~ range balls from
landing on your property;
~~to such, Round Hill~~
~~Country Club will, from hereon,~~
~~proceed.~~

As such, from ~~hereby~~ hereon
Round Hill Country Club will
~~take such~~
preventative steps as it
deems advisable and ~~proper~~
in its own best interest in the

matter.

In the possibility that you have not yet seen or read the Easement recorded against your property on June 8, 1973, I have enclosed a copy of the documents for your reference.

You may be assured that what Pecan Hill Country Club elects to do with respect to the "golf ball problem", will be done in full compliance with the rights granted to it by the Easement.

If you have any questions regarding any of the above, please feel free to contact me about them.

Very Truly yours,

Marvin B. Starr

cc Greg Gonsalves, General Manager
Carol Carleccio, President, Pecan Hill Country Club



**MILLER STARR
REGALIA**

1331 N. California Blvd.
Fifth Floor
Walnut Creek, CA 94596

T 925 935 9400
F 925 933 4126
www.msrlegal.com

Marvin B. Starr

July 6, 2007

**BY U.S. MAIL AND BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA  94507

Re:     Round Hill Country Club Practice Range Management and Operation

Dear Mr. Barker:

This is in response to your letter to Greg Gonsalves of June 23, 2007, in which you offered four "Available Solutions" to the "range ball" problem, any one of which would be acceptable to you.  The first three of these are not acceptable to Round Hill County Club.  The fourth solution, however, is consistent with what the Club has already elected to do in order to eliminate the problem.  It would appear, therefore, that you and the Club have finally come to agreement, in writing, as to an efficient way in which to prevent the passage of range balls onto your adjoining property. The other part of your fourth alternative solution; i.e., financial compensation for the alleged loss of value to your property that you claim would result from the heightening of the fence is, of course, totally out of the question.  If any such payment is to be made, the order to make it will have to come from the California Superior Court.  In any case, it is good to know that the dispute between you and the Club has now been reduced to a single monetary issue.  Please be advised, therefore, that for this and other good reasons, Round Hill Country Club will proceed accordingly.

I think, however, that there is more to be said to you in this letter with respect to the possibility that you may still elect to seek judicial determination of the matter.

Mr. Kenneth Barker
July 6, 2007
Page 2

Greg Gonsalves's letter to you of June 12, 2007, advised you of Round Hill Country Club's willingness to increase the height of the driving range fence, something that it would have done long ago had it not been for your unwillingness to give your consent to this obvious solution of the problem. Most importantly, in this respect, was the Club's mistaken belief that you were legally entitled to withhold such consent.

Subsequently, and after Mr. Gonsalves's letter to you of June 12, 2007, I was asked by the Club to step into the matter on its behalf. To my utter surprise, my review of the Club's file revealed the existence of the June 8, 1973, fence easement, a copy of which I sent in my letter to you of June 19, 2007. I suspect, however, that you may have been quite familiar with this easement and its provisions for a very long time before then.

In any case, this easement clearly and unequivocally grants to Round Hill Country Club the unilateral right to take whatever steps it deems reasonably necessary to prevent range balls from coming over the fence and onto your property. Upon reading the easement, I advised the Club of its actual legal rights in the matter and was authorized by the Club to send my letter to you of June 19th, in which I advised you of the Club's election to proceed on its own in eliminating the problem, and the legal grounds for its doing so.

Your response to my letter was to write your June 23rd letter to Greg Gonsalves in which you chose to ignore the very existence of the 1973 easement and its determinative provisions. It is interesting to note, however, that your letter selectively refers to the Indemnity Agreement between the Lynns and the Club, recorded on November 10, 1972, seven months before the date of recordation of the June 8, 1973 fence easement; a reference by you that in my opinion is completely irrelevant as having nothing whatsoever to do with the issue at hand.

Which brings us to the two paragraphs of your June 23rd letter, captioned "Legal Issues" and "Settlement Offer". With respect to "Legal Issues", I suggest that before

Mr. Kenneth Barker
July 6, 2007
Page 3

you institute legal action against Round Hill Country Club, as you have repeatedly
and often intemperately threatened to do in your June 23rd letter and much of your
past correspondence, you thoroughly acquaint yourself with the provisions of
Section 128.5 of the California Code of Civil Procedure, entitled "Frivolous Actions
... Award of Expenses, Attorney's Fees, and Punitive Damages".

Under these provisions, the Court can, and will, award the defendant expenses,
attorney's fees and punitive damages in those cases where the Court determines
that the plaintiff has filed a frivolous action. While you or your attorney may differ, I
am confident that your lawsuit against the Club would almost certainly be found by
the Court to be a classic example of such a lawsuit; one deserving of the maximum
consequences the Court is legally empowered to impose.

With respect to your "Settlement Offer" paragraph, I feel that its specific demands
need to be further addressed even though Round Hill Country Club has already
clearly advised you in this letter of its outright rejection of all of the proposals made
by you in your letter of June 23rd, except for your acknowledgment of the
effectiveness of the heightening of the fence.

First, the Club's election to go forward with heightening the fence was made by it
prior to the time you stated your approval of this method of correction in writing. No
such approval is, or was ever, required.

Second, there will be no payment to you of the sum demanded in that letter, or any
other amount or kind of money or compensation whatsoever, except as it may be
ordered by a Court of Law.

Third, Round Hill Country Club has never been presented with any hard or credible
evidence of what you have continuously complained of, both in your June 23rd letter
and prior correspondence. Whatever the merits of your claims on this issue, the
occurrence of these alleged events would have been attributable entirely to your
conduct in the matter and not to the Club.

Mr. Kenneth Barker
July 6, 2007
Page 4

Fourth, it is interesting to me, as I am sure it would be to the Court, that one of your four "Available Solutions" would be for the Club to pay you an exorbitant amount of money for the privilege of heightening the driving range fence in an amount you claim would compensate you for the loss of property value you would suffer as a result of the Club's action.

Aside from the fact that you offer no supporting evidence for this assertion (and I suspect that reason is that you have none), even if it was the case that your property would, in fact, lose some of its present value, the 1973 Fence Easement clearly imposes such a loss on the owner of your property and not the Club. Most important, perhaps, from what I believe would be the Court's viewpoint, is the fact that your written acknowledgment that heightening the fence would effectively eliminate any future risk of damage to people or property on your side of it, simply confirms your willingness to continue the existence of such a risk despite all of your constant complaints to the contrary.

The decision as to how you will proceed is, of course, for you to make. I can only advise you if what the Club does to accomplish its purposes in the matter results in litigation, you may be certain that it will do whatever is necessary to protect its interests in the matter and to recover from you all that it may be successful in doing so under California Law.

Very truly yours,

Marvin B. Starr

MBS:ckh

cc:    Greg Gonsalves, General Manager, Round Hill Country Club
       Carol Carluccio, President, Round Hill Country Club



*Round Hill Country Club*

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507

June 13, 2007

Re: Practice Facility

Dear Mr. Barker:

Thank you for taking the time to meet with David Plotnik and myself last week, to discuss your concerns about the Practice Facility. During that meeting, you shared with us numerous assertions of range balls entering your property and the club taking no action to resolve the problem.

We listened to your concerns as well as your demands for compensation to offset the years of harassment you assert you have been subjected to while living at the end of the driving range.

We suggested a potential solution would be to allow Round Hill Country Club to increase the height of the fence that currently exists. You declined this offer as a reasonable resolution.

The Club has taken many steps over the years to manage the use of the practice facility including but not limited to regularly posting of signs and instructions to the membership and guests that use the facility. The Club feels that it has taken reasonable measures to mitigate the use of the range.

The fact is that you purchased your property with an indemnity agreement and fence easement accepting the right of Round Hill Country Club Members and guests to use this property as a practice facility and with acknowledgement that golf balls from the course and driving range are driven in the direction of your lot!

Round Hill Country Club is doing its part to minimize your asserted inconvenience and is willing to do more in the suggestion to raise the fence to further protect your property, but you do not acknowledge our efforts or consider our recommendation to mitigate your concerns. Unless you would like to change your position on the matter, we really have nothing further to discuss.

Sincerely,

Greg Gonsalves, CCM
General Manager

Cc:     Carole Carluccio, President ·
        Round Hill Country Club
        Round Hill Country Club Board of Directors
        *3169 Round Hill Road ● Alamo, California 94507 ● (925) 934-8211*