1  Lee A. Archer (Bar No. 038938)
   larcher@archernorris.com
2  William S. Fiske (Bar No. 246099)
   wfiske@archernorris.com
3  ARCHER NORRIS
   A Professional Law Corporation
4  2033 North Main Street, Suite 800
   Walnut Creek, California  94596-3759
5  Telephone:    925.930.6600
   Facsimile:    925.930.6620
6
   Attorneys for Defendants
7  ROUND HILL COUNTRY CLUB, GREG
   GONSALVES, DAVID PLOTNIK, CAROLE
8  CARLUCCIO, PETE DAVIS, MARVIN B.
   STARR, AND MILLER STARR REGALIA
9

10                  UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

| 13 | KENNETH BARKER and LOIS ANNE BARKER, | Case No.  3:08-CV-02977-SI |
|----|----|----|
| 14 | | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT [Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6)]** |
| 15 | Plaintiffs, | |
| 16 | v. | **[Filed Concurrently with Memorandum of Points and Authorities]** |
| 17 | ROUND HILL COUNTRY CLUB; CAROLE CARLUCCIO; GREG GONSALVES; DAVID PLOTNIK; PETE DAVIS; MARVIN B. STARR; MILLER STARR REGALIA; DOES 1 to 50 inclusive, | Date:       Friday, October 3, 2008 |
| 18 | | Time:       9:00 a.m. |
| 19 | | Dept:       10 |
| 20 | Defendants. | Judge:      Hon. Susan Illston |
| 21 | | Complaint Filed:  June 17, 2008 |

22      TO PLAINTIFFS KENNETH BARKER AND LOIS ANNE BARKER:

23         Please take notice that on Friday, October 3, 2008 at 9:00 a.m. in Department 10 of the

24  United States District Court for the Northern District of California located at 450 Golden Gate

25  Avenue, San Francisco, CA 94102 before The Honorable Susan Illston, Defendants Round Hill

26  Country Club, Carole Carluccio, Greg Gonsalves, David Plotnick, Pete Davis, Marvin B. Starr,

27  and Miller Starr Regalia, will move this court to dismiss Plaintiffs' complaint in its entirety, and,

28  consequentially, this action in its entirety.

R0095011/677829-1

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1      Defendants' Motion will be made on the grounds that Plaintiffs' complaint fails to state a

2   claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

3   Requested in the alternative, the defendants will move that the action should be dismissed for

4   want of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

5   Alternatively, if the action is not dismissed, the defendants request a stay of the federal action due

6   to the pending state court actions between the same parties and which involve the identical facts

7   as those alleged in Plaintiff's federal complaint filed June 17, 2008.

8      Defendants' Motion is based upon this Notice, the attached Memorandum of Points and

9   Authorities, the Declaration of William S. Fiske and Request for Judicial Notice and the

10  documents attached thereto, and all papers, records, and pleadings on file with the court.

11  Dated: July 10, 2008          ARCHER NORRIS

12

13                      */s/ Lee A. Archer*

                         Lee A. Archer

14                   Attorneys for Defendant

                         ROUND HILL COUNTRY CLUB, GREG

15                   GONSALVES, DAVID PLOTNIK,

                         CAROLE CARLUCCIO, PETE DAVIS,

16                   MARVIN B. STARR, AND MILLER

                         STARR REGALIA

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1  Lee A. Archer (Bar No. 038938)
   larcher@archernorris.com
2  William S. Fiske (Bar No. 246099)
   wfiske@archernorris.com
3  ARCHER NORRIS
   A Professional Law Corporation
4  2033 North Main Street, Suite 800
   Walnut Creek, California  94596-3759
5  Telephone:    925.930.6600
   Facsimile:    925.930.6620
6
   Attorneys for Defendants
7  ROUND HILL COUNTRY CLUB, GREG
   GONSALVES, DAVID PLOTNIK, CAROLE
8  CARLUCCIO, PETE DAVIS, MARVIN B.
   STARR, AND MILLER STARR REGALIA
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  KENNETH BARKER and LOIS ANNE          Case No.  3:08-CV-02977-SI
    BARKER,
14                                        **MEMORANDUM OF POINTS AND**
                    Plaintiffs,           **AUTHORITIES IN SUPPORT OF**
15                                        **DEFENDANTS' MOTION TO DISMISS**
                                          **PLAINTIFFS' COMPLAINT [Fed. R. Civ.**
          v.                              **Pro. 12(b)(6) and 12(b)(1)]**
16
    ROUND HILL COUNTRY CLUB;              **[Filed Concurrently with Defendants' Notice**
17  CAROLE CARLUCCIO; GREG                **of Motion and Motion]**
    GONSALVES; DAVID PLOTNIK; PETE
18  DAVIS; MARVIN B. STARR; MILLER        Date:      Friday, October 3, 2008
    STARR REGALIA; DOES 1 to 50           Time:      9:00 a.m.
19  inclusive,                            Dept:      10
                                          Judge:     Hon. Susan Illston
20                  Defendants.
                                          Complaint Filed:  June 17, 2008
21

22  //

23  //

24  //

25  //

26  //

27  //

28  //
    R009501 1/677835-1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND PROCEDURAL HISTORY OF RELATED CASES ............... 1

II.    MATERIAL ALLEGATIONS OF THE FEDERAL COMPLAINT ................................. 3

III.   LAW AND ARGUMENT ....................................................................................... 9

    A.    The Complaint and Action Should be Dismissed With Prejudice According
to Federal Rule of Civil Procedure 12(b)(6) ......................................................... 9

        1.    Plaintiffs' Civil RICO Allegations Hinge Upon Fictitious
Indemnification Rights ............................................................................ 10

        2.    Assuming Arguendo That the Club Breached the Easement
Agreement by Not Indemnifying Plaintiffs, A Breach of Contract
Does Not Amount to Fraud As Alleged By Plaintiffs ............................. 11

        3.    In Ruling on Defendants' 12(b)(6) Motion, The Court Should
Apply Rule 9(b)'s Heightened Standard of Pleading ............................... 12

        4.    Plaintiffs' Allegations Do Not and Cannot Sufficiently Plead a
RICO Claim ............................................................................................. 13

    B.    Alternatively, The Complaint and Action Should Be Dismissed According
to Federal Rule of Civil Procedure 12(b)(1) ......................................................... 18

    C.    Alternatively, The Action Should Be Stayed Based Upon the Related
Pending State Court Actions Between the Same Parties and Involving the
Same Facts ............................................................................................................. 19

IV.    CONCLUSION .................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**
Adams v. California Dept. of Health Services (9th Cir. 2007) 487 F.3d 684 .......................... 19, 20
Armco Indus. Credit Corp. v SLT Warehouse Co. (5th Cir. 1986) 782 F.2d 475 ....................... 11
Bell v. Hood (1946) 327 U.S. 678 ..................................................................................... 18, 19
Bender v. Southland Corp. (6th Cir. 1984) 749 F. 2d 1205 ............................................................ 15
Blount Financial Services, Inc. v. Heller and Co. (6th Cir. 1987) 819 F.2d 151 ...................... 12
Branch v. Tunnell (9th Cir. 1994) 14 F.3d 449 ................................................................................. 4
Cahill v. Liberty Mutual Ins. Co. (9th Cir. 1996) 80 F.3d 336 ....................................................... 9
Creed Taylor, Inc. v. CBS, Inc. (S.D.N.Y. 1989) 718 F. Supp. 1171 ........................................... 15
Curtis v. Citibank, N.A. (9th Cir. 2000) 226 F.3d 133 ................................................................... 19
Durning v. First Boston Corp. (9th Cir. 1987) 815 F.2d 1265 ........................................................ 9
Feinstein v. Resolution Trust Corp. (1st Cir. 1991) 942 F. 2d 34 ................................................ 15
Gagliardi v. Ward (N.D.N.Y 1997) 967 F. Supp.67 ....................................................................... 12
Hal Roach Studios, Inc. v. Richard Feiner & Co.. Inc. (9th Cir. 1989) 896 F.2d 1542 .................. 4
In re Delorean Motor Co. (6th Cir. 1993) 991 F.2d 1236 ............................................................... 17
In re National Mortgage Equity Corp. Mortgage Pool, (C.D. Cal. 1986) 636 F. Supp. 1138 ....... 15
In re Stac Electronics Securities Litigation (9th Cir. 1996) 89 F.3d 1399 ...................................... 4
Kann v. United States (1944) 232 U.S. 88 ...................................................................................... 16
Kaufman & Broad-South Bay v. Unisys Corp. (N.D. Cal. 1993) 822 F.Supp.1468 .................. 4, 9
Medallion TV Enters., Inc. v.SelecTV of Cal. (9th Cir. 1987) 833 F. 2d 1360 ........................... 17
Midwest Grinding Co. v. Spitz (7th Cir. 1992) 769 F. Supp. 1457 ................................................ 15
Miranda v. Ponce Fed. Bank (1st Cir. 1991) 948 F.2d 41 .............................................................. 13
Moore v. Kayport Package Express, Inc. (9th Cir. 1989) 885 F. 2d 531 ................................. 12, 15
Moss v. Morgan Stanley, Inc. (2d Cir. 1983) 719 F.2d 5 ............................................................... 14
New England Data Services v. Becker (1st Cir. 1987) 829 F. 2d 286 ............................................ 15
Northern Cheyenne Tribe of the Borther Cheyenne Indian Reseration v. San Carlos Apache Tribe
    of Arizona (9th Cir. 1983) 721 F.2d 1187 ............................................................................... 20
Republic of Panama v. BCCI Holdings (11th Cir. 1997) 119 F.3d 935 ......................................... 13
Reynolds v. East Dyer Dev. Co. (7th Cir. 1989) .............................................................................. 14
Roberts v. Corrothers (9th Cir. 1987) 812 F.2d 1173 ............................................................... 18,19
Schreiber Distributing Co. v. Serv-Well Furniture Company, Inc. (9th Cir. 1986) 806 F.2d 1393
    ............................................................................................................................................. 12, 13,15
Sedima v. Imrex Company, Inc. (1985) 473 U.S. 479 ............................................................... 14, 17
Steel Co. v. Citizens for a Better Environment (1998) 523 U.S. 83 ....................................... 18, 19
Stock West, Inc. v. Confederated Tribes of Colville Reservation (9th Cir. 1989) 873 F.2d 1221 19
Tafflin v. Levitt (1990) 493 U.S. 455 ........................................................................................ 2, 20
Thompson v. Illinois Dept. of Prof. Reg. (7th Cir. 2002) 300 F.3d 750 ..................................... 4, 9
Transphase Systems, Inc. v. Southern California Edison Co. (C.D. Cal. 1993) 839 F.Supp.711  17
United States v. Bohonus (9th Cir. 1980) 628 F. 2d 1167 .............................................................. 14
United States v. Gibson (8th Cir. 1983) 708 F.2d 344 .................................................................... 16
United States v. Green (9th Cir. 1985) 745 F.2d 1205 .................................................................... 15
United States v. Maze (1974) 414 U.S. 395 .................................................................................... 16

**Statutes**
18 U.S.C. 1341 (1976) ..................................................................................................................... 16
18 U.S.C. 1961-1968 .......................................................................................................................... 2
18 U.S.C. 1961(5) .............................................................................................................. 12, 14, 18
18 U.S.C. 1962(c) ...................................................................................................................... 13, 14

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

**Rules**
Fed. R. Civ. Pro. 9(b) ................................................................. 13, 14, 17
Fed. R. Civ. Pro. 41(b) ................................................................. 19
Fed. R. Civ. Pro. 12(b) ........................... 1, 2, 3, 5, 9, 12, 13, 16, 18, 19, 20, 21
Fed. R. Evid. 201 ................................................................. 1
Gov. Code §§12650-12655 ................................................................. 1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

# I.
## INTRODUCTION AND PROCEDURAL HISTORY OF RELATED CASES

Plaintiffs Kenneth Barker's and Lois Barker's complaint filed on June 17, 2008 in the United States District Court for the Northern District of California alleges one claim under the Racketeer Influence and Corrupt Organizations Act ("RICO") against seven named defendants. This pleading fails to plead material facts constituting a cognizable legal theory over which this federal court has jurisdiction. Accordingly, Defendants move to dismiss the complaint and the action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1).

Prior to filing this federal RICO action, Plaintiff Kenneth Barker filed two civil actions in state court that involve the same parties as the federal action and allege the same facts (i.e., golf balls "trespassing" upon his residence and a "fraudulent" failure to "indemnify" Plaintiff).[1]  Mr. Barker's state court complaints, together, list claims of: (1) nuisance, (2) breach of an easement agreement, (3) breach of a covenant of good faith purportedly implied into the easement agreement, (4) fraud, and (5) intentional infliction of emotional distress. The Barkers have apparently elected to characterize the same averments, specifically the fraud allegations, as RICO violations in their federal complaint in an effort to bring the same lawsuit at the same time in different courts.[2]  The plaintiffs offer no explanation for filing their RICO claim in this Court,

---

[1] See the Declaration of William S. Fiske and Request for Judicial Notice (Fed. R. Evid. 201) filed herewith, and attaching as Exhibit 1 the complaint filed on July 13, 2007 in California Superior Court, Contra Costa County, Case No. MSC 0701488. Initially in Case No. MSC 0701488, Plaintiff Kenneth Barker named only Round Hill Country Club as a defendant. Subsequent to the initial state court filing, Plaintiff identified as doe defendants one through eight Greg Gonsalves, David Plotnick, Carole Carluccio, Allen O'Krueger, Pete Davis, Peter Ruotsi, Marvin B. Starr, and Miller Starr Regalia. All but Mr. O'Krueger and Mr. Ruotsi are named defendants in this federal action filed by Plaintiffs Kenneth and Lois Barker. (Fiske Decl. ¶2)  Attached as Exhibit 2 to the Declaration of William S. Fiske and Request for Judicial Notice is a true and correct copy of the Contra Costa County Superior Court's online Register of Actions dated July 8, 2008 for Case No. MSC 0701488.

See also the Declaration of William S. Fiske and Request for Judicial Notice (Fed. R. Evid. 201 attaching as Exhibit 3 the complaint filed on January 8, 2008, in California Superior Court, Contra Costa County, Case No. MSC 0800059, which includes the identical averments as the previously filed complaint and adds claims of "fraud" and "intentional infliction of emotional distress." Attached as Exhibit 4 to the Declaration of William S. Fiske and Request for Judicial Notice is a true and correct copy of the Contra Costa County Superior Court's online Register of Actions dated July 8, 2008 for Case No. MSC 0800059.

[2] Plaintiff Kenneth Barker also, on July 5, 2007, filed a third civil action, *Kenneth Barker v. Round Hill Country Club* (Case No. MSC 0701429) wherein he alleges, as a *qui tam* plaintiff (the state Attorney General declined to intervene), that the defendant has violated California's False Claims Act (Gov. Code sections 12650-12655) by continuously operating thousands of unlicensed and uninsured vehicles on public highways without paying the

R0095011/677835-1                                           1

1  when they could have brought the RICO claims in the state court action. Tafflin v. Levitt (1990)

2  493 U.S. 455, 464-66. The plaintiffs' complaint does not notify this court of the pending state

3  court actions between these same parties.

4      The plaintiffs are not new to splitting civil claims between state and federal court. On

5  June 10, 2008, the Barkers filed a complaint in this Court (assigned to Judge Hon. Claudia

6  Wilkin) against Default Resolution Network, et al., entitled "Complaint for Violations of the

7  Racketeer Influenced and Corrupt Organizations Act (18 U.S.C.S. 1961-1968)," which is the

8  identical title of Plaintiffs' complaint filed in this action.[3] Through that other RICO complaint,

9  the plaintiffs seek injunctive relief to halt a non-judicial foreclosure of the plaintiffs' residence.

10  Weeks prior to filing this other RICO complaint, Plaintiff Kenneth Barker filed, on May 15, 2008,

11  a near identical injunctive relief action in state court (Contra Costa County Superior) against the

12  same parties as his other federal RICO action.[4] Motions to Dismiss pursuant to F.R.C.P. 12, were

13  filed in late June 2008 by the defendants in the other RICO action. Judge Hon. Claudia Wilkin on

14  July 7, 2008 ordered, *sua sponte*, that the 12(b)(6) motions are off-calendar and that the pleadings

15  would be ruled upon alone.

16      In this RICO action against seven defendants associated with Round Hill Country Club,

17  which is located in Alamo, California, Plaintiffs have failed to plead a legally cognizable claim

18  with respect to each defendant, thereby justifying dismissal of the complaint and action with

19  prejudice. The complaint regurgitates the allegations of Kenneth Barker's state court actions for

20  nuisance, breach of contract, and fraud. The federal complaint's allegations inject the language of

21  the RICO Act into this regurgitation in an imprudent and frivolous effort to obtain federal court

22  subject matter jurisdiction. Despite the incomprehensible and overbroad conspiratorial

23  purported required state vehicle fees and taxes. (Fiske Decl. ¶12) Attached as Exhibit 7 to the Declaration of William

24  S. Fiske and Request for Judicial Notice is a true and correct copy of the Contra Costa County Superior Court's online Register of Actions dated July 8, 2008 for Case No. MSC 0701429.

[3] See the Declaration of William S. Fiske and Request for Judicial Notice (Fed. R. Evid. 201) filed herewith, and

25  attaching as Exhibit 5 the RICO Violation complaint filed on June 10, 2008 in the Northern District, Case No. 4:08-02898-CW, *Kenneth Barker and Lois Barker v. Default Resolution Network, et al.* See also the Motion to Dismiss

26  filed in that action by Mortgage Electronic Registration Systems, Inc., et al., which explains the relevant procedural history of the state and federal court actions involving the Barkers and those defendants.

27  [4] Attached as Exhibit 6 to the Declaration of William S. Fiske and Request for Judicial Notice is a true and correct copy of the Contra Costa County Superior Court's online Register of Actions dated July 8, 2008 for Case No. MSN

28  080822.

R009501I/677835-1

2

1   allegations that bear no relation to the specificity required of a RICO complaint, one thing is

2   certain: this RICO complaint pleads a complete defense. The Barkers' RICO claims are based

3   entirely upon fictitious indemnity rights within an Easement Agreement attached to Plaintiffs'

4   complaint. A plain review of the Easement Agreement demonstrates that the defendants, and

5   each of them, do not owe the plaintiffs any indemnification rights for alleged property value

6   diminution. This fact alone justifies dismissal with prejudice.

7           In addition, the plaintiffs have not pled specific facts demonstrating the requisite elements

8   of a RICO claim (e.g., mail fraud, racketeering, pattern of racketeering, etc.). The allegations are

9   so inadequately pled that it is impossible for each of the seven defendants to ascertain how each

10  fits into the RICO allegations – since they are never specifically or individually identified in the

11  complaint aside from references to three pieces of June-July 2007 correspondence (attached to the

12  complaint as Exhibits Nos. 4-6) purportedly received by the plaintiffs via the U.S. mail. It is

13  impossible for the plaintiffs to cure the fact that these three letters do not provide the factual basis

14  for the requisite elements of a RICO claim. Accordingly, this motion should be granted and the

15  action dismissed with prejudice entirely.

16          In the alternative, if the court does not dismiss the action with prejudice or the complaint

17  with leave to amend, the defendants request the court stay the action and not proceed on the

18  merits because of the pendency of the related state court proceedings.

19                                              **II.**
20                **MATERIAL ALLEGATIONS OF THE FEDERAL COMPLAINT**

21          Plaintiffs purchased a residence located at 2349 Royal Oaks Drive in Alamo, California in

22  August 1974. (Complaint ¶6) Prior to the plaintiffs' residential home purchase, Round Hill

23  Estates (a predecessor company of defendant Round Hill Country Club) owned the lot now

24  known as 2349 Royal Oaks Drive, and sold the lot to a builder (i.e., not the plaintiffs) in 1972.

25  (Complaint ¶7) 2349 Royal Oaks Drive was subject to an Easement Agreement (Exhibit No. 2 to

26  Plaintiffs' federal complaint), and the plaintiffs "relied upon the terms, conditions, and legal

27  promises, contained in the Easement when purchasing the premises" in 1974.[5] (Complaint ¶9)

28  ---
[5] Exhibits attached to the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6)
R0095011/677835-1                                    3

1    The Easement Agreement attached as Exhibit No. 2 to the Complaint is a written, signed,

2    and recorded contract between "Jimmie R. Lynn and Carole J. Lynn" (referred to as "First

3    Parties" within the Easement Agreement) and "Round Hill Estates, a California corporation"

4    (referred to as "Second Party" within the Easement Agreement).[6]  At its conclusion, the recorded

5    Easement Agreement states that "all covenants shall apply to and run with the land."

6    As memorialized within the Easement Agreement, Round Hill Estates/Second Party is

7    "granted" by the Lynns/First Parties "those perpetual and exclusive easements and rights of way

8    to construct, operate, maintain, repair, reconstruct, replace and remove at any time, and from time

9    to time [a fence]…" The Easement Agreement describes the existing fence as being located upon

10   a "strip" of land specifically described therein.  Regarding that strip of land, Round Hill

11   Estates/Second Party is granted by the Lynns/First Parties the following rights:

12       (a) The right of ingress to and egress from said strip [the strip of land upon which
          the fence is located] over and across said land … by such route or routes as shall
13        occasion the least practicable damage and inconvenience to First Parties…;

14       (b) The right from time to time to trim and to cut down and clear away or
          otherwise destroy any and all trees and brush now or hereafter on said strip… in
15        the opinion of Second Party may be a hazard to said screen, fence …;

16       (c) The right from time to time to enlarge, improve, reconstruct, relocate and
          replace any poles or structures constructed hereunder with any other number or
17        type of poles or structures either in the original location or at any alternate location
          or locations within said strip;

18
19       (d) The Lynns/First Parties "further agree that nothing [within the Easement
          Agreement] shall be held to change or modify the Indemnity Agreement dated
20        November 10, 1972 between Jimmie R. Lynn and Carole J. Lynn, his wife, and
          Round Hill Estates…"

21

22   motion. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc. (9th Cir. 1989) 896 F.2d 1542, 1555; Kaufman &
     Broad-South Bay v. Unisys Corp. (N.D. Cal. 1993) 822 F.Supp.1468, 1472. Plaintiffs may plead themselves out of
23   court by attaching exhibits that are inconsistent with their claims: "(W)hen a written instrument contains allegations
     in a complaint to which it is attached, *the exhibit trumps the allegations.*" Thompson v. Illinois Dept. of Prof. Reg.
     (7th Cir. 2002) 300 F.3d 750, 754 (emphasis in original; internal quotes omitted).
24   [6] The plaintiffs have attached as Exhibit No. 2 to their complaint a copy of a Easement Agreement dated June 1, 1973
     and recorded June 8, 1973. The complaint refers to and quotes from this document; it is central to plaintiff's RICO
25   claim. (Complaint ¶¶ 9, 16-23, 26)  However, the copy attached to Plaintiffs' complaint is only a partial copy (see,
     e.g., the first page of Exhibit 2 is incomplete). A complete and correct copy of this same document is attached to the
26   Declaration of William S. Fiske and Request for Judicial Notice as Exhibit 8.  Defendants are permitted on a Rule
     12(b)(6) motion to submit the documents referred to in the complaint to show that they do not support plaintiff's
27   claim. In re Stac Electronics Securities Litigation (9th Cir. 1996) 89 F.3d 1399, 1405, fn. 4 (the court may consider
     the full text of a document the complaint quotes only in part); Branch v. Tunnell (9th Cir. 1994) 14 F.3d 449, 454
28   (overruled on other grounds in Galbraith v. County of Santa Clara (9th Cir. 2002) 307 F.3d 1119, 1127)

MEMORANDUM OF POINTS AND AUTHORITIES RE DEFENDANTS' MOTION TO DISMISS

1    That November 10, 1972 publicly recorded Indemnity Agreement expressly referred to

2    within the Easement Agreement is relied upon by Plaintiff Kenneth Barker in one of his state

3    court complaints, attaching it as an exhibit.[7]  The Indemnity Agreement provides expressly that

4    the Lynns (the "Indemnitors" within the Agreement):

5         Indemnitors acknowledge that they are familiar with the location of
          said lot in respect to the Round Hill Golf and Country Club course,
6         and that the area of the said club set aside for use of members,
          servants, employees, guests or invitees as a practice area
7         immediately adjoins [2349 Royal Oaks Drive] ... and they further
          acknowledge that they know that in the usual and ordinary use of
8         said area, that golf balls from the course and driving range are
          driven onto [2349 Royal Oaks Drive]."
9

10    The Lynns, Plaintiffs' predecessors in interest, <u>agree under the Indemnity Agreement's</u>

11    <u>terms to indemnify and hold harmless Round Hill</u> "from any and all claims and demands of every

12    kind ... which may be suffered by persons while occupying or visiting the herein described

13    property [2349 Royal Oaks Drive] by reason of the use, maintenance and operation of the Round

14    Hill Golf and Country Club or the driving range operated in connection therewith, or any other

15    use of the adjoining premises."  This indemnity obligation of the owners of 2349 Royal Oaks

16    Drive, Plaintiffs' residence, owed to Round Hill is expressly unaffected by the Easement

17    Agreement (see subsection (d) of the Easement Agreement, quoted above).

18    The Easement Agreement relied upon by the plaintiffs' complaint reflects that in

19    exchange for the Lynns/First Parties' promises, Round Hill Estates/Second Party covenants the

20    following to the Lynns/First Parties:

21         (a) Second Party shall not fence said strip;

22         (b) Second Party shall promptly backfill any excavations made by it on said strip
          and repair any damage it shall do to First Parties' land;
23

24         (c) Second Party shall indemnify First Parties against any loss and damage which
          shall be caused by the exercise of said ingress and egress [upon said strip] or by
25         any wrongful or negligent act or omission of Second Party or of its agents or
          employees in the course of their employment.
26

27    [7] See Exhibit 9 to Fiske Declaration and Request for Judicial Notice. Since the Easement Agreement expressly relied
      upon by the plaintiffs incorporates by reference the Indemnity Agreement, the legal authority cited in the footnote
28    directly above regarding consideration of the Easement Agreement language in this 12(b)(6) motion applies with
      equal force to the court's permissible review of the Indemnity Agreement language in adjudicating this motion.

1    The only indemnity obligation due from Round Hill Estates to the owners of 2349 Royal

2    Oaks Drive, according to the terms of the Indemnity Agreement and Easement Agreement, is

3    related to wrongful/negligent acts pertaining to the Club's use of the strip of land that is affected

4    by the Easement Agreement.  Plaintiffs have <u>not</u> pled any material facts averring that any

5    defendant acted wrongfully/negligently when using the strip of land, and <u>nor</u> is it pled that such

6    wrongdoing/negligence amounts to a civil RICO violation.

7    The Plaintiffs aver that in the 22 years following the 1974 purchase of their home located

8    at the end of the golf course driving range, that "plaintiffs lived in peace and harmony with

9    defendant Round Hill Country Club..." (Complaint ¶10).  It is claimed that alterations were made

10   to the golf course driving range, not to the easement strip, that shortened the range and caused

11   golf balls to "trespass" upon plaintiffs' property in 1995. (Complaint ¶12)  Plaintiff alleges that

12   "the continual bombardment of plaintiffs['] premises with thousands of golf balls (a) reduces the

13   land value by $600,000 and (b) is an event triggering defendant Round Hill's alleged obligation

14   under the Easement Agreement to indemnify the plaintiffs for this loss. (Complaint ¶¶17, 26)

15   Nothing could be farther from the truth according to the Easement Agreement's terms and the

16   Indemnity Agreement's terms, even assuming the truthfulness of the pleadings.  A plain reading

17   of the Easement Agreement and Indemnity Agreement demonstrate that Plaintiffs cannot

18   rationally plead that such rights exist in their favor, as discussed below.

19   Plaintiffs allege only four "predicate acts" in an attempt to convert their state court breach

20   of easement allegations into a federal RICO claim.

21   Plaintiffs claim that "defendants['] letter of June 19, 2007" (Exhibit No. 4 to the

22   Complaint) is "a breach of the Easement, and fraud per se." It is alleged that the first two

23   paragraphs of the letter each represent two separate "predicate act[s]" and "civil RICO

24   violation[s]." (Complaint ¶¶18,19)  Exhibit No. 4 to the Complaint is a letter signed purportedly

25   by defendant Marvin B. Starr.  It contains a message from Round Hill Country Club's Board of

26   Directors.  The text of the letter in no way mentions or represents that the letter is being authored

27   by or on the behalf of defendants Carluccio, Gonsalves, Plotnik, Davis, or Miller Starr Regalia.

28   How these defendants committed a "predicate act" through Exhibit No. 4 is not pled, nor can it be

1    pled.  The author of this challenged letter closes by enclosing a copy of the Easement Agreement

2    and assuring Plaintiff Kenneth Barker that "what Round Hill Country Club elects to do with

3    respect to the 'golf ball problem' will be done in full compliance with the rights granted to it by

4    the Easement."

5        The third alleged predicate act of the defendants is identified by the plaintiffs as the

6    mailing of a July 6, 2007 letter from "defendant's attorney, Marvin B. Starr" (attached to the

7    federal complaint as Exhibit No. 5).  (Complaint ¶20)  Again, how an alleged predicate act of

8    defendant Marvin B. Starr is imputed to the remainder of the defendants is not alleged, nor can it

9    be alleged with specificity.  The plaintiffs claim that a portion of a sentence within the letter

10   (Exhibit No. 5) communicating that the loss of property value is borne by the plaintiffs because of

11   the Easement amounts to "a breach of the Easement and fraud per se." (*Id.*)  The plaintiffs offer

12   no material facts demonstrating how a purported breach of contract is morphed into fraud since

13   none exist.  The plaintiffs neglect to quote the following from the July 6, 2007 letter, which

14   undisputedly demonstrates reasonable, non-fraudulent, and good faith efforts to communicate to

15   the plaintiffs regarding the respective legal rights created by the Easement Agreement:

16       I think, however, that there is more to be said to you [Kenneth Barker] with respect
         to the possibility that you may still elect to seek judicial determination of the
17       matter.

18       Greg Gonsalves's letter to you of June 12, 2007, advised you of Round Hill
         Country Club's willingness to increase the height of the driving range fence,
19       something that it would have done long ago had it not been for your unwillingness
         to give your consent to this obvious solution of the problem.  Most importantly, in
20       this respect, was the Club's mistaken belief that you were legally entitled to
21       withhold such consent.

22       Subsequently, and after Mr. Gonsalves's letter to you of June 12, 2007, I was
         asked by the Club to step into the matter on its behalf.  To my utter surprise, my
23       review of the Club's file revealed the existence of the June 8, 1973, fence
         easement, a copy of which I sent in my letter to you of June 19, 2007.  I suspect,
24       however, that you may have been quite familiar with this easement and its
25       provisions for a very long time before then.

26       In any case, this easement clearly and unequivocally grants to Round Hill Country
         Club the unilateral right to take whatever steps it deems reasonably necessary to
27       prevent range balls from coming over the fence and onto your property.  Upon
28       reading the easement, I advised the Club of its actual legal rights in the matter and

was authorized by the Club to send my letter to you of June 19th, in which I advised you of the Club's election to proceed on its own in eliminating the problem, and the legal grounds for doing so.

... I suggest that before you institute legal action against Round Hill Country Club, as you have repeatedly and often intemperately threatened to do in your June 23rd letter and much of your past correspondence, you thoroughly acquaint yourself with the provision of Section 128.5 of the California Code of Civil Procedure, entitled "Frivolous Actions ... Award of Expenses, Attorney's Fees, and Punitive Damages." ...

The fourth "predicate act" for a RICO violation alleged by the plaintiffs is based upon Plaintiffs' Exhibit No. 6, a June 13, 2007 letter from "defendant's General Manager, Greg Gonsalves, using U.S. Mail." A single sentence from Mr. Gonsalves' letter is (similarly) cherry-picked by the plaintiffs and alleged to constitute a "breach of the Easement and fraud per se." (Complaint ¶21)

Plaintiffs' remaining allegations are immaterial; a disorganized assortment of legal conclusions and conspiratorial allegations lacking factual basis and with no relation to any particular defendant. Plaintiffs allege that "defendants ... set up an enterprise[,] structure[,] association in fact" that "functioned together as a racketeering organization to engage in a pattern of racketeering activity designed to damage and defraud plaintiff." (Complaint ¶22) Additionally alleged is that "Defendants agreed by, and between themselves, to engage in a pattern of overt acts in an unlawful scheme to defraud plaintiffs by repeatedly refusing to comply with the Easement Indemnification provisions, thereby selling the lot under false pretenses and damaging plaintiffs." (Complaint ¶23) Based upon the June and July 2007 correspondence, the plaintiffs claim that "Clearly, as confirmed by defendants['] above noted letters, defendants never had any intention of complying with the Easement indemnity provisions. The Easement was part and parcel of defendants['] conspiratorial scheme to defraud plaintiff." (*Id.*)

Aside from the plaintiff's use of the term "defendants," Plaintiffs' allegations, exclusive of those regarding Exhibits 4 through 6 to the complaint, do not identify any of the named defendants. More importantly, none of the allegations describe each defendant's respective role in any purported "racketeering enterprise" or "scheme to defraud." Plaintiffs' repeated use the

MEMORANDUM OF POINTS AND AUTHORITIES RE DEFENDANTS' MOTION TO DISMISS

1    terms "defendants" and "defendant," as well as "plaintiffs" and "plaintiff" compound the

2    responding parties' confusion.

3                                              **III.**
                                   **LAW AND ARGUMENT**
4

5        Plaintiffs are claiming that all defendants committed mail fraud/racketeering, in violation

6    of the RICO Act, by: (1) using the U.S. Mail in June and July 2007, (2) as an enterprise, (3) to

7    defraud Plaintiffs by breaching the indemnification clause within the Easement Agreement by not

8    compensating Plaintiffs' alleged damage incurred since 1996 when golf balls began entering

9    Plaintiffs' residence, and (4) to defraud Plaintiffs by selling a lot to a builder (i.e., not Plaintiffs)

10   in 1972, executing the Easement Agreement in 1973, and thereafter in 1974 the lot became

11   Plaintiffs' residence.  Defendants, and each of them, move to dismiss the complaint and action

12   pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1).

13   **A.    The Complaint and Action Should be Dismissed With Prejudice According to
             Federal Rule of Civil Procedure 12(b)(6)**
14

15       Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of an

16   action where plaintiff has failed, "to state a claim upon which relief can be granted." F.R.C.P.

17   12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the claim stated in the complaint.

18   In evaluating a Rule 12(b)(6) motion, the court must accept the material factual allegations of the

19   complaint as true and determine whether plaintiff can prove any set of material facts that would

20   give the claim legal merit. Cahill v. Liberty Mutual Ins. Co. (9th Cir. 1996) 80 F.3d 336, 337–

21   338.

22       The court may disregard allegations in the complaint if contradicted by facts established

23   by reference to documents attached as exhibits to the complaint. Durning v. First Boston Corp.

24   (9th Cir. 1987) 815 F.2d 1265, 1267; Kaufman & Broad-South Bay v. Unisys Corp. (N.D. Cal.

25   1993) 822 F.Supp.1468, 1472.  Plaintiffs may plead themselves out of court by attaching exhibits

26   that are inconsistent with their claims: "(W)hen a written instrument contains allegations in a

27   complaint to which it is attached, the exhibit trumps the allegations." Thompson v. Illinois Dept.

28   of Prof. Reg. (7th Cir. 2002) 300 F.3d 750, 754 (emphasis in original; internal quotes omitted).

1    1.    Plaintiffs' Civil RICO Allegations Hinge Upon Fictitious Indemnification Rights

2    The plaintiffs summarize their RICO action at the conclusion of their complaint:

3    "Defendants entered into a legally binding Easement which provided defendants would indemnify

4    plaintiffs from any wrongful or negligent act or omission by defendant or of it's [sic] employees

5    or agents in the course of their employment." (Complaint ¶26). "The Easement was part and

6    parcel of defendants['] conspiratorial scheme to defraud plaintiff." (Complaint ¶23)  The

7    indemnification language within the Easement Agreement that Plaintiffs whole-heartedly rely

8    upon to anchor their "predicate acts" is inapplicable because Plaintiffs' misread and misinterpret

9    the Easement, despite the Club's repeated 2007 efforts to explain the parties' respective rights.

10    As demonstrated by the thorough review of the Easement Agreement's text, which was

11    entered into between Plaintiffs' predecessors in interest and, allegedly, Defendant Round Hill

12    Country Club's predecessor company in 1973, it grants the Club broad rights to use and maintain

13    the strip of land burdened by the easement, and the fence thereon.  The Easement Agreement

14    expressly refers to an Indemnity Agreement that provides that the owner of 2349 Royal Oaks

15    Drive is obligated to indemnify the Club for damages resulting from golf ball intrusion upon 2349

16    Royal Oaks Drive – not the other way around as alleged by Plaintiffs (allegations inconsistent

17    with the exhibits and/or extrinsic evidence the Court may take judicial notice of are disregarded

18    on a 12(b)(6) motion pursuant to the aforementioned authorities).

19    The Easement Agreement announces specifically that it is not modifying the Indemnity

20    Agreement in any way.  The Easement Agreement's text continues by providing that the only

21    instance when the owner of 2349 Royal Oaks Drive would have indemnification rights, is for

22    damage caused by the Club's negligent or wrongful ingress, egress, or acts occurring upon the

23    strip of land burdened by the easement.  As communicated to the Barkers by Mr. Starr's letters,

24    the Club has the unabashed right to enlarge, improve, reconstruct, relocate or replace any fence

25    poles or structures.  However, if such activity upon the strip of land wrongfully or negligently

26    causes harm to 2349 Royal Oaks Drive, the homeowner may be entitled to indemnification.

27    Plaintiffs' complaint unquestionably does not allege that any defendant has acted wrongfully or

28    negligently "in exercising said ingress and egress" upon the strip.

R0095011/677835-1                                    10

1    A plain reading of the Easement Agreement (and the Indemnification Agreement

2  incorporated therein) reveals that Plaintiffs' allegations of breach are inconsistent with the terms

3  of the Easement.  Plaintiffs' RICO claims are rooted in the allegation of breach of the Easement

4  Agreement.  Without a sufficient pleading of breach, a RICO claim cannot possibly lie.  The

5  complaint and action should be dismissed with prejudice because no indemnification rights exist.

6       2.    Assuming *Arguendo* That the Club Breached the Easement Agreement by Not
                Indemnifying Plaintiffs, A Breach of Contract Does Not Amount to Fraud As
7              Alleged By Plaintiffs

8    Plaintiffs allege repeatedly that the breach of the Easement Agreement is "fraud per se."

9  This claim is a conclusory allegation and incorrect legal characterization.  Pleading fraud depends

10  upon pleading material facts, with specificity, showing that a defendant deliberately acted with

11  the intent to deceive the plaintiff.  Plaintiffs cannot offer, now or later, any material facts that if

12  proved would morph an alleged breach of easement into fraud.

13    Plaintiffs' breach of easement allegations and the exhibits attached to the complaint

14  demonstrate unquestionably an effort by the Club to discuss the Easement Agreement with the

15  Barkers on multiple occasions, reasonably and in good faith.  Mr. Starr explained in his letter that

16  until he looked at the Easement Agreement in 2007, and that until that point in time the Club had

17  misinterpreted the Easement Agreement.  How then could defendant Round Hill Country Club, or

18  another other defendant, have deceived the plaintiffs between 1974 and 2007 if the Easement

19  Agreement rights were misunderstood all along? (Indeed, the only select misrepresentations

20  alleged occur in June and July 2007 according to the complaint)  Once Mr. Starr reviewed the

21  Easement Agreement, he delivered a copy to the plaintiffs and delivered two explanatory letters.

22    Even assuming that Mr. Starr's opinions regarding the parties' respective Easement

23  Agreement rights are incorrect, such a reasonable mistake cannot be characterized as fraud

24  sufficient to support a civil RICO claim, even at the pleadings stage.  Plaintiff is undeniably

25  incorrect in averring in conclusory fashion that  Mr. Starr's two letters and Mr. Gonsalves' letter

26  amount to "breach of the Easement and fraud per se." See Armco Indus. Credit Corp. v SLT

27  Warehouse Co. (5th Cir. 1986) 782 F.2d 475, 487 (more than a breach of contract or warranty is

28  necessary to find that defendant was guilty of mail fraud as a principal or as an aider and abetter);

R009501I/677835-1                                      11

1   Gagliardi v. Ward (N.D.N.Y 1997) 967 F. Supp.67, 69 (breach of contract did not constitute a

2   scheme to defraud under RICO; thus complaint should be dismissed for failure to state a claim).

3   As described by the Sixth Circuit in Blount Financial Services, Inc. v. Heller and Co., "Fraud

4   alleged in a RICO civil complaint for mail fraud must state with particularity the false statement

5   of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's

6   reliance on defendant's false statement of fact . . . Sending a financial statement which

7   misconstrues the prime rate provided by the terms of the contract may breach the contract but it

8   does not amount to a RICO mail fraud cause of action. Blount Financial Services, Inc. v. Heller

9   and Co. (6th Cir. 1987) 819 F.2d 151, 152-153. Similarly, the letters the plaintiff received

10  purportedly from certain defendants do not consist of false statements of fact by which the

11  plaintiffs allegedly relied upon. The plaintiffs' sole reliance claim is based upon their alleged

12  reliance on the Easement Agreement in 1974 when they purchased their residence, which is far

13  beyond the 10-year window permitted by the RICO statute governing predicate acts. 18 U.S.C.

14  1961(5) ("at least two acts of racketeering activity ... the last of which occurred within ten years

15  ... after the commission of a prior act of racketeering activity")

16          The complaint and action should be dismissed with prejudice, accordingly. The state law

17  breach of easement and nuisance claims asserted in duplicative effort through this federal

18  complaint cannot be converted into RICO-type fraud through Plaintiffs' injection of the term

19  "fraud" and claim that defendant(s) communicated with plaintiffs through the U.S. mail.

20          3.      In Ruling on Defendants' 12(b)(6) Motion, The Court Should Apply Rule 9(b)'s
                    Heightened Standard of Pleading
21

22          In addition to being required to alleged each separate element of a RICO claim (the

23  separate elements are discussed below), a plaintiff must plead a RICO claim with sufficient

24  particularity. Schreiber Distributing Co. v. Serv-Well Furniture Company, Inc. (9th Cir. 1986)

25  806 F.2d 1393, 1400. The Ninth Circuit has "applied the particularity requirements of rule 9(b) to

26  RICO claims." Moore v. Kayport Package Express, Inc. (9th Cir. 1989) 885 F.2d 531, 541. "The

27  [RICO] Complaint must be anchored in a bed of facts, not allowed to float freely on a sea of

28  bombast... we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated

R0095011/677835-1                                12

1    conclusions, or outright vituperation." <u>Miranda v. Ponce Fed. Bank</u> (1st Cir. 1991) 948 F.2d 41,

2    44 (internal quotation marks and citation omitted).

3         Rule 9(b) requires that "in alleging fraud ..., a party must state with particularity the

4    circumstances constituting fraud ...." Fed. R. Civ. Pro. 9(b).  The Ninth Circuit has "interpreted

5    Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false

6    representations as well as the identifies of the parties to the misrepresentation." <u>Schreiber, supra,</u>

7    806 F.2d at 1401.  Thus, in ruling on the 12(b)(6) Motion to Dismiss, the Court should apply Rule

8    9(b)'s heightened and special pleading requirements.  Plaintiffs rely almost exclusively upon

9    generalized allegations that merely restate the statutory language without including any

10   substantive and specific factual allegations.  The Motion should be granted and the Complaint

11   dismissed, accordingly.

12        4.    Plaintiffs' Allegations Do Not and Cannot Sufficiently Plead a RICO Claim

13        The complaint states, in relevant part: "Using U.S. Mail and Interstate Wires, defendants,

14   as persons, set up an enterprise structure association in fact, consisting of the Round Hill Country

15   Club, it's [*sic*] President, . . . it's [*sic*] previous President, . . . it's [*sic*] General Manager, . . . it's

16   [*sic*] lawyer . . . , and it's [*sic*] law firm, . . . it's [*sic*] employees, and agents.  They function

17   together as a racketeering organization to engage in a pattern of racketeering activity designed to

18   damage and defraud plaintiff.  That is a civil RICO violation." (Complaint ¶22)

19        In addition to the specificity pleading requirements imposed by Rule 9(b) upon a RICO

20   complaint, a RICO plaintiff must allege each of the statutory elements of the predicate acts on

21   which he or she relies. <u>See Republic of Panama v. BCCI Holdings</u> (11th Cir. 1997) 119 F.3d 935,

22   948-949.  "Section 1961 requires that a RICO plaintiff establish that a defendant could be

23   convicted for violating any of its predicate statutes ... Therefore, in order to survive a motion to

24   dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at

25   least two of the pleaded predicate acts." <u>Id</u>.

26        It appears that Plaintiffs are proceeding under section <u>18 U.S.C. 1962(c)</u>, which makes it

27   unlawful for a person to manipulate an enterprise for purposes of engaging in, concealing, or

28

R009501l/677835-1                               13

1    benefiting from a pattern of racketeering activity.[8] "RICO takes aim at 'racketeering activity,'

2    which it defines as any act 'chargeable' under several generically described state criminal laws,

3    any act 'indictable' under numerous specific federal criminal provisions . . . and any 'offense'

4    involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under

5    federal law." Sedima v. Imrex Company, Inc. (1985) 473 U.S. 479, 481-482 (citing to 18 U.S.C.

6    § 1961(1)). As stated in Sedima, to state a claim under § 1962(c), the plaintiff must sufficiently

7    plead each of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of

8    racketeering activity. Sedima, supra, 473 U.S. at 496. In more holistic elaboration, the Second

9    Circuit has provided the following description of eight elements required to sustain a civil RICO

10   claim based on "pattern" allegations:

11           [Plaintiff] must allege the existence of seven constituent elements: (1) that the
             defendant (2) through the commission of two or more acts, (3) constituting a
12           "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or
             maintains an interest in, or participates in (6) an "enterprise" (7) the activities of
13           which affect interstate or foreign commerce. Plaintiff must allege adequately
             defendant's violation of section 1962 before turning to the second burden - i.e.
14           invoking RICO's civil remedies of treble damages, attorneys' fees and costs. To
             satisfy this latter burden plaintiff must allege that he was (8) "injured in his
15           business or property by reason of a violation of section 1962.

16   Moss v. Morgan Stanley, Inc. (2d Cir. 1983) 719 F.2d 5, 17 (citations omitted).

17           a.      Plaintiffs' Conclusory Allegations That the Seven Defendants Engaged in a
                     "Racketeering Activity" through Predicate Acts Justify Dismissal
18

19           "Racketeering activity" consists of the commission of a predicate act defined in 18 U.S.C.

20   § 1961(1). Sedima, supra 473 U.S. 479 at 495. The predicate acts upon which Plaintiffs rely in

21   their Complaint are the federal offenses of mail fraud and wire fraud. The essential elements of

22   mail fraud under section 1341 and wire fraud under section 1343 are: (1) the formation of a

23   scheme or artifice to defraud; and (2) the use of the mails or interstate communications wires in

24   furtherance of the scheme. United States v. Bohonus (9th Cir. 1980) 628 F. 2d 1167, 1171. The

25   heightened pleading standard set forth in Rule 9(b) applies to allegations of predicate acts

26   _____

27   [8] "It is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated."
     Reynolds v. East Dyer Development Co. (7th Cir. 1989) Here, the plaintiffs fail to state which RICO section each
     individual defendant allegedly violated, and how with particularity. Defendants presume that section 1962(c) forms
28   the basis of the complaint.

1   consisting of mail fraud and wire fraud. <u>Feinstein v. Resolution Trust Corp.</u> (1st Cir. 1991) 942 F.

2   2d 34, 42. Thus, the plaintiffs must identify the defendant who made the alleged communication,

3   and the time, place and content of the alleged communication. <u>See, e.g., New England Data</u>

4   <u>Services v. Becker</u> (1st Cir. 1987) 829 F. 2d 286, 290. Several courts have also held that Rule

5   9(b) requires that a civil RICO complaint must specify the time, place, and content of the

6   defendant's allegedly *fraudulent* representations. <u>Midwest Grinding Co. v. Spitz</u> (7th Cir. 1992)

7   769 F. Supp. 1457; <u>Creed Taylor, Inc. v. CBS, Inc.</u> (S.D.N.Y. 1989) 718 F. Supp. 1171; <u>Bender</u>

8   <u>v. Southland Corp.</u> (6th Cir. 1984) 749 F. 2d 1205, 1216. Courts have also required that when

9   dealing with more than one defendant, the plaintiff must specify which defendant told which lie

10  and under what circumstances. <u>In re National Mortgage Equity Corp. Mortgage Pool,</u> (C.D. Cal.

11  1986) 636 F. Supp. 1138, 1158-1159. Courts have also found Rule 9(b) violations when the

12  complaint fails to particularize the roles of individual defendants. <u>See, e.g., Moore v. Kayport</u>

13  <u>Package Express, Inc.</u> (9th Cir. 1989) 885 F. 2d 531, 541.

14          The plaintiffs have not alleged sufficiently any "predicate acts of mail/wire fraud," nor

15  any "racketeering activity." Plaintiffs do not allege the time, place, or content of each separate

16  defendant's allegedly fraudulent representations by mail, aside from the list of four predicate acts

17  regarding letters from Mr. Starr and Mr. Gonsalves (i.e., constituting "breach of the Easement and

18  fraud per se"). Defendants Carluccio, Plotnik, Davis, and Miller Starr Regalia are included

19  carelessly and without justification within the complaint; no alleged "predicate acts" by mail

20  target them individually. They are not alleged with specificity to have lied to Plaintiffs or

21  participated in a scheme to defraud. The specific intent requirement under the RICO statutes "is

22  satisfied by the existence of a scheme which was 'reasonably calculated to deceive persons of

23  ordinary prudence and comprehension,' and this intention is shown by examining the scheme

24  itself." <u>Schreiber, supra,</u> 806 F.2d at 1400 (quoting <u>United States v. Green</u> (9th Cir. 1985) 745

25  F.2d 1205, 1207). There are simply no viable allegations of racketeering (lies and/or scheme to

26  defraud) against defendants Carluccio, Plotnik, Davis and Miller Starr Regalia.

27          Regarding defendants Round Hill Country Club, Starr, and Gonsalves, as discussed

28  directly above, the four sentences selected by the plaintiffs from Starr's and Gonsalves'

R0095011/677835-1                                          15

1   correspondence and dubbed "predicate acts" and "breach of the Easement and fraud per se," are

2   not fraudulent representations.  These four statements are either (i) correct statements pursuant to

3   the terms of the Easement Agreement regarding the parties' respective rights thereunder, or (ii)

4   even if incorrect, certainly do not have any hint of fraud-by-mail given the basis for the Club's

5   opinion regarding its Easement rights is fully explained to the plaintiffs in the portions of the

6   correspondence not quoted by the plaintiffs' complaint, which is permitted to be considered by

7   the court on a 12(b)(6) motion.

8       Assuming *arguendo*, that the four alleged statements were fraudulent misrepresentations,

9   Plaintiffs still fall short of pleading mail and wire fraud under the RICO Act.  Fraud is not

10  equivalent to mail/wire fraud.  To constitute mail fraud in violation of RICO, "the mailing must

11  be 'for the purpose of executing the scheme.'"  United States v. Maze (1974) 414 U.S. 395, 400

12  (quoting Kann v. United States (1944) 323 U.S. 88, 94).  In fact, "actions of the defendant

13  involving the mails taken prior to the origination of the scheme to defraud or after that scheme is

14  completed cannot be the basis for convictions under the federal mail fraud statute."  United States

15  v. Gibson (8th Cir. 1983) 708 F.2d 344, 346 (citing to Maze, supra, 414 U.S. at 400-401).  The

16  only "pattern" of predicate acts that the plaintiffs refer to and attach to the complaint are the three

17  letters dated June and July 2007.  These letters were allegedly authored and mailed 25 years after

18  the Easement was executed and 24 years after the parcel of land was sold to the plaintiffs.  If, as

19  alleged by the plaintiffs, that a scheme to defraud commenced 1973 and reached fruition when the

20  plaintiffs bought their residence in 1974, there is no and cannot be any averment that the success

21  of this alleged scheme depended in any way on the 2007 letters.  These letters were sent "after

22  that [alleged] scheme [was] completed" and thus "cannot be the basis for convictions under the

23  federal mail fraud statute."  Gibson, supra, 708 F.2d at 346.

24      Furthermore, "the fraudulent intent necessary to a conviction for violation 18 U.S.C. §

25  1341 (1976) [relating to mail fraud] must be present at the time the defendant uses the mails or

26  'knowingly causes' the use of the mails by others."  Gibson, supra, 708 F.2d at 346 (citing to

27  Maze, supra, 414 U.S. at 400-401).  At the time defendant Starr and defendant Gonsalves mailed

28  the letters to the plaintiffs, there was no intent to induce the plaintiffs to buy the land "under false

MEMORANDUM OF POINTS AND AUTHORITIES RE DEFENDANTS' MOTION TO DISMISS

1   pretenses" because the lot was purchased 24 years prior.  As a result, the plaintiffs fail to plead an

2   essential element of their civil RICO claim.

3       Moreover, Plaintiffs offer no facts that defendants Round Hill Country Club, Starr, and

4   Gonsalves formed "a scheme or artifice to defraud" by way of their June and July 2007

5   representations to the plaintiffs.  Another crucial RICO element is missing and cannot be cured.

6       Plaintiffs' allegations of mail and wire fraud merely track the language of the mail and

7   wire fraud statutes.  Plaintiffs' state court complaints for nuisance and breach of easement have

8   simply been converted  by the plaintiffs into a civil RICO complaint by inserting language from

9   the RICO statute.  Such allegations do not satisfy Rule 9(b).  Plaintiffs' conclusory allegations,

10  legal characterizations (e.g., breach, fraud, racketeering organization), and unreasonable

11  inferences and unwarranted deductions of fact (e.g., fictitious indemnity rights) mixed

12  haphazardly together to create a unbelievable conspiracy theory among the various defendants

13  should be disregarded  by this Court, rendering the pleading utterly flawed without hope of

14  correction.  In re Delorean Motor Co. (6th Cir. 1993) 991 F.2d 1236, 1240; Transphase Systems,

15  Inc. v. Southern California Edison Co. (C.D. Cal. 1993) 839 F.Supp.711, 718.  Thus, Plaintiffs

16  have failed to allege sufficient facts the proof of which would demonstrate that any defendant

17  committed any predicate act which would constitute "racketeering activity."  The complaint and

18  action should be dismissed with prejudice.

19      b.     Plaintiffs Have Not Alleged that Each Defendant Engaged In A Pattern of
               Racketeering Activity

20

21      "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business

22  normally requires more than one 'racketeering activity' and the threat of continuing activity to be

23  effective.  It is this factor of continuity plus relationship which combines to produce a pattern."

24  Sedima, supra 473 U.S. at 496, n. 14. It is clear that no pattern will be found where there is only a

25  single transaction with a single victim. Medallion TV Enters., Inc. v.SelecTV of Cal. (9th Cir.

26  1987) 833 F. 2d 1360, 1365.

27      In addition to failing to plead racketeering, the plaintiffs have not alleged the existence of

28  a pattern of racketeering activity.  All that Plaintiffs allege is a single instance of fraud against a

1    single victim.  The four representations from June and July 2007 that Plaintiffs claim amount to a

2    "breach of the Easement and fraud per se," are one and the same: the Club's consistent position is

3    that under the Easement Agreement it is not obligated to pay any monies to the plaintiffs.  Thus,

4    Plaintiffs have not alleged facts the proof of which would demonstrate a threat of continuing

5    activity involving other victims.

6        The alleged fraudulent scheme upon the plaintiffs based upon the 1972 sale of the

7    property is impossible given that the sale was by Round Hill Estates to third-party builders, not to

8    the plaintiffs, as admitted by the complaint.  The plaintiffs admittedly purchased their home in

9    1974, and for 22 years thereafter no issues existed between the plaintiffs and the Club.  Plaintiffs

10   offer no facts relating the 2007 acts of Round Hill Country Club, Starr, and Gonsalves to the

11   1972-1974 events.  Indeed, the RICO statute places a 10-year window on a "pattern of

12   racketeering activity," making the 1972-1974 allegations irrelevant.  18 U.S.C. 1961(5) ("at least

13   two acts of racketeering activity … the last of which occurred within ten years … after the

14   commission of a prior act of racketeering activity")

15       Moreover, plaintiff has not pled specifically that the 1972-1974 events involved mail or

16   wire fraud.  All that is alleged is that the Easement Agreement was signed and recorded, and that

17   the plaintiffs' relied upon the recorded copy.  Hence, the only claimed "pattern" are three pieces

18   of June and July 2007 correspondence sent to the same mailing address, which is insufficient to

19   be validly considered a "pattern" of racketeering activity under the RICO Act.

20   **B.    Alternatively, The Complaint and Action Should Be Dismissed According to Federal
          Rule of Civil Procedure 12(b)(1)**

21

22       A party may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1)

23   for lack of subject matter jurisdiction.  Dismissals in cases premised on federal question

24   jurisdiction are generally limited to cases where the federal claim is "immaterial and made solely

25   for the purpose of obtaining federal jurisdiction" or the "claim is wholly insubstantial and

26   frivolous." Steel Vo. v. Citizens for a Better Environment (1998) 523 U.S. 83, 89; Bell v. Hood

27   (1946) 327 U.S. 678, 682-683; Roberts v. Corrothers (9th Cir. 1987) 812 F.2d 1173, 1177.  A

28   dismissal for lack of subject matter jurisdiction is without prejudice, and does not preclude a

R009501l/677835-1                                    18

1    plaintiff from seeking relief in state court, if available, whereas a dismissal for failure to state a

2    claim is with prejudice. See Fed. R. Civ. Pro. 41(b)  A Rule 12(b)(1) factual attack allows the

3    court to weigh and decide disputed facts (the truthfulness of the allegations is not assumed), and

4    the burden of proof is on plaintiff, the party who invoked federal jurisdiction. Stock West, Inc. v.

5    Confederated Tribes of Colville Reservation (9th Cir. 1989) 873 F.2d 1221, 1225.  Where the

6    decision to dismiss is based on extrinsic evidence, the determination is on the merits, and there is

7    no basis for granting leave to amend the pleadings.

8        A court should usually not resolve genuinely disputed facts where the question of

9    jurisdiction is dependent on the resolution of factual issues going to the merits. Roberts v.

10   Corrothers, (9th Cir. 1987) 812 F.2d 1173, 1177.  Here, the question of jurisdiction under the

11   RICO Act is independent of the dispute regarding the Easement Agreement and golf ball trespass,

12   since the breach of easement and nuisance allegations alone do not amount to adequately pleading

13   a RICO claim.  In any event, disputed facts will not prevent dismissal of claims under federal law

14   when the claim are (i) immaterial and made solely for the purpose of obtaining jurisdiction, or (ii)

15   wholly insubstantial or frivolous, or (iii) so patently without merit that they require no meaningful

16   consideration. Steel Co., supra 523 U.S. at 89; Bell, supra 327 U.S. at 682-683.  Plaintiffs' RICO

17   complaint meets each of the three categories that justify dismissal for want of federal subject

18   matter jurisdiction under Rule 12(b)(1).

19   **C.    Alternatively, The Action Should Be Stayed Based Upon the Related Pending State
        Court Actions Between the Same Parties and Involving the Same Facts**

20

21       This court's power over its docket includes the power to stay or dismiss a duplicative suit.

22   Curtis v. Citibank, N.A. (9th Cir. 2000) 226 F.3d 133, 138.  "To determine whether a suit is

23   duplicative, we borrow from the test for claim preclusion, the true test of the sufficiency of a plea

24   of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally

25   disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." Adams v.

26   California Dept. of Health Services (9th Cir. 2007) 487 F.3d 684, 688-89. The appropriate inquiry

27   is:

28

MEMORANDUM OF POINTS AND AUTHORITIES RE DEFENDANTS' MOTION TO DISMISS

[i]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same... "[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions."

Id. at 689.

The facts pled in this federal lawsuit are virtually identical to those pled in the first-filed state court actions (see Request for Judicial Notice, Exhibits 1 and 3). Plaintiff Kenneth Barker, Plaintiff Lois Barker, and the seven Defendants named in this federal action are also parties to the state court actions. The Plaintiffs seek monetary damages for purported diminution in property value in both state and federal court. The plaintiffs have effectively cut and pasted their state court complaints and combined those allegations with statutory language from the RICO Act in an attempt to create a federal claim. The RICO claim could have been brought in state court as well as federal court. Tafflin v. Levitt (1990) 493 U.S. 455, 458.

It is clear that "the ... actions share a common transactional nucleus of facts." Adams, supra at 689. The only difference is the legal theories. It is equally clear any judgment on the breach of easement, nuisance, and fraud causes of action in the state court actions will affect this federal RICO action; principles of res judicata will apply. See Id. at 690. As a general practice, federal courts should stay rather than dismiss actions when they decline to proceed on merits because of pendency of related state court proceeding, since, should a state court fully resolve dispute, the practical effect of the stay will be identical to that of dismissal, but should issue remain, parties can revive action without statute of limitations problems since federal court would have retained its jurisdictional tie to case. Northern Cheyenne Tribe of the Borther Cheyenne Indian Reseration v. San Carlos Apache Tribe of Arizona (9th Cir. 1983) 721 F.2d 1187, 1188.

## IV.
## CONCLUSION

Plaintiffs' complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and accordingly the complaint and action should be dismissed with prejudice as to all the defendants: Round Hill Country Club, Carole Carluccio,

1    Greg Gonsalves, David Plotnick, Pete Davis, Marvin B. Starr, and Miller Starr Regalia.

2    Alternatively, the complaint and action should be dismissed without prejudice and without leave

3    to amend for want of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

4    12(b)(1).  Also alternatively, if the action is not dismissed, a stay of Plaintiff's federal action is

5    merited due to the pending state court actions between the same parties and which involve the

6    identical facts as those alleged in Plaintiff's federal complaint filed June 17, 2008.

7    Dated: July 10, 2008               ARCHER NORRIS

8

9                                 /s/ Lee A. Archer

10                             Lee A. Archer
                                 Attorneys for Defendant

11                             ROUND HILL COUNTRY CLUB, GREG
                                 GONSALVES, DAVID PLOTNIK,

12                             CAROLE CARLUCCIO, PETE DAVIS,
                                 MARVIN B. STARR, AND MILLER

13                             STARR REGALIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES RE DEFENDANTS' MOTION TO DISMISS

1   Lee A. Archer (Bar No. 038938)
    larcher@archernorris.com
2   William S. Fiske (Bar No. 246099)
    wfiske@archernorris.com
3   ARCHER NORRIS
    A Professional Law Corporation
4   2033 North Main Street, Suite 800
    Walnut Creek, California  94596-3759
5   Telephone:    925.930.6600
    Facsimile:    925.930.6620
6
    Attorneys for Defendants
7   ROUND HILL COUNTRY CLUB, GREG
    GONSALVES, DAVID PLOTNIK, CAROLE
8   CARLUCCIO, PETE DAVIS, MARVIN B.
    STARR, AND MILLER STARR REGALIA
9

10                 UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13
    KENNETH BARKER and LOIS ANNE
14   BARKER,

15            Plaintiffs,

16      v.

17   ROUND HILL COUNTRY CLUB;
    CAROLE CARLUCCIO; GREG
18   GONSALVES; DAVID PLOTNIK; PETE
    DAVIS; MARVIN B. STARR; MILLER
19   STARR REGALIA; DOES 1 to 50
    inclusive,
20
            Defendants.
21

Case No.  3:08-CV-02977-SI

**DECLARATION OF WILLIAM S. FISKE
AND REQUEST FOR JUDICIAL NOTICE
[Fed. R. Evid. 201] IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Date:        Friday, October 3, 2008
Time:       9:00 a.m.
Dept:       10, Federal Bldg. 19th Floor
Judge:     Hon. Susan Illston

Complaint Filed:  June 17, 2008

22

23      I, WILLIAM S. FISKE, declare:

24      1.     I am an attorney at law, duly licensed to practice before all of the courts of the

25  State of California and the Northern District of the United States District Court.  I am an associate

26  attorney with the law firm of Archer Norris, counsel for the defendants in this action.  I have

27  personal knowledge of the matters set forth below and, if called as a witness, could and would

28  testify competently thereto.  This declaration is made in support of Defendants' Motion to

R0095011/677960-1

1    Dismiss, and this request for judicial notice made under Federal Rule of Evidence, section 201.

2        2.        Attached hereto as Exhibit "1" is a true and correct copy of a Complaint (including

3    all exhibits thereto) filed on July 13, 2007 in the Superior Court for the State of California in

4    Contra Costa County under the caption *Kenneth Barker v. Round Hill Country Club, et al.* (Case

5    No. MSC07-01488) and referenced by Defendants' Motion to Dismiss papers.  Additionally

6    included within Exhibit 1 hereto are true and correct copies of Plaintiff Kenneth Barker's three

7    "Identification of Does" filings in the same Superior Court, which name as defendants Greg

8    Gonsalves, David Plotnik, Carole Carluccio, Allen O'Krueger, Pete Davis, Peter Ruotsi, Marvin

9    B. Starr, and Miller Starr Regalia.

10        3.        Your declarant's law firm is counsel of record for the defendants named in this

11    Complaint, and your declarant declares that Exhibit "1" is a true and accurate copy of official

12    records of the Superior Court for the State of California in Contra Costa County.  Pursuant to

13    Federal Rules of Evidence ("F.R.E.") Rule 201, Defendants request the court take judicial notice

14    of Exhibit 1.

15        4.        Attached as Exhibit "2" is a true and correct copy of the Contra Costa County

16    Superior Court's online Register of Actions for Case No. MSC07-01488 dated July 8, 2008.

17    Your declarant visited the Superior Court's Open Access website and printed this copy.  Pursuant

18    to F.R.E. Rule 201, Defendants request the court take judicial notice of Exhibit 2.

19        5.        Attached hereto as Exhibit "3" is a true and correct copy of a Complaint (including

20    all exhibits thereto) filed on January 8, 2008 in the Superior Court for the State of California in

21    Contra Costa County under the caption *Kenneth Barker and Lois Anne Barker v. Round Hill*

22    *Country Club* (Case No. MSC08-00059) and referenced by Defendants' Motion to Dismiss

23    papers.

24        6.        Your declarant's law firm is counsel of record for the defendants named in this

25    Complaint, and your declarant declares that Exhibit "3" is a true and accurate copy of official

26    records of the Superior Court for the State of California in Contra Costa County.  Pursuant to

27    F.R.E. Rule 201, Defendants request the court take judicial notice of Exhibit 3.

28    //

DECLARATION OF FISKE AND REQUEST FOR JUDICIAL NOTICE

1    7.    Attached as Exhibit "4" is a true and correct copy of the Contra Costa County

2    Superior Court's Register of Actions for Case MSC08-000059 dated July 8, 2008.  Your

3    declarant visited the Superior Court's Open Access website and printed this copy.  Pursuant to

4    F.R.E. Rule 201, Defendants request the court take judicial notice of Exhibit 4.

5    8.    Attached hereto as Exhibit "5" is a true and correct copy of a Complaint (including

6    all exhibits thereto) filed on June 10, 2008 in the United State District Court, Northern District of

7    California, under the caption *Kenneth Barker and Lois Anne Barker v. Default Resolution*

8    *Network, et al.* (Case No. C08-02898 CW) and referenced by Defendants' Motion to Dismiss

9    papers.

10    9.    Your declarant obtained the attached copy of this Complaint from the Court's

11    PACER website, and declares that Exhibit "5" is a true and accurate copy of official records of

12    the United States District Court, Northern District of California.  Pursuant to F.R.E. Rule 201,

13    Defendants request the court take judicial notice of Exhibit 5.

14    10.    Attached as Exhibit "6" is a true and correct copy of the Contra Costa County

15    Superior Court's Register of Actions for Case MSN08-0822 dated July 9, 2008.  Your declarant

16    visited the Superior Court's Open Access website and printed this copy.  Pursuant to F.R.E. Rule

17    201, Defendants request the court take judicial notice of Exhibit 6.

18    11.    Attached as Exhibit "7" is a true and correct copy of the Contra Costa County

19    Superior Court's Register of Actions for Case MSC07-001429 dated July 9, 2008.  Your

20    declarant visited the Superior Court's Open Access website and printed this copy.  Pursuant to

21    F.R.E. Rule 201, Defendants request the court take judicial notice of Exhibit 7.

22    12.    Plaintiff Kenneth Barker, on July 5, 2007, filed a third civil action, *Kenneth Barker*

23    *v. Round Hill Country Club* (Case No. MSC 0701429) wherein he alleges, as a *qui tam* plaintiff

24    (the state Attorney General declined to intervene), that the defendant has violated California's

25    False Claims Act (Gov. Code sections 12650-12655) by continuously operating thousands of

26    unlicensed and uninsured vehicles on public highways without paying the purported required

27    state vehicle fees and taxes.  Your declarant's law firm is counsel of record for the defendants

28    named in this Complaint.

R0095011/677960-1                                  3

1    13.    Attached as Exhibit "8" is a true and correct copy of the Easement Agreement

2    dated June 1, 1973 and publicly recorded June 8, 1973 which your declarant offers in lieu of

3    Plaintiffs' partial copy that is attached as Exhibit 2 to Plaintiffs' complaint.  Pursuant to F.R.E.

4    Rule 201, Defendants request the court take judicial notice of Exhibit 8.

5    14.    Attached as Exhibit "9" is a true and correct copy of the publicly recorded

6    Indemnity Agreement to which the Easement Agreement incorporates by reference.  Pursuant to

7    F.R.E. Rule 201, Defendants request the court take judicial notice of Exhibit 9.

8    I declare under penalty of perjury that the foregoing is true and correct under the laws of

9    the United States, and that this declaration is made this 9th day of July, 2008, in Walnut Creek,

10   California.

11   Dated: July 9, 2008                      ARCHER NORRIS

12

13                                            */s/ William S. Fiske*
                                             _____
14                                            William S. Fiske
                                             Attorneys for Defendant
15                                            ROUND HILL COUNTRY CLUB

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

1  Kenneth Barker,
2  2349 Royal Oaks Drive,
   Alamo, CA. 94507
3  Telephone ( 925 ) 820-0198
   Fax.     ( 925 ) 820-0198
4  Plaintiff in Pro Per.

F I L E D

JUL 13 2007

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By _____
Deputy Clerk

THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA.

7                                    NO. **C 07    01488**

8  KENNETH BARKER              )   LAWSUIT FOR ABATEMENT OF
                               )   NUISANCE.CCP SECTIONS 731-736
9     Plaintiff                )   AND FOR A RESTRAINING ORDER
                               )   AMD TEMPORARY AND PERMANENT
10       V                     )   INJUNCTION.
                               )
11                             )
   ROUND HILL COUNTRY CLUB,DOES )
12 1 through 50, inclusive,    )     PER LOCAL RULE 5 THIS
                               )     CASE IS ASSIGNED TO
13    Defendant                )
                               )
14 _____)

15

16 COMPLAINT

17 1 . Plaintiff, Kenneth Barker alleges:        SUMMONS ISSUED

18 Plaintiff brings this action to obtain a  Restraining Order and a Temporary and

19  Permanent  Injunction to compel defendants, Round Hill Country Club, (including it's

20 members, agents, employees, servants, guests,  invitees and attorneys) to abate a

21 continuing nuisance and to recover it's costs,  expenses, losses and other damages

22 incurred, or to be incurred, as a result of defendants  negligent shortening of the golf

23 course driving range, and subsequently hitting thousands  of golf balls and practice

24 range balls (sometimes called driving range golf  balls) onto certain property ( the

25 Barker home ) owned by plaintiff and located at 2349 Royal Oaks Drive, Alamo, Contra

26 Costa County, CA  94507 ( the "Property ." )

27

1.

2. Plaintiff Kenneth Barker, is now, and at all times mentioned, was a resident of Alamo, California.

3. Defendant Round Hill Country Club, is now, at all times mentioned, was a resident of Alamo, California, and a corporation organized under the laws of the State of California, with it's principal place of business at 3169 Round Hill Road, Alamo, CA 94507.

4. The true names of and capacities of defendants sued in this action under the fictitious names DOES 1 through 50 are unknown to plaintiff and plaintiff will seek leave of the court to amend this complaint to allege those names and capacities as soon as they are ascertained.

5. Plaintiff is informed and believes, and on the basis of such information alleges, that at all times mentioned in this complaint, one or more of the defendants were acting as the agent, servant, partner, employee, or joint venturer of one or more of the remaining defendants , and in doing the things described in this complaint were acting within the course and scope of this agency, service, partnership, joint venture, and/or employment with the permission and consent,express and implied, and for the benefit of one or more of the remaining defendants.

6. Allegations in this complaint against defendants refer to both the specifically named defendants and the fictitiously named defendants.

## PRELIMINARY FACTS.

7. On or about August 25, 1974 Plaintiff purchased the Property. A copy of the deed is attached to this complaint as Exhibit No.1, and incorporated by reference.

8 .The Property contained an Indemnification Agreement in favor of defendant. A copy is attached to this complaint as Exhibit No. 2, and incorporated by reference. It is

undisputed that after plaintiff purchased the Property defendant materially shortened the length of the driving range, which since 1995, has allowed multi-thousands of range balls golf ball to trespass onto the Property.

The critical question to be determined by the Court for this lawsuit is as follows: Is defendant allowed to bombard the Property with thousands of driving range golf balls.? Defendant contends that the terms of the Indemnity Agreement allow it to hit thousands of range golf balls onto the Property, and thereby, it may trespass onto the Property.

Plaintiff contends, that by shortening the driving range defendant has unlawfully, and unilaterally, changed material terms and conditions of the Indemnity Agreement. Furthermore, plaintiff contends defendant was negligent in shortening the driving range because it is now far too short. Plaintiff contends defendant's unilateral actions and negligence make the Indemnification Agreement null and void.

Long establish law holds that a person cannot unilaterally change the terms and conditions of an Indemnification Agreement. Nor can a person negligently cause a nuisance, and then subsequently be indemnified for his own negligence.

9 .The Property also contained an Easement for defendant to construct a fence for the specific purpose of preventing golf balls from the golf course and driving range from trespassing or causing damage to the Property. The Easement states in pertinent part: defendant could construct a :

*"...wire metal screen or fence .... for the purpose of preventing golf balls from the golf course and driving range from trespassing or causing damage to the property of First Parties ( i.e. plaintiff ) or causing damage to person or persons or invitees of the First Parties' while on First Parties premises."*

( emphasis added ) A copy of the Easement is attached to this complaint as Exhibit No

3.

3 and incorporated by reference.

10) The Easement entered into between plaintiff and defendant, Round Hill Country Club, imposed various additional continuing obligations, both actual and implied, upon defendant, including, but not limited to the following:

" ( c) *Second Party ( i.e defendant ) shall indemnify First Parties  ( i.e. Plaintiff ) against any loss and damage which shall be caused by the exercise of said ingress <u>or by any wrongful or negligent act or omission of Second Party or its agents or employees in the course of their employment.</u> "*

( emphasis added )

11 ) Under long established and repeatedly upheld law, there is an implied warranty that defendant shall operate and manage it's business, including the driving range, in a safe, legal, and responsible manner, so as not to harm, or damage plaintiff, and/or the general public. As explained below, defendant breached, and failed to comply, with every one of these covenants, agreements, and warranties.

12 ) The golf course was built and put into operation in 1960. In 1960 the driving range was about 260 yards long and it was the same 260 yard length when plaintiff purchased the Property in 1974. Prior to purchasing the Property, plaintiff diligently inquired into, and checked, the actual length of the golf course driving range.

*For a period of twenty one ( 21 ) years from 1974 ( i.e. the date plaintiff purchased the Property) until 1995 ( i.e. the date defendant shortened the driving range )  there were only minor  inconsequential incidents with range golf balls, ( usually from drunks and school children ). In 1995  the golf ball trespass problems started  which have caused this lawsuit.*

13 ) In 1995, in preparation for the construction of a new club house, defendant

4.

shortened the golf course driving range without consideration of the

thousands of golf and range balls that would then bombard property. A new 48,000 S.F

club house was built in 1996. The location of the new club house and adjacent course

improvements shortened the driving range by about 40 yards. Subsequently, defendant

made further upgrades to the golf course. Those upgrades relocated the driving range

teeing areas, which shortened the driving range by about another 30 yards. Thus,

defendants negligently shortened the driving range by about 70 yards. *Critically,*

*because of defendants negligent golf course changes, the driving range is*

*now far too short. It is less than200 yards long. Tellingly, present golf course design*

*standards recommend driving ranges be a minimum of 375 yards long, or longer.*

14 ) Since 1995, thousands of range balls and golf balls have rained down and

bombarded the Property. Affidavits confirming these facts are made by Kenneth Barker,

Exhibit No. 4, and and Lois Barker, Exhibit No.5. They are attached to this complaint

and incorporated by reference.

15 ) Defendant knew, or should have known, it's unilateral shortening of the driving

range was negligent and would allow unrestricted golf and range balls to trespass onto

the Property

16 ) Defendant fraudulently concealed, and failed to disclose to plaintiff, that defendant

planned to shorten the driving range. Thus, Plaintiff had no opportunity to protest or

taken action stop the shortening of the driving range.

17 ) Plaintiff has complained constantly since these continuous trespasses became

apparent, but defendant has refused to do anything meaningful about it and the situation

has become worse rather than having improved. Plaintiff has continually complained to

defendant from 1995 to the present date of 2007 ( i.e. 12 years ),and has made

hundreds of phone calls of complaint to the golf club professional and the club general

5.

manager. However nothing has changed and range balls continue to bombard the Property.

Being struck with a golf ball is obviously very painful, and can cause serious bodily harm, and in some cases, even death. Both plaintiff and his wife have been hit several times with range golf balls. Additionally, seven ( 7 ) windows in the Barker home have been broken by range golf balls. Since 1995 to the present time ( i.e. 12 years ) plaintiff has been terrorized and fearful of using his Property, and has been denied the reasonable use of his home.

18 ) In a six day period from May 25, 2007, to  May 31, 2007 fifty eight ( 58 ) range balls trespassed onto the " Property ." At a subsequent  meeting on June 6, 2007 with the defendants  General Manager, ( Greg Gonsalves ) and the golf professional  ( David Plotnik ) plaintiff again complained about the errant golf balls. *Plaintiff demanded bombardment of the Property with range balls must stop once and for all.* On June 13, 2007 defendant.'s General Manager responded in writing. Significantly, he ignored the fact that defendant's negligent shortening of the driving range had caused the golf ball trespass problem. Defendant essentially asserted the Indemnity Agreement gave defendant a license to bombard the Property  with range balls. Defendant 's June 13, 2007 letter  is attached to this complaint as Exhibit No.6 and incorporated by reference.

19 ) By a June 19, 2007 letter from defendant's lawyer, Marvin B. Starr, defendant again ignored the fact that it had caused the golf ball trespass problem. Additionally, in breach of the Implied Covenant of Good Faith, defendant said  *it would not try to find a mutually agreeable solution to the golf  ball trespass  problem. Rather, defendant stated it would unilaterally take steps  defendant deemed advisable in it's*

6.

own best interests, *and would ignore plaintiff's interests and rights*. Defendant 's June 19, 2007 letter is attached to this complaint as <u>Exhibit No. 7</u> and incorporated by reference.

20 ) By letter dated June 23, 2007 plaintiff made a monetary settlement offer to defendant and set July 13, 2007 as the dead line for permanent resolution of the golf ball problem, or in the alternative, plaintiff would file a lawsuit against the Round Hill Country Club. A copy of this letter is attached to this complaint as <u>Exhibit No. 8</u> and incorporated by reference.

21 ) By letter dated June 29,2007 plaintiff again complained about defendants unremitting bombardment of the Property with range golf balls. Noteworthy, between May 25, 2007 and May 31, 2007, fifty eight ( 58 ) golf balls trespassed onto the Property. Between June 6, 2007 and June 28, 2007 a further one hundred and seven ( 107 ) golf balls trespassed onto the property. *Thus, from May 25, 2007 to June 28 2007, a total of one hundred and sixty five ( 165 ) golf balls trespassed onto the Property.* A copy of this letter is attached to this complaint as <u>Exhibit No. 9</u> and incorporated by reference.

22 ) Noteworthy, defendant ignored plaintiffs demand to stop the trespass of golf balls onto the Property; refused plaintiffs settlement offer; and ignored Plaintiff 's July 13, 2007 dead line date. Defendants refusal to to stop the trespass of golf balls on to the Property caused plaintiff to file this lawsuit.

23 ) As a proximate result of defendants unremitting twelve ( 12 ) year long bombardment of plaintiffs home and gardens with range golf balls, plaintiff has been woefully harassed, intimidated, and prevented from using and enjoying his home and property. Plaintiff and has incurred, and will incur, the following damages:

( a ) Plaintiff has incurred and will continue to incur substantial expenses , including

consultants fees and legal fees associated with evaluating the nature and extent of trespass of range golf balls onto the property.

( b ) Plaintiff has suffered and will continue to suffer loss of the full use and enjoyment of the Property, and other interference with its right of private occupancy.

( c ) The value and marketability of the Property has been greatly diminished by the trespass of range balls onto the Property. In fact, unless the golf ball trespass problem is permanently abated, the Property will have little, if any, realistic resale value.

( d ) Plaintiff has incurred and will continue to incur attorney fees, expert witness fees, costs, and expenses in prosecuting this action.

( e ) Plaintiff has incurred and will continue to incur costs to repair and replace broken windows and doors caused by the trespass of range balls onto the Property

( e ) Plaintiff may be required to defend future actions and administrative proceedings arising directly and indirectly from injury or death to visitors or invitees caused by the trespass of range golf balls onto the Property.

As a result of the above, Plaintiff has been and will be damaged in an amount unknown at present, but anticipated to exceed $ $5,000,000.00, which amount will be proven at trial.

### FIRST CAUSE OF ACTION
( Nuisance )

24 ) Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 23, as though fully set forth herein.

25 ) The bombardment of the Property with thousands of trespassing range golf balls since 1995 has unreasonably and substantially interfered with and obstructed plaintiff's free use and enjoyment of the Property ( i.e The Barker home and garden ) and other rights of private occupancy, thus constituting a nuisance. A nuisance is defined as:

*"Anything that annoys or disturbs unreasonably; hurts a person 's use of his or her property ; or violates the the public health, safety or decency ."* ( Oran 's Dictionary Of The Law )Defendants have repeatedly refused and neglected to abate the nuisance which has continued to the present time.

26 ) Plaintiff has not consented, and does not consent to this nuisance. Defendants knew, of should have known, plaintiff did not consent to the nuisance.

27 ) Because defendants concealed and failed to disclose  it planned to shorten the driving range, plaintiff did not learn of the nuisance until range golf balls started to continually trespass upon the Property commencing in about April 1995.

28 ) As a direct and proximate cause of the continuing nuisance, plaintiff has incurred and will continue to incur expenses, losses, and damages, as set forth above.

29 ) Defendants, and each of them, had actual knowledge of the many years of golf ball trespass onto the Property and nuisance they created  at the Property. The conduct of some or all defendants in causing and failing to abate the nuisance demonstrates, and clearly  confirms, malice, and  a willful, conscious, and callous disregard for the rights and safety of others, and an arrogant  disregard for the law. Plaintiff is therefore entitled to putative damages from some or all defendants in an amount sufficient to deter future such activity.

30 ) Unless plaintiff is granted the requested restraining order, and temporary  permanent injunctive relief, plaintiff will suffer irreparable harm, for which there is no adequate remedy at law, in that defendant will be able to continue the nuisance and continue to bombard the Property with thousands of range golf balls, thus, making the Property unsafe and unusable.

## SECOND CAUSE OF ACTION

( Breach of Written Contract—Easement Agreement )

31 ) Plaintiff incorporates by reference the allegations in Paragraphs 1 Through 30, as through fully set forth here.

32 ) Plaintiff has performed all conditions, covenants, and promises required of the Property owner in accordance with the terms and conditions of the Easement.

33 ) Defendants have breached their continuing obligations under the Easement by :

( a ) Failing to comply with all applicable laws, regulations, rules, orders, of every governmental agency, including OSHA and Cal-OSHA having jurisdiction over the driving range and golf course, or the activities or uses to be conducted on the premises, including without limitation, those relating to health and safety.

( b ) Failing to comply with the express written terms of the Easement, which states in pertinent part, the following :

( i ) defendant will construct a fence for  *"...preventing golf balls from the golf course and driving range from trespassing or causing damage to the property of First Parties ( i.e Plaintiff ) or causing damage to any person or persons , or invitees of the First Person while on First Parties' premises..."* ( Ref : Page No.1 of the Easement, Exhibit No.3 )

( ii ) *" Second Party ( i.e. Defendant ) shall Indemnify First Parties against any loss and damage which shall be caused by the exercise of said egress or by any wrongful or negligent act or omission of second Party or of its agents or employees in the course of their employment. "* ( Ref :Page No. 3 of the Easement, Exhibit No. 3 )

( c ) Defendant failed to prevent golf balls and driving range balls from trespassing and

causing damage to plaintiffs property, and failed to indemnify plaintiff against any loss and damage by any wrongful or negligent act or omission of defendants agents or employees.

( d ) Creating a nuisance at the property.

34 ) Plaintiff did not discover defendant 's breaches of the Easement until after defendant had shortened the driving range starting on or about April 1995.

35 ) As a direct and proximate result of defendants ' breach of their continuing obligations under the Easement, plaintiff has suffered expenses, losses, and damages as set forth above.

### THIRD CAUSE OF ACTION

#### ( Breach of the Implied Covenant of Good Faith )

36 ) Plaintiff incorporates by reference the allegations in Paragraph 1 through 3, as though fully set forth here.

37 ) Defendants have breached the covenant of good faith and fair dealing implied in the Easement by concealing and failing to disclose that defendant intended to materially shorten the length of the driving range. Defendant, knew or should have known, that said shortening would allow unrestricted range golf balls to trespass onto the Property, causing harm, damages, and highly unsafe conditions for the use of the Property. Defendants' letters of June 13, 2007 and June 19, 2007 ( Exhibits No. 6 and No. 7 ) unquestionable bring into very sharp focus defendants arrogant, illegal, and willful conduct.

38 ) Plaintiff did not discover defendants breaches until the multitude of driving range balls began to trespass onto the Property in 1995.

39 ) As a direct and proximate result of defendants breach of the Easement, plaintiff has suffered expenses, losses, fear, intimidation, and damages as set forth above.

PRAYER FOR RELIEF

Wherefore, plaintiff requests that:

1 . A restraining order be issued restraining defendant from continuing to operate the golf course driving range adjoining plaintiff 's Property.

2 . A temporary injunction be issued enjoining defendant from continuing to operate the golf course driving range  adjoining plaintiff 's Property.

3 . A permanent injunction be issued enjoining defendant from continuing to operate the golf course driving range adjoining plaintiff 's property.

4 . Plaintiff's costs, expenses, and liabilities, including reasonable attorney  fees, incurred in connection with the unremitting trespass of range balls onto the property through the date of judgment, believed to approximate $ 2,000,000.00 or more as will be proved on trial of this action.

5 . Compensatory damages in an amount  proved at trial, but believed to approximate $3,000,000.00, or more.

6 . Putative damages as may be appropriate from defendants, in an amount sufficient to deter in the future the above described wrongful conduct.

7 . Prejudgment interest: and

8 . Such other and further relief as the court may deem just and proper.

Dated: _JULY/13/2007_

Kenneth Barker, Plaintiff in Pro Per.

Plaintiff Demands Trial By Jury.

12.

## LIST OF EXHIBITS

1 . Property Deed.

2 . Indemnification Agreement.

3 . Easement Agreement.

4 . Affidavit by Kenneth Barker.

5 . Affidavit by Lois Anne Barker.

6 .Defendant's letter dated June 13, 2007.

7 . Defendant's letter dated June 19, 2007.

8 . Plaintiff 's letter dated June 23, 2007.

9 . Plaintiff 's letter dated June 29, 2007.

RECORDING REQUESTED BY

Transamerica Title Insurance Co.

AND WHEN RECORDED MAIL TO

Name Mr. & Mrs. Kenneth Barker
Street 2349 Royal Oaks Drive
Address
City Alamo, Ca.
State
Zip

MAIL TAX STATEMENTS TO

Name same as above
Street
Address
City
State
Zip

AUG 29 1974
77088

AUG 29 1974
CONTRA COSTA CO.
TRANSFER TAX
PAID $ 39.60

RECORDED AT REQUEST OF
TRANSAMERICA TITLE INS. CO.

AT 9 AUG 29 1974 M.
MIN. PAST

OFFICIAL RECORDS OF
CONTRA COSTA COUNTY

J. R. OLSSON, County Recorder

Fee $ 4.00

BOOK 7310 PG 342

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DOCUMENTARY TRANSFER TAX $ 39.60
............COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
....XX...OR COMPUTED ON FULL VALUE LESS LIENS AND
        ENCUMBRANCES REMAINING AT TIME OF SALE.
Transamerica Title Insurance Co.
Signature of Declarant or Agent determining tax, Firm Name

# GRANT DEED

(Escrow No. 347479 D )

By this instrument dated **August 26, 1974** , for a valuable consideration,

JIMMIE R. LYNN AND CAROLE J. LYNN, husband and wife, as joint tenants

hereby GRANTS to

KENNETH BARKER AND LOIS ANNE BARKER, his wife, as joint tenants

the following described Real Property in the State of California, County of Contra Costa

City of ......(unincorporated)

SEE EXHIBIT "A" ATTACHED HERETO.

JIMMIE R. LYNN

CAROLE J. LYNN

STATE OF CALIFORNIA }
COUNTY OF Contra Costa } SS.

On August 26 , 19 74 before me, the undersigned, a Notary Public in and for said County and State, personally appeared Jimmie R. Lynn, Carole J. Lynn , known to me to be the person S whose name S are subscribed to the within instrument, and acknowledged to me that the y executed the same.

Notary's Signature Bonnie L. Judd

OFFICIAL SEAL
BONNIE L. JUDD
NOTARY PUBLIC - CALIFORNIA
CONTRA COSTA COUNTY
My Commission Expires Oct. 16, 1978

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT 1

EXHIBIT "A"

BOOK 7310 PG 343

The land referred to in this Report is situated in the State of California, County of     Contra Costa .
and is described as follows:

Portion of Lot 3, map of Subdivision 2794, filed May 23, 1962, Map Book 87, page 30,
Contra Costa County records, described as follows:

Beginning on the northwest line of Royal Oaks Drive, at the most southerly corner of
Lot 3, as designated on said map of Subdivision 2794; thence from  said point of
beginning, along the exterior lines of said Lot 3, north 43° 35' 08" west, 185 feet;
north 46° 24' 52" east, 6 feet and south 89° 44' 05" east, 110 feet to a point on
the north lines of said Lot 3, distant thereon north 89° 44' 05" west, 189.57 feet
from the most easterly corner thereof; thence south 79° 41' 38" east, 142.79 feet to
a point on the northwest line of said Royal Oaks Drive, as designated on said map of
Subdivision 2794, distant thereon southwesterly 55 feet from the most easterly corner
of said Lot 3; thence along said Royal Oaks Drive, along the arc of a curve to the
left with a radius of 310 feet, through a central angle of 11° 48' 56", an arc distance
of 63.93 feet and south 46° 24' 52" west, 106 feet to the point of beginning.

EXCEPTING:  The mineral rights reserved in the deed from Western Title Guaranty Company,
Contra Costa County Division, recorded February 3, 1966, book 5050, page 483, Official
Records, as follows:

"An undivided one-half ($\frac{1}{2}$) interest in and to all minerals, oil, other hydrocarbons,
gas and all associated substances existing in or on said real property, together
with the right to explore, drill for, extract, take from, remove and dispose of one-
half ($\frac{1}{2}$) of any or all of said minerals, oil, other hydrocarbons, gas and all asso-
ciated substances from said real property, below a depth of five hundred (500) feet
from the surface thereof, by wells, equipment and means located on the surface of
adjacent land and extended into said real property herein conveyed and hereinabove
described at a point or points below a depth of five hundred (500) feet from the surface
of said real property."

                                 END OF DOCUMENT

EXHIBIT "B"

INDEMNITY AGREEMENT

THIS AGREEMENT, made on the _____10_____ day of November, 1972, in

the County of Contra Costa, State of California.

The parties to this Agreement are JIMMIE R. LYNN and CAROLE J. LYNN,

his wife, hereinafter called "Indemnitor" and ROUND HILL ESTATES, a California

corporation, hereinafter called "Indemnitee".

Indemnitee has entered into a Deposit Receipt with Indemnitor to sell to

Indemnitor certain real property in Contra Costa County, State of California, commonly

known as 2349 Royal Oaks Drive, Round Hill, California; being Lot 3, Unit 2, Subdivision

2794, Records of the County of Contra Costa, State of California. Among other provisions,

the Deposit Receipt provides that purchasers (Indemnitors herein) agree to hold sellers

(Indemnitees herein) free and harmless from any and all claims and demands of every kind

and character which may be suffered by persons while occupying or visiting the herein

described property by reason of the use, maintenance and operation of the Round Hill Golf

and Country Club or the driving range operated in connection therewith, or any other use

of the adjoining premises.

Indemnitors acknowledge that they are familiar with the location of said lot

in respect to the Round Hill Golf and Country Club course, and that the area of the said

club set aside for use of members, servants, employees, guests or invitees as a practice

area immediately adjoins the property hereinabove referred to; and they further acknowledge

that they know that in the usual and ordinary use of said area, that golf balls from the course

and driving range are driven onto said Lot 3, Unit 2 of Subdivision 2794.

IT IS AGREED:

1. JIMMIE R. LYNN and CAROLE J. LYNN, his wife, hereby agree to

indemnify ROUND HILL ESTATES, ROUND HILL GOLF AND COUNTRY CLUB, its agents,

servants, employees, members, guests and invitees against any and all claims or damages,

costs or judgments or actions, arising from any accident or injury or damage whatsoever,

against said Round Hill Estates or Round Hill Golf and Country Club, or its agents, servants,

employees, members, guests or invitees, in respect to the subject of indemnity herein

recited, whether such claims or actions be rightfully or wrongfully brought or filed; and

against all costs incurred by Indemnitee herein.

EXHIBIT 2

In case an action should be filed in respect to the subject of indemnity herein, Indemnitor agrees that they will defend the suit at their own cost and expense; and in default thereof, Indemnitee may employ an attorney of its own selection to appear and defend the action on behalf of Indemnitee, at the expense of said Indemnitor.

2. The indemnity herein provided for will extend from the date of this Agreement so long as the adjoining property is operated as a golf club and practice area.

Indemnitees agree that this Agreement shall be binding on their heirs, successors and assigns, and further agree that in the event that they shall sell, transfer or otherwise dispose of said property, that they will cause the assignee or purchaser thereof, to sign as Indemnitees, an Agreement on the same terms and conditions as herein contained.

3. Indemnitees, their heirs, successors and assigns, agree to keep in full force and effect liability insurance in the sum of not less than $ _100,000.00_ to satisfy their obligation hereunder.

4. If the Indemnitee, in the enforcement of any part of this Indemnity Contract, shall incur necessary expenses or become obligated to pay attorneys fees or court costs, Indemnitors agree to reimburse Indemnitee for such expenses, attorneys fees or costs, within ten (10) days of receiving written notice from Indemnitee of the incurring of such expenses, costs or obligations.

5. Indemnitor agrees to pay Indemnitee interest at the rate of seven per cent (7%) per annum on any necessary expenses or costs incurred in the enforcement of the indemnity contract or any sums Indemnitee is obligated to pay with respect to the matters to which this indemnity is given, from the date on which expenses or costs are incurred or such sums are paid.

The Indemnitors acknowledge that they have read the foregoing Indemnity Agreement and understand the terms thereof, and that thereafter they signed their names as Indemnitors hereto.

IN WITNESS WHEREOF, the parties hereto have executed this instrument the day and year first above written.

Jimmie R. Lynn

Carole J. Lynn,

Indemnitor


ROUND HILL ESTATES, a
California Corporation

By _____

Its _____

Indemnitee

STATE OF CALIFORNIA)
                    )   ss.

COUNTY OF           )

On this _10th_ day of November, 1972, before me _Ruth D. Rimbach_
a Notary Public in and for the County of _Contra Costa_, residing therein, duly
commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN,
his wife, known to me to be the persons described in and whose names are subscribed to the
within instrument, Indemnity Agreement, and they acknowledged to me that they executed
the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official
Seal, the day and year in this certificate first above written.



_Ruth D. Rimbach_
Notary Public in and for said County of
_____, State of
California.

RUTH D. RIMBACH
NOTARY PUBLIC - CALIFORNIA
COUNTY OF CONTRA COSTA
My Commission Expires Jan. 7, 1976

STATE OF CALIFORNIA)
                    )   ss.
COUNTY OF           )

On this _16th_ day of November, 1972, before me, WELTON R. CAMPBELL ,
a Notary Public in and for the County of _Contra Costa_ residing therein, duly
commissioned and sworn, personally appeared _Harlan S. Gelderman_ ,
known to me to be the _President_ of the corporation that executed the within instrument
and the officers who executed the within instrument on behalf of the Corporation therein named,
and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official
Seal, the day and year in this certificate first above written.

OFFICIAL SEAL
WELTON R. CAMPBELL
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
CONTRA COSTA COUNTY
My Commission Expires June 15, 1973

_Welton R. Campbell_
Notary Public in and for said County of
_Contra Costa_, State of
California.

RECORDED AT REQUEST OF
WESTERN TITLE GUARANTY COMPANY,
CONTRA COSTA COUNTY, DIVISION
JUN -8 1973
AT 9:20 O'CLOCK A M.
CONTRA COSTA COUNTY RECORDS
FEE $ W. T. PAASCH,
COUNTY RECORDS

55296
JUN -8 1973

After Recording Return To:
Jim Bryson
Vice President
Round Hill Estates
3133 Round Hill Road
Alamo, California

EASEMENT

BOOK 6965 PAGE 22

JIMMIE R. LYNN and CAROLE J. LYNN, his wife, herein-

after called First Parties, in consideration of value paid by ROUND HILL

ESTATES, a California corporation, hereinafter called Second Party, the

receipt whereof is hereby acknowledged, hereby grants to Second Party those

perpetual and exclusive easements and rights of way to construct, operate,

maintain, repair, reconstruct, replace and remove at any time, and from

time to time, providing however if said fence is down or lowered in any way

from its present elevation the party of the Second Part will cause the driving range

to be closed for the period of time the protection of said fence is affected, a wire

metal screen or fence, consisting of one or more lines of poles and/or other struc-

tures covered by a wire screen for the purpose of preventing golf balls from the

golf course and driving range from trespassing or causing damage to the property

of First Parties or causing damage to any person or persons, or invitees of the

First Parties while on First Parties' premises, and all necessary and proper founda-

tions, footings and fixtures for use in connection with said screen and fence and/or

other structure, together with a right of way on, along and in all of the hereinafter

described strip of those certain lands which are situated in the County of Contra

Costa, State of California and described as follows: –

    A portion of Lot 3 as designated on the Map of
    Tract #2794 Round Hill Country Club area.

The aforesaid strip is described as follows:–

    Following described real property in the subdivision
    2794 situated in the County of Contra Costa, State
    of California:

    Beginning at the northerly common corner of lots 3 and
    4 of subdivision 2794 as recorded in the office of the
    County Recorder of Contra Costa County in Map Book 87
    at Page 32A; thence from said corner and along the
    exterior boundary of said lot 3 and said subdivision

EXHIBIT 3

2794 the following two courses:  North 46° 24' 52" East 6.00 feet; South 89° 44' 05" East 110.08 feet; thence leaving said boundary of lot 3, South 79° 41' 38" East 142.89 feet to a point on a 310.21 foot radius curve, being the northerly line of Royal Oaks Drive; thence from a tangent which bears South 58° 13' 44" West and along said curve, being the northerly line of Royal Oaks Drive, to the left through a central angle of 1° 51' 27" and arc length of 10.06 feet; thence leaving said line of Royal Oaks Drive North 81° 00' 00" West 76.83 feet, thence North 85° 18' 20" West 169.85 feet to a point on the southwest line of said lot 3; thence North 43° 35' 08" west along said southwest line 2.00 feet to the Point of Beginning.

Containing 0.06 Acres more or less.

Second Party shall have the right to maintain grass turf on said strip of land and to use the same as a part of the fairway and driving range of said golf course.

First Parties hereby grant to Second Party: —

(a)    The right of ingress to and egress from said strip over and across said land by means of roads and lanes thereon, if such there by, otherwise by such route or routes as shall occasion the least practicable damage and inconvenience to First Parties;

(b)    The right from time to time to trim and to cut down and clear away or otherwise destroy any and all trees and brush now or hereafter on said strip and to trim and to cut down and clear away any trees on either side of said strip which now or hereafter in the opinion of Second Party may be a hazard to said screen, fence, poles and/or other structures, wires or cables, by reason of the danger of falling thereon, or may interfere with the exercise of Second Party's rights hereunder.

BOOK 6365 PAGE 23

(d)     The right to mark the location of said strip by suitable markers set in the ground; provided that said markers shall be placed in such location which will not interfere with any reasonable use First Parties shall make of said strip.

(e)     First Parties further agree that nothing herein contained shall be held to change or modify the Indemnity Agreement dated November 10, 1972 between JIMMIE R. LYNN and CAROLE J. LYNN, his wife, and ROUND HILL ESTATES, a California corporation, of record in the office of the County Recorder of the County of Contra Costa, State of California.

Second Party hereby covenants and agrees:–

(a)     Second Party shall not fence said strip;

(b)     Second Party shall promptly backfill any excavations made by it on said strip and repair any damage it shall do to First Parties' land.

(c)     Second Party shall indemnify First Parties against any loss and damage which shall be caused by the exercise of said ingress and egress or by any wrongful or negligent act or omission of Second Party or of its agents or employees in the course of their employment.

First Parties reserve the right to use said strip for purposes which will not interfere with Second Party's full enjoyment of the rights hereby granted; provided that First Parties shall not:

(a)     Erect or construct any building or other structure, or drill or operate any well, or construct any other obstruction, or

BOOK 6905 PAGE 24

rubbish, debris, or any other substance or material, whether combustible or noncombustible, on said strip, or so near thereto as to constitute, in the opinion of Second Party, a hazard to said fence or screen and/or structures, wires and poles.

(c)    Grant any easement or easements on, under, or over said strip without the written consent of Second Party.

The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

IN WITNESS WHEREOF, First Parties have executed these presents this ___/___ day of ~~May~~ *June*, 1973.

_____
JIMMIE R. LYNN

_____
CAROLE J. LYNN,

FIRST PARTIES

STATE OF CALIFORNIA    )
                                          :  SS
COUNTY OF CONTRA
COSTA                           )

On this ___1st___ day of ~~May~~ *June*, 1973, before me, _____
Linda G. Johnson , a Notary Public in and for the County of Contra Costa, State of California, residing therein, duly commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me to be the persons described in and whose names are subscribed to the within instrument, EASEMENT, and they acknowledged to me that they executed the same.

BOOK 6965 PAGE 25



BOOK 6965 PAGE 26

<u>AFFIDAVIT</u>

Kenneth Barker, being duly sworn, deposes and says:

1 . I am the plaintiff in the lawsuit Kenneth Baker V. Round Hill Country Club.  I am familiar with the facts of this action to obtain a Restraining Order, and Temporary and Permanent Injunction to compel defendants, Round Hill Country Club, to abate a continuing nuisance of thousands of golf course range balls trespassing onto my property and bombarding my house and garden.

2 .My wife and I purchased our home in 1974, and for 21 years until 1995, there were no problems with trespassing  range balls. In 1995,defendant shortened the length of the driving range. It was further shortened in 1996 and  again in about 1999. The driving range is now less than 200 yards long as opposed to about 260 yards long when we purchased our home in 1974. Present day design standards recommend driving ranges be a minimum of 375 yards long. In addition to shorting the driving range, golf clubs have been improved using space age carbon fiber shafts and titanium heads. These make the golf balls go about 10% farther than the 1974 era equipment. Thus, improved golf equipment has made the problem worse.

Since 1995 thousands of range balls have trespassed onto our property. I have been hit several time with range balls, and so has my wife Lois Barker. Additionally 7 windows in our home have been broken by range balls.  It is unsafe and dangerous to use our garden or to sit next to the windows inside the house that face the driving range. One day in 2003 during lunch a range ball broke our kitchen window and sprayed our food with glass particles.

Despite my hundreds of complaints since 1995,other than lip service, defendant  has taken no action to abate the trespass of range golf balls onto our property. Defendant has acted with malice and in complete disregard for the rights of my wife and my self to use  and enjoy our property. In fact the

EXHIBIT 4

problems have gotten worse instead of better with defendant now claiming that it is our problem to solve, rather than that of the defendant.

3 .The defendant continues to bombard our property with range golf balls, and is now threatening to commit further nuisance by erecting a high fence adjacent to our property which would violate the county building ordinances and also substantially reduce the value of our home.

4 .This affidavit is made in support of plaintiff 's motion for a restraining order, and temporary and permanent injunction for relief contained in plaintiff 's complaint Kenneth Barker V. Round Hill Country Club filed in the above entitled cause.

Dated : July /12/ 2007

*Kenneth H. Barker.*

Kenneth Barker.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Contra Costa_

On _July 12, 2007_ before me, _Bill Tamisiea   Notary Public_,
Date                                 Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Kenneth Parker_
Name(s) of Signer(s)

□ personally known to me

☒ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

BILL TAMISIEA
Commission # 1446342
Notary Public - California
Contra Costa County
My Comm. Expires Oct 21, 2007

Place Notary Seal Above

Signature _____
Signature of Notary Public

--- **OPTIONAL** ---

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Affidavit_

Document Date: _July/12/2007_          Number of Pages: _2_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
□ Individual
□ Corporate Officer — Title(s): _____
□ Partner — □ Limited □ General
□ Attorney in Fact
□ Trustee
□ Guardian or Conservator
□ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
| --- |
| Top of thumb here |

Signer's Name: _____
□ Individual
□ Corporate Officer --- Title(s): _____
□ Partner — □ Limited □ General
□ Attorney in Fact
□ Trustee
□ Guardian or Conservator
□ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
| --- |
| Top of thumb here |

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907 v609    Reorder: Call Toll-Free 1-800-876-6827

<u>AFFIDAVIT</u>

LOIS A. BARKER, having been duly sworn, deposes and says:

I am the wife of plaintiff Kenneth Barker, in the lawsuit Kenneth Barker V Round Hill Country Club. I am familiar with the facts of this action to obtain a Restraining Order and Temporary and Permanent Injunction to compel defendants, Round Hill Country Club, to cease the continuing nuisance of thousands of golf course range balls trespassing onto my property and bombarding my house and yard.

My husband and I purchased our home in 1974. In 1995, Round Hill Golf Club shortened the length of the driving range, which was when the problems began. They became even worse when the driving range was again shortened in both 1996 and 1999. The driving range is now obviously much too short, especially considering the increase in the improvement of the golf clubs and golf balls since 1974. Several thousand range balls have been hit onto our property. I have been hit several times with range balls, as has my husband, Kenneth Barker. We have also had several windows broken by range balls. It is not safe to use our back yard because we are afraid of being hit with a golf ball. We have had our breakfast nook window broken while we were eating our lunch and ended up with glass in our food.

Even though we have made numerous complaints since 1995, any cessation of the problem has only been temporary and then the golf balls begin again. The solution Round Hill Golf Club has come up with is to extend the height of the fence at the back of our property, which would greatly lower the value of our home.

EXHIBIT 5

I am making this affidavit to support my motion for a restraining order, along with a temporary

and permanent injunction to give relief for the complaint in Kenneth Barker V Round Hill

Country Club filed in the above cause.


Dated: 07/12/07 _____    Signed: _____
                                              Lois A. Barker

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Contra Costa_ }

On _July 12, 2007_ before me, _Bill Tamisiea Notary Public_
　　　Date　　　　　　　　　　　Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Lois A. Barker_
　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

☐ personally known to me

☒ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

BILL TAMISIEA
Commission # 1446842
Notary Public - California
Contra Costa County
My Comm. Expires Oct 21, 2007

Place Notary Seal Above

Signature _Bill Tamisiea_
　　　　　　　Signature of Notary Public

───────── **OPTIONAL** ─────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Affidavit_

Document Date: _07/12/07_　　　　　　　　Number of Pages: _2_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907 v609    Reorder: Call Toll-Free 1-800-876-6827



*Round Hill Country Club*

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507

June 13, 2007

Re: Practice Facility

Dear Mr. Barker:

Thank you for taking the time to meet with David Plotnik and myself last week, to discuss your concerns about the Practice Facility. During that meeting, you shared with us numerous assertions of range balls entering your property and the club taking no action to resolve the problem.

We listened to your concerns as well as your demands for compensation to offset the years of harassment you assert you have been subjected to while living at the end of the driving range.

We suggested a potential solution would be to allow Round Hill Country Club to increase the height of the fence that currently exists. You declined this offer as a reasonable resolution.

The Club has taken many steps over the years to manage the use of the practice facility including but not limited to regularly posting of signs and instructions to the membership and guests that use the facility. The Club feels that it has taken reasonable measures to mitigate the use of the range.

The fact is that you purchased your property with an indemnity agreement and fence easement accepting the right of Round Hill Country Club Members and guests to use this property as a practice facility and with acknowledgement that golf balls from the course and driving range are driven in the direction of your lot!

Round Hill Country Club is doing its part to minimize your asserted inconvenience and is willing to do more in the suggestion to raise the fence to further protect your property, but you do not acknowledge our efforts or consider our recommendation to mitigate your concerns. Unless you would like to change your position on the matter, we really have nothing further to discuss.

Sincerely,

Greg Gonsalves, CCM
General Manager

Cc:    Carole Carluccio, President
       Round Hill Country Club
       Round Hill Country Club Board of Directors

*3169 Round Hill Road • Alamo, California 94507 • (925) 934-8211*

EXHIBIT 6

*[Handwritten note at top right:]* ...re wrong addre — Jean Tate hand delivered letter on June 24 to us. Her address is 2394  KB

■ **MILLER STARR REGALIA**

1331 N. California Blvd.    T 925 935 9400
Fifth Floor                F 925 933 4126
Walnut Creek, CA 94596     www.msrlegal.com

Marvin B. Starr

June 19, 2007

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507

Re:    Round Hill Country Club Practice Range Management and Operation

Dear Mr. Barker:

Please be advised that the Board of Directors of Round Hill Country Club has concluded that it will no longer pursue its futile attempt to find a mutually agreeable resolution to whatever problem may exist with respect to the prevention of practice range balls from landing on your property.

As such, from here on Round Hill Country Club will, on its own, take such preventative steps as it deems advisable and in its own best interests in the matter.

In the possibility that you have not yet seen or read the Easement recorded against your property on June 8, 1973, I have enclosed a copy of the document for your reference. You may be assured that what Round Hill Country Club elects to do with respect to the "golf ball problem" will be done in full compliance with the rights granted to it by the Easement.

If you have any questions regarding any of the above, please feel free to contact me about them.

Very truly yours,    (se)

*Marvin B Starr*

Marvin B. Starr

MBS:vse
cc    Greg Gonsalves, General Manager, Round Hill Country Club
      Carole Carluccio, President, Round Hill Country Club

**EXHIBIT 7**

Mr. Kennette Barker
2349 Royal Oaks Drive
Alamo, Ca. 94507

Re: Round Hill Country Club Practice Range
Management and Operation

Dear Mr. Butler:

Please be advised that the Board of Directors of Round Hill Country Club has concluded that it no longer pursue its [illegible] futile attempt to find a mutually acceptable [illegible] resolution of whatever problem may [illegible] exist with respect to the prevention of practice [illegible] range balls from landing on your property. [illegible]

As such, from [illegible] hereon, Round Hill Country Club will [illegible] take such [illegible] preventative steps as it deems advisable and [illegible] in its own best interests in the

# KENNETH BARKER

2349 Royal Oaks Drive
Alamo, California 94507

CERTIFIED MAIL -RETURN RECEIPT REQUESTED
7007 0710 0000 8604 1852

Mr. Greg Gonsalves,                                      June 23, 2007
General Manager,
Round Hill Country Club,
3169 Round Hill Road,
Alamo, CA 94507.

RE: ILLEGAL AND DANGEROUS OPERATION OF ROUND HILL GOLF CLUB FACILITIES.--
SETTLEMENT OFFER.

Dear Mr. Gonsalves,

Thank you for your letter of June 13, 2007 pertaining to our June 6, 2007 meeting. As discussed, I did not bring my attorney to our meeting in an attempt to try and resolve the subject problems by negotiated agreements, rather than by litigation. However, I am puzzled and troubled by your response because it does not accurately record the long standing problems that I discussed with you and David Plotnik. Inasmuch as your letter materially fails to address the salient issues, the following is a brief background summary of the long festering problems.

## BACKGROUND

In 1974 my wife Lois and I purchased our house at 2349 Royal Oaks Drive which is at the end of the driving range. We purchased the property with an indemnity agreement and fence easement accepting the right of Round Hill members to use the driving range. We have no quarrel with that agreement. At that date the driving range was about 260 yards long, and for almost 25 years, we had no problems whatsoever from range balls clearing the 20 foot high fence and landing on our property and bombarding our house.

Several years ago, Round Hill made several major unilateral changes to the driving range. As a proximate result, the driving range operation is now illegal and highly dangerous. Multi hundreds of balls now bombard our property every month. These illegal and dangerous conditions were caused by Round Hill's construction of the new 46,000 S.F club house and relocation of an enlarged putting green. These changes materially shortened the driving range by about 70 yards [ i.e 210 feet ]. As both you and Mr Plotnik acknowledged, because of these changes, the driving range is now far too short being less than 200 yards long. [ significantly present day golf course design standards recommend the driving range be at least 375 yards long ]. Moreover, Round Hill's unilateral changes to shorten the length of the driving range voided the terms and conditions of the indemnity agreement.

EXHIBIT 8

Letter to Greg Gonsalves—Page 2 of 4

During the past years we have made multitudes of phone calls to the pro shop complaining about the reign of terror from the hundreds of range balls bombarding our house. In addition to my telephone complaints to you, I met with the previous club manager, and golf pro, to try and resolve the range ball problems without litigation. Temporary solutions were utilized, and for some months the use of wooden clubs were baned from the driving range, thus, reducing the number of errant range balls. However, with a following wind, even long iron shots now easily reach our property. Then as now, there is no permanent solution to errant golf balls, and my wife and I continue to be terrorized by range balls bombarding our property.

As a direct result of the unilateral changes made over the past few years, multi thousands of range ball have cleared the fence and bombarded our property. Thus, it is extremely hazardous for us to use our garden. Both my wife and myself have been hit several times by range balls, and seven [ 7 ] windows in our house have been broken by range balls. Clearly, for several years, we have been denied the reasonable use of our property because of the ongoing dangerous operation of the driving range.

At our June 6, 2007 meeting I provided you with 58 range balls that had been hit on to our property during a brief six [ 6 ] day period. I told you that this must stop once and for all. I requested Round Hill's response. You advised me that you had again already imposed a ban on the use of wooden clubs on the driving range and that you would discuss my request for compensation with the Round Hill directors. Most noteworthy, however, the very next day, players were again seen using woods on the driving range. From my complaints to the pro shop representative [ Kevin ] I was told that woods were not banned. Moreover, since our June 6, 2007 meeting until June 23, 2007, [ i.e.17 days ] a further 77 range balls have bombarded our property. Noteworthy, I observed at least 5 of the errant range balls were from long iron play. Again, I made several complaint calls to the pro shop – my complaints were in vain and the illegal and dangerous operation of of the driving range continues unabated.

## AVAILABLE SOLUTIONS

There are several avenues available to Round Hill to resolve the dangerous driving range conditions: As discussed, they are :

1 ] Redesign the golf course to increase the length of the driving range to at least 375 yards in length. That could be done by shortening the 18th hole by about 125 yards; relocating the putting green and modifying the club house facilities.

2 ] Redesign the golf course to increase the length of the driving range to at least 375 yards. That could be done by by relocating the driving range to either the 1st or 10th hole fairways, and using the present driving range area as a short par three hole.

3 ] Shutting down the driving range. Significantly, that solution could be immediately accomplished without any cost to Round Hill.

Letter to Greg Gonsalves --Page 3 of 4

4 ] Your June 13, 2007 letter mentions a fourth option of installing a much higher fence at the end of the driving range to stop the range balls bombarding our property. We are not against this option, but pointed out at our meeting that a very high fence would reduce the value of our house by an estimated $400,000.00 to $500,000.00. Therefore, financial consideration would be required to utilize that option.

## SETTLEMENT OFFER

In a sincere effort to resolve the issues without litigation, and without prejudice, the following settlement offer is made.

1] Kenneth and Lois Barker agree to allow the Round Hill Country Club to construct a new high fence at the end of the driving range, subject to Round Hill Country Club paying the Barkers the sum of $$400,000.00. That sum shall be deemed to also include damages for any past injury and denial of use of our property.

2 ] Kenneth and Lois Barker set July 13, 2007 as the deadline for the Round Hill Country Club to accept the settlement offer, and to make a good faith non refundable partial payment of $200,000.00 by that date. Thereafter, a new agreement shall be executed between the parties and the remaining $200,000.00 shall be paid in full by no later than July 27, 2007. The new fence shall be constructed within 90 days from July 27, 2007 during which time no woods or long irons will be allowed on the driving range.

3 ] If the above settlement offer is not accepted in writing by the Round Hill Country Club and partial $200,000.00 payment made by the July 13, 2007 dead line, the above noted settlement offer shall expire and be void.

## LEGAL ISSUES

It is not the purpose of the letter to argue legal issues. They will be determined by the Superior Court if the above settlement offer is not accepted. However, as you are fully aware, Round Hill's highly dangerous driving range operation violates both CAL-OSHA safety regulations, and multiple State laws. Furthermore, if an errant range ball seriously hurts or kills some one, the Round Hill County Club, including it's directors, managers, and employees, would probably be held criminally liable because of the long standing refusal to mitigate the known dangerous driving range conditions.

## SUMMARY

Mr. Gonsalves, I am deeply troubled by your failure to address the illegal and highly dangerous driving range operations in your June 13, 2007 letter. Most respectfully, Stone Walling will will not change the undeniable facts, nor will it change Round Hill's undeniable liability for the same.

Letter to Greg Gonsalves—Page 4 of 4

## CONCLUSION

The above noted settlement offer provides the Round Hill Country Club with an economic method of resolving the ongoing dangerous driving range conditions without litigation. The problem was solely caused by Round Hill, and therefore, Round Hill is solely responsible for the cost of resolving it.

The Round Hill Country Club now has the option of promptly resolving the dangerous driving range condition via the above settlement offer, or alternatively, must be content to have a judge's order shut down the driving range and impose the settlement and legal cost amount.

If it would be helpful to you, I remain open to further good faith meetings with Round Hill in order to resolve any out standing details up to the July 13, 2007 dead line date.

Kindly call me at 925-820-0198 if you have any suggestions or questions.

Sincerely,

Kenneth Barker.

CC: Carole Carluccio,-- President Round Hill Country Club. Via Certified Mail--- Return Receipt Requested-- No.7007 0710 0000 8604 1869

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Carole Carluccio
President, Round Hill Club
Round Hill Country Club
3169 Round Hill Road
Alamo, CA 94507

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Maureen Simons_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

MAUREEN SIMONS

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer fro   7007 0710 0000 8604 1869

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**NDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Greg Gonsalves.
General Manager
Round Hill Country Club
3169 Round Hill Road
Alamo, CA 94507

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Maureen Simons_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

MAUREEN Simons

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Num
   (Transfer fr   7007 0710 0000 8604 1852

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**KENNETH BARKER**

2349 Royal Oaks Drive

Alamo, California 94507


CERTIFIED MAIL—RETURN RECEIPT REQUESTED

7007 0710 0000 8604 1876


Mr. Greg Gonsalves,                                        June 29, 2007

General Manager,

Round Hill Country Club,

3169 Round Hill Road,

Alamo, CA. 94507.


RE: CONTINUING COMPLAINT PERTAINING TO THE DANGEROUS AND ILLEGAL
OPERATION OF THE ROUND HILL COUNTRY CLUB FACILITIES.


Dear Mr. Gonsalves,

The undersigned writes again to strongly protest  Round Hill's unremitting dangerous, illegal, and grossly  negligent operation of the driving range. I also protest attempts by both you, and two club members, [ one of whom is a past club captain ] to prevent the undersigned from photographing and recording Round Hill's unremitting dangerous and illegal conduct. Specially:

On June 28, 2007 at approx.4.30 p.m. two [ 2 ]  further errant range balls hit the roof of our two [ 2 ] story house. These errant range balls not only carried over the fence, they also carried over our back lawn, over our house porch, and very nearly over the top of our house.  Inasmuch as there was no one utilizing the the  " woods only " tee area, my wife and I decided to determine the source of the errant range balls, since calling the pro shop to complain is a long standing exercise in futility.

Upon entering the driving range area from the South View Drive entrance, we observed five [ 5 ] players on the front of the " irons only "  tee area. **Critically, four [ 4 ] of the five [ 5 ] were using wood/hybrid type clubs at a distance of about 150 -160 yards from the fence. Not surprisingly, although not skilled golfers, nevertheless, they were obviously capable of  bombarding our home with range balls.** Furthermore, upon later returning home, we found a further five  [ 5 ] range balls had bombarded our house.

In our subsequent telephone conversation, you stated you were unaware of the problem. Therefore, I urged you to promptly visit the range area, and confirm for yourself, Round Hill's continuing dangerous and illegal mode of operations. I trust you did so. For your records, since June 6, 2007  [ the date of our meeting ] until June 28, 2007 [i.e. 22 days ] 107 errant range balls have bombarded our home.

EXHIBIT 9

Letter to Greg Gonsalves—Page 2 of 3

Mr. Gonsalves, as is again confirmed by the above, the Round Hill driving range operation continues to be wildly out of control. It is totally unacceptable. The bombardment of our home by errant range balls must stop once and for all. As stated in our June 23, 2007 letter, we shall file a lawsuit seeking damages and the total shut down of the driving range if this long festering problem is not resolved to our satisfaction by July 13, 2007. Critically, other than lip service, no one at Round Hill appears to be interested in solving this problem. No one is charged full time with ensuring that the driving range is safely operated. Furthermore, from those I have talked to, including you, all conveniently turn a blind eye to the above described flagrant violations of Round Hill's own internal operating rules.

Subsequently, upon leaving the range area my wife and I were rudely accosted and very nearly run over on South View Drive by two club members riding in a golf cart.[ one of whom was a past captain of the club ] In addition to almost running my wife and I down with their golf cart, both were apparently irate because I had visited the driving range area and had photographed the on going illegal and dangerous driving range operation. The past club captain is fully aware of the illegal and dangerous operation of the driving range, yet tellingly, he took no steps to correct the dangerous driving range operation. He was far more concerned that I had photographed the same.

As discussed at our June 6, 2007 meeting it is unlawful for golf carts to run on public roads, let alone to be used to almost run down my wife and myself. In order to use public roads, golf carts must be licensed, must carry license plates, and must be insured --all as required by state law. Significantly, none of the Round Hill golf carts are licensed, none carry license plates, and none are insured.

All roads within the Round Hill Development are public roads. Nevertheless, each week hundreds of golf carts illegally use the public Round Hill Development roads. Not counting the the golf cart access path on South View Drive, a golf cart uses public roads at least nine [ 9 ] times for every round of golf. Tellingly, similar to the driving range illegality, Round Hill management also turns a blind eye to it's illegal use of public roads.

In addition to the above, it is noted multiple Round Hill course maintenance vehicles also use the public roads on a daily basis. However, none are licensed, none carry license plates, and none are insured. Again that is a violation of law.

Finally, it is recorded with regret, following my photographing of the dangerous driving range operations you telephoned me [ at the apparent request of the two above mentioned club members ] and made several threats to the effect that I would be harmed if I trespassed onto Round Hill property to take further photos of the driving range operation. Not only are such threats highly illegal, such conduct brings into very sharp focus the on going defensive stone wall mismanagement by the Round Hill Country Club. Clearly, Round Hill is wrong, and knows it. However, to date, it has been unable to squarely face up to it's responsibility and equitably resolve the problems of its own making. Accordingly, once again, Round Hill is respectfully urged to dispositively remedy the on going wrongs by the July 13, 2007 dead line, or alternatively, be compelled to do so via our pending lawsuit.

Letter to Greg Gonsalves Page 3 of 3

In summary: For almost 25 years, the Barkers enjoyed harmonious and cooperative relationships with the Round Hill Country Club. There were no disputes or problems. The source of our ongoing complaint and pending lawsuit, was caused by Round Hill's unilateral changes to the club house and golf course which voided our indemnity agreement. The driving range is now far too short. Round Hill has long proven it cannot be operated safely and legally. Therefore, the driving range must be either modified or shut down. There are no other options.

Mr. Gonsalves, the above unquestionably clearly describes a long standing pattern and practice of unlawful conduct by the Round Hill Country Club. Notwithstanding the remarkably foolish letter from your attorney, Marvin B. Starr, stating in effect that Round Hill is above the law, and Round Hill will comply with the law, if, and when, it pleases, [ for your information and use we attach a copy of the letter and draft ] we beg to differ. Round Hill is not above the law. Therefore, we respectfully urge that you take a step back and reconsider your unlawful Nixon White House concept of the law.

The Barkers have been more than patient and are now determined to bring these problems to a head. In a sincere desire to finally resolve these long festering problems without a lawsuit, and as a continuing gesture of our good will, and in compromise, we will again turn the other cheek to the above describe wrongs. Accordingly, we await your response to our June 23, 2007 settlement offer in conjunction with the July 13, 2007 lawsuit dead line date.

Kindly call if there questions .

Sincerely,

*Kenneth L. S. Barker.*

Kenneth Barker.

Copy: Carole Carluccio--- President Round Hill County Club. -- Via Certified Mail Return Receipt Requested.  No. 7007-0710-0000 - 8604 - 2040

Attachment: Letter, and Draft From Marvin B. Starr dated June 19, 2007.

ENDER: *COMPLETE THIS SECTION*

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

Article Addressed to:

Ms Carole Carluccio
President
Round Hill Country Club
3369 Round Hill Road
Alamo, CA 94507

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X *Maureen Simons*
☐ Agent
☐ Addressee

B. Received by (*Printed Name*)
MAUREEN SIMONS

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

7007 0710 0000 8604 2040

Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

SENDER: *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

Article Addressed to:

Mr Greg Gonsalves
General Manager
Round Hill Country Club
3369 Round Hill Rd.
Alamo, CA 94507

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X *Maureen Simons*
☐ Agent
☐ Addressee

B. Received by (*Printed Name*)
MAUREEN SIMONS

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

7007 0710 0000 8604 1876

Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

FILED

2007 AUG 23  P 3: 00

K. TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.

BY_____
           D. _____ L. Deputy Clerk

Kenneth Barker,
2349 Royal Oaks Drive,
Alamo, CA. 94507
Phone  ( 925 ) 820 - 0198
Fax.   ( 925 ) 820 - 0198

Plaintiff In Pro Per.

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF CONTRA COSTA

| | |
|---|---|
| Kenneth Barker,                         )<br>                                         )<br>  Plaintiff                          )<br>                                         )<br>    V.                       )<br>                                         )<br>Round Hill Country Club;                 )<br>Greg Gonsalves; David Plotnik;           )<br>and Carole Carluccio                     )<br>                                         )<br>  Defendants                        )<br>_____) | CASE NO. MSC C07-01488<br>IDENTIFICATION OF DOES |

1.

## INTRODUCTION

On July 13, 2007, plaintiff, Kenneth Barker, filed the above entitled lawsuit against

defendant and DOES 1 through 50.

Section 4 of the complaint notified the court plaintiff would seek leave to amended

this complaint when DOES were identified. Plaintiff hereby identifies three ( 3 ) DOES,

and requests the court's approval to include them as part of this complaint.

11.

IDENTIFICATION OF DOES

DOE No. 1 is identified as Greg Gonsalves,  General Manager, Round Hill Country Club.

DOE No. 2 is identified as David Plotnik, Head Golf Professional, Round Hill Country Club.

DOE No. 3 is identified as Carole Carluccio, President, Round Hill Country Club.

III

Plaintiff will seek leave of the court to further amend this complaint as additional DOES are identified.

Dated: *Aug/23/07*

*Kenneth Barker*

Kenneth Barker, Plaintiff In Pro Per.

Plaintiff Demands Trial By Jury.

2.

1  Kenneth Barker,
2  2349 Royal Oaks Drive,
   Alamo, CA.94507.
3  Phone ( 925) 820- 0198
   Fax.  ( 925 ) 820- 0198
4

5

6  Plaintiff In Pro Per.

FILED

7              SUPERIOR COURT OF CALIFORNIA

8              COUNTY OF CONTRA COSTA.

9

10  KENNETH BARKER                    )    CASE NO.  MSC C07-01488
                                      )    IDENTICATION OF DOE NO. 4
11       Plaintiff                    )
                                      )
12                                    )
         V.                           )
13  ROUND HILL COUNTRY CLUB,          )
    GREG GONSALVES; DAVID PLOTNIK;    )
14  CAROLE CARLUCCIO, AND DOES        )
    1 TO 47.                          )
15                                    )
                                      )
16       Defendant                    )
                                      )
17  _____  )

18                                    1.

19

                              **INTRODUCTION**
20

21       On July 13, 2007, plaintiff Kenneth Barker, filed the above entitled lawsuit against

22  defendant, and DOES 1 through 50.

23       Section 4 of the complaint notified the court plaintiff would seek leave to amend this

24  lawsuit when the DOES were identified. On August 23 2007, plaintiff  identified three

25  ( 3 ) DOES and amended this lawsuit. Plaintiff has now identified a additional DOE and

26  requests the court's approval to include him as part of this lawsuit.

27

                                    1.

11.

## IDENTIFICATION OF DOES

DOE No. 4   is identified as **ALLEN O. KRUEGER**, head Golf Professional of the

Round Hill Country Club until he retired in December 2005.

111.

## IDENTIFICATION OF ADDITIONAL DOES

Plaintiff will seek leave of this court to  further amend this lawsuit as additional DOES are

identified.

Dated : *Aug/31/2007*

*Kenneth Barker*

Kenneth Barker, Plaintiff In Pro Per.

Plaintiff Demands A Jury Trial

2.

1  Kenneth Barker,
2  2349 Royal Oaks Drive,
   Alamo, Ca. 94507.
3  Phone  ( 925 ) 820-0198
   Fax     ( 925 ) 820-0198
4
5  Plaintiff In Pro Per.

6  # SUPERIOR COURT OF CALIFORNIA

7  ## COUNTY OF CONTRA COSTA

8

9  KENNETH BARKER                    )    CASE NO. MSC0701488
                                     )
10      Plaintiff                    )    IDENTIFICATION OF DOES 5, 6, 7
                                     )    AND 8.
11      V.                           )
                                     )
12                                   )
   ROUND HILL COUNTRY CLUB;          )
13 GREG GONSALVES; DAVID PLOTNIK;    )
   CAROLE CARLUCCIO; ALLEN O.        )
14 KRUEGER; AND DOES 1 to 46 inclusive. )
15                                   )
16 ─────────────────────────────────)

17                           1.

18                    **INTRODUCTION**

19       On July 13, 2007, plaintiff, Kenneth Barker, filed the above entitled lawsuit

20 against defendant Round Hill Country Club, and DOES 1 to 50, inclusive.

21       Section 4 of the complaint notified the court that plaintiff would seek leave to

22

23 amend this lawsuit when DOES were identified. On August 23, 2007 plaintiff identified

24 three ( 3 ) DOES and amended this lawsuit to include them. On August 31, 2007 plaintiff

25 identified a further DOE and amended this lawsuit to include him.

26       Plaintiff has now identified four ( 4 ) additional DOES, and hereby amends this

27 lawsuit to include them as follows:

                              1.

## 11.

## IDENTIFICATION OF DOES

**DOE No. 5** is identified as Pete Davis.

**DOE No. 6** is identified as Peter Ruotsi.

**DOE No. 7** is identified as Marvin B. Starr.

**DOE No. 8** is identified as Miller Starr Regalia.

## 111.

## IDENTIFICATION OF ADDITIONAL DOES

Plaintiff will seek leave of this court to further amend this lawsuit as additional DOES are identified.

Dated MAY/12/2008

Kenneth Barker, Plaintiff In Pro Per.

Plaintiff Demands A Jury Trial.

2.

EXHIBIT "2"



# Actions



**Home**    **Complaints/Parties**    **Actions**    **Pending Hearings**    **Case Report**    **Images**

Open Quick Search

## Case CIVMSC07-01488 - KENNETH BARKER VS. ROUND HILL COUNTRY

Move To This Date

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
|  | 12/09/2008 8:30 AM DEPT. 07 | FURTHER CASE MANAGEMENT CONFERENCE |  |  |
|  | 09/18/2008 8:30 AM DEPT. 07 | HEARING ON DEMURRER TO COMPLAINT OF KENNETH BARKER FILED BY ROUND HILL COUNTRYCLUB, GREG GONSALVES, DAVID PLOTNIK, CAROLE CARLUCCIO, ALLEN O KRUEGER, PETE DAVIS, PETER RUOTSI, MARVIN B STARR |  |  |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME PETER RUOTSI AS DOE 6 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME PETE DAVIS AS DOE 5 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME ALLEN O KRUEGER AS DOE 3 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME CAROLE CARLUCCIO AS DOE 4 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME DAVID PLOTNIK AS DOE 2 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME GREG GONSALVES AS DOE 1 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME MILLER STARR REGALIA AS DOE 8 | Not Applicable | N/A |
|  | 07/07/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME MARVIN STARR AS DOE 7 | Not Applicable | N/A |
|  | 07/07/2008 | UPDATE COMPLAINT OF KENNETH BARKER | Not Applicable |  |
|  | 06/30/2008 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR COMPEL PRODUCTION OF DISCOVERY DOCUMENTS FILED BY KENNETH BARKER | COMPLETED |  |
|  | 06/23/2008 9:00 AM DEPT. 07 | JURY TRIAL - LONG CAUSE/ 10 DAY(S) | VACATED |  |
|  | 06/19/2008 | ORDER APPROVING WILLIAM K HOUSTON, JR AS DISCOVERY REFEREE FILED | Not Applicable | N/A |
|  | 06/17/2008 | PROOF OF SERVICE BY MAIL FILED RE: NTC OF HRG ON DEMUR, RQST FOR JUDICAL NTC, ETC KENNITH BARKER ON: 06/16/08 | Not Applicable | N/A |

| | 06/16/2008 | NOTICE OF/TO DEMURRER FILED ON BEHALF OF PETE DAVIS, PETER RUOTSI, MARVIN B STARR, MILLER STARR REGALIA | Not Applicable | N/A |
|---|---|---|---|---|
| | 06/16/2008 | REQUEST FOR CLERK/COURT JUDGMENT FILED | Not Applicable | |
| | 06/16/2008 | MEMORANDUM OF POINTS AND AUTHORITIES FILED BY ROUND HILL COUNTRYCLUB, GREG GONSALVES, DAVID PLOTNIK, CAROLE CARLUCCIO, ALLEN O KRUEGER, PETE DAVIS, PETER RUOTSI, MARVIN B STARR IN SUPPORT OF DEFS DEMURRER | Not Applicable | N/A |
| | 06/16/2008 | DEMURRER TO COMPLAINT OF KENNETH BARKER FILED BY PETE DAVIS, PETER RUOTSI, MARVIN B STARR, MILLER STARR REGALIA | Not Applicable | N/A |
| | 06/16/2008 | HEARING ON DEMURRER WAS SET FOR 9/18/08 AT 8:30 IN DEPT. 07 | | |
| | 06/16/2008 | DECLARATION OF LEE ARCHER FILED RE: DECLARATIONS OF ALLEN KRUEGER, PETER DAVIS, AND PETER RUOTSI | Not Applicable | N/A |
| | 06/16/2008 | HEARING ON MOTION WAS SET FOR 6/30/08 AT 15:30 IN DEPT. 60 | | |
| | 06/16/2008 8:30 AM DEPT. 07 | HEARING ON OSC RE: CONSOLIDATE CASES; APPOINT SPECIAL MASTER/REFEREE BY COURT | COMPLETED | |
| | 06/09/2008 | BRIEF IN SUPRT OF COURT RECOMMENDATIONS RE: OSC FO R JUNE 16, 2008. FILED BY ROUND HILL COUNTRY CL, | Not Applicable | N/A |
| | 06/09/2008 9:00 AM DEPT. 07 | ISSUE CONFERENCE | VACATED | |
| | 05/28/2008 | PROOF OF SUBSTITUTED SERVICE OF COMPLAINT OF KENNETH BARKER RE: BUSINESS MILLER STARR REGALIA W/MAILING ON 05/19/08 FILED | Not Applicable | N/A |
| | 05/28/2008 | PROOF OF SUBSTITUTED SERVICE OF COMPLAINT OF KENNETH BARKER AS TO MARVIN B STARR WITH DECLARATION OF DILIGENCE AND DECLARATION OF MAILING ON 05/20/08 FILED | Not Applicable | |
| | 05/14/2008 | PROOF OF SERVICE BY MAIL FILED RE: IDENTIFICATION OF DOES 5, 6, 7 AND 8 SRVD ON: MR. LEE ARCHER ON: 05/13/08 | Not Applicable | N/A |
| | 05/12/2008 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME PETE DAVIS, PETER RUOTSI, MARVIN B STARR, MILLER STARR REGALIA AS DOE NUMBERS 5,6,7,8 | Not Applicable | N/A |
| | 04/29/2008 | REPORTER'S TRANSCRIPT MONIES ON DEPOSIT RETURNED TO DEPOSITOR. | Not Applicable | |
| | 04/28/2008 | PROOF OF SERVICE BY MAIL FILED RE: REQUEST TO DEFS FOR PROD OF DOCUMENTS (SET #2) SRVD ON: MR. LEE ARCHER ON: 4/25/08 | Not Applicable | N/A |
| | 03/28/2008 | COURT REPORTER PAID FOR TRANSCRIPT: ZANDONELLA | Not Applicable | |
| | 03/20/2008 | ORDER TO SHOW CAUSE FILED | Not Applicable | N/A |
| | | HEARING ON OSC WAS SET FOR 6/16/08 AT 8:30 IN DEPT. | | |

| | 03/20/2008 | 07 | | | |
|---|---|---|---|---|---|
| | 03/20/2008 | CLERK`S CERTIFICATE OF MAILING OF ORDER TO SHOW CAUSE FILED 3/20/08 SENT TO ALL PARTIES | Not Applicable | | |
| | 03/19/2008 | ORDER FROM DCA DISMISSING APPEAL | Not Applicable | N/A | |
| | 03/18/2008 | FEE RECEIVED FOR CTX FROM KENNETH BARKER | Not Applicable | | |
| | 03/06/2008 | ORDER DENYING PLAINTIFFS MTN FOR RECONSIDERATION FILED BY ROUND HILL COUNTRY CLUB, GREG GONSALVES | Not Applicable | N/A | |
| | 03/05/2008 | ORDER DENYING PLTFS MOTION FOR RECONSIDERATION SENT TO ROOM 103 FOR FILING | Not Applicable | N/A | |
| | 02/20/2008 | RECEIPT FOR ESTIMATED COST OF REPORTER`S TRANSCRIPT DEPOSITED | Not Applicable | | |
| | 02/20/2008 | NOTICE DESIGNATING RECORD ON APPEAL | Not Applicable | N/A | |
| | 02/13/2008 | FEE RECEIVED FOR CTX FROM KENNETH BARKER | Not Applicable | | |
| | 02/11/2008 | OPPOSITION TO NTC OF RELATED CASES & ANS TO RELATED CASES FILED BY KENNETH BARKER. | Not Applicable | N/A | |
| | 02/11/2008 | APPEAL OF ORDER FILED | Not Applicable | N/A | |
| | 02/06/2008 | REPORT & RECOMMENDATION NOTICE OF DECISION FILED WITH PROOF OF MAILING | Not Applicable | N/A | |
| | 01/29/2008 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR RECONSIDERATION FILED BY KENNETH BARKER | COMPLETED | | |
| | 01/24/2008 | ** VOID ** GC 70617(A) MOTION FEE | Not Applicable | | |
| | 01/23/2008 | OPPOSITION TO DEFENDANTS OPP TO PLAS MTN FOR RECONSIDERATION & REQUEST FOR SANCTIONS FILED | Not Applicable | N/A | |
| | 01/23/2008 | *DELETED*,MOTION TO/FOR ARKER | | | |
| | 01/18/2008 | SUPPLEMENTAL ITEMS FOR MOTION FOR RECONSIDERATION FILED ON 12-10-07 FILED BY KENNETH BARKER | Not Applicable | N/A | |

Next 50



Home     Complaints/Parties     Actions     Pending Hearings     Case Report     Images

Open Quick Search

## Case CIVMSC07-01488 - KENNETH BARKER VS. ROUND HILL COUNTRY

Move To This Date

| Viewed | Date | Action Text | Disposition | Image |
|--------|------|-------------|-------------|-------|
| | 01/15/2008 | PROOF OF SERVICE BY MAIL FILED RE: CORRECTION OF TYPOGRAPHICAL ERROR SRVD ON ARCHER NORRIS ON 01/14/08 | Not Applicable | N/A |
| | 01/15/2008 | DECLARATION OF WILLIAM FISKE FILED RE: IN OPP TO PLTS MTN FOR RECONSIDERATION | Not Applicable | N/A |
| | 01/15/2008 | OPPOSITION TO PLTS MTN FOR RECONSIDERATION & REQ FOR SANCTIONS FILED BY ROUND HILL COUNTRY CLUB. | Not Applicable | N/A |
| | 01/08/2008 | CORRECTION OF TYPOGRAPHICAL ERROR FILED | Not Applicable | N/A |
| | 01/07/2008 8:30 AM DEPT. 30 | CASE MANAGEMENT CONFERENCE | COMPLETED | |
| | 01/04/2008 | CASE MANAGEMENT CONFERENCE STATEMENT FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 12/28/2007 5:39 PM DEPT. 07 | DEFAULT DEPARTMENT WAS CHANGED FROM 30 TO 07. | Not Applicable | |
| | 12/28/2007 | CASE MANAGEMENT CONFERENCE STATEMENT FILED BY KENNETH BARKER | Not Applicable | N/A |
| | 12/20/2007 8:30 AM DEPT. 30 | HEARING ON MOTION TO/FOR DEFAULT JUDGMENT, DEMAND FOR JURY TRIAL FILED BY KENNETH BARKER | DROPPED BY COURT | |
| | 12/10/2007 | HEARING ON MOTION WAS SET FOR 1/29/08 AT 15:30 IN DEPT. 60 | | |
| | 12/10/2007 | MOTION TO/FOR RECONSIDERATION BEFORE J. SANDERS FILED BY KENNETH BARKER | | |
| | 12/07/2007 7:00 AM DEPT. ADR | SCHEDULED RETURN FROM MEDIATION | COMPLETED | |
| | 12/03/2007 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR FOR SANCTIONS AND ORDER TO COMPEL DOCS FILED BY KENNETH BARKER | COMPLETED | |
| | 12/03/2007 8:30 AM DEPT. 30 | CASE MANAGEMENT CONFERENCE | CONTINUE | |
| | 11/27/2007 | PROOF OF SERVICE BY MAIL FILED RE: ANSWER TO SUP RESPONSES, DATED 11/14/07 SRVD ON: MR. LEE ARCHER ON: 11/26/07 | Not Applicable | N/A |
| | 11/27/2007 | PROOF OF SERVICE BY MAIL FILED RE: ANSWER TO OPPO TO PLAINTFS MTN TO COMPEL SRVD ON: MR. LEE ARCHER ON: 11/26/07 | Not Applicable | N/A |

| | | | | |
|---|---|---|---|---|
| | 11/26/2007 | ANSWER TO OPPOSITION TO PLAINTIFFS MTN TO COMPEL FILED | Not Applicable | N/A |
| | 11/26/2007 | ANSWER TO SUPPLEMENTAL RESPONSES DATED NOVEMBER 14, 2007 FILED | Not Applicable | N/A |
| | 11/15/2007 | OPPOSITION TO MOTION TO/FOR COMPEL FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 11/15/2007 | DECLARATION OF PROBAL G. YOUNG FILED RE: OPPOSITION TO PLTFS MOTION TO COMPEL | Not Applicable | N/A |
| | 11/15/2007 | (U.J.) ANSWER TO COMPLAINT OF KENNETH BARKER FILED BY GREG GONSALVES, DAVID PLOTNIK, CAROLE CARLUCCIO, ALLEN O KRUEGER | Not Applicable | N/A |
| | 11/02/2007 | HEARING ON MOTION WAS SET FOR 12/20/07 AT 8:30 IN DEPT. 30 | | |
| | 11/02/2007 | MOTION TO/FOR DEFAULT JUDGMENT, DEMAND FOR JURY TRIAL FILED BY KENNETH BARKER | | |
| | 10/22/2007 | PROOF OF SERVICE BY MAIL FILED RE: ANSWR TO DEF RESPONSE/PROD OF DOCUMNTS, SET ONE SVD ON: LEE ARCHER ON: 10/09/07 | Not Applicable | N/A |
| | 10/19/2007 | UPDATED CASE TO CHANGE LAST NAME OF PARTY ALLEN O KRUEGER | Not Applicable | |
| | 10/19/2007 | AMENDMENT TO COMPLAINT FILED AMENDING NAME OF DEFENDANT ALLEN O KRUEGER | Not Applicable | N/A |
| | 10/19/2007 | ON COMPLAINT OF KENNETH BARKER 0006 PARTY TYPE CHANGED TO DEFENDANT FROM PARTY TYPE PLA | | |
| | 10/19/2007 | ANSWER TO DEFS RESPONSES FOR PRODUCTION OF DOCUMENTS, SET ONE | Not Applicable | N/A |
| | 10/19/2007 | CORRECTION OF TYPOGRAPHICAL ERROR FOR DOE NO. 4 SIGNED, SENT TO RM 103 | Not Applicable | N/A |
| | 10/09/2007 | PROOF OF SERVICE BY MAIL FILED RE: NTC OF MTN & MTN FOR SANCTIONS & ORD TO COMPEL PRODUCTION OF DOCUMENTS SVD ON: LEE ARCHER ON: 10/06/ | Not Applicable | N/A |
| | 10/09/2007 | NOTICE OF/TO COURT CONTINUANCE DATED 9/14/07 FILED ON BEHALF OF KENNETH BARKER | Not Applicable | N/A |
| | 10/09/2007 | CASE MANAGEMENT CONFERENCE STATEMENT FILED BY KENNETH BARKER | Not Applicable | N/A |
| | 10/05/2007 | HEARING ON MOTION WAS SET FOR 12/03/07 AT 15:30 IN DEPT. 60 | | |
| | 10/05/2007 | MOTION TO/FOR SANCTIONS AND ORDER TO COMPEL PRODUCTION FILED BY KENNETH BARKER | | |
| | 09/17/2007 7:00 AM DEPT. 30 | CHECK FOR PROOF OF SERVICE | VACATED | |
| | 08/31/2007 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME ALLEN O KRUEGER AS DOE 4 | Not Applicable | N/A |
| | 08/23/2007 | AMENDMENT TO COMPLAINT OF KENNETH BARKER FILED TO NAME GREG GONSALVES, DAVID PLOTNIK, CAROLE CARLUCCIO AS DOE 1, 2, 3 | Not Applicable | N/A |
| | 08/14/2007 | (U.J.) ANSWER TO COMPLAINT OF KENNETH BARKER FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 08/09/2007 | RETURN FROM MEDIATION SET FOR 12/07/07 | | |

| | 08/09/2007 8:30 AM DEPT. 30 | HEARING ON OSC FOR PRLIM INJUNCTION AND TRO ( FILED BY PLN) | COMPLETED | |
|---|---|---|---|---|
| | 08/06/2007 | ORDER TO SHOW CAUSE RE PRELIM INJUN, ANSWER TO DEF OPPO FOR PRELIM INJUNCTION FILED | Not Applicable | N/A |
| | 08/03/2007 | OPPOSITION TO PRELIMINARY INJUNCTION FILED BY ROUND HILL COUNTRY CLUB. | Not Applicable | N/A |
| | 08/03/2007 | DECLARATION OF WILLIAM S. FISKE FILED RE: IN SUPPORT OF OPPSITION TO PRELIMINARY INJUNCTION | Not Applicable | N/A |
| | 07/27/2007 | PROOF OF PERSONAL SERVICE FILED ON COMPLAINT OF KENNETH BARKER AS TO ROUND HILL COUNTRYCLUB WITH SERVICE DATE OF 07/16/07 | Not Applicable | N/A |
| | 07/19/2007 | ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION & ADDITIONAL MOVING PAPER ( FILED AT INSISTENCE OF P | Not Applicable | N/A |
| | 07/17/2007 | ORDER TO SHOW CAUSE RE PRELIM INJNCTN AND TRO FILED | Not Applicable | N/A |
| | 07/17/2007 | EX-PARTE APPLICATION TRO TO ORDER TO SHOW CAUSE RE PRELIM INJNT FILED BY KENNETH BARKER | Not Applicable | |
| | 07/17/2007 | LAW & MOTION HEARING WAS SET FOR 8/09/07 AT 8:30 IN DEPT. 30 | | |
| | 07/13/2007 | ORIGINAL SUMMONS ON COMPLAINT OF KENNETH BARKER FILED | Not Applicable | N/A |
| | 07/13/2007 | CLERK'S TICKLER TO CHECK FOR PROOF OF SERVICE WAS SET FOR 9/17/07 AT 7:00 IN DEPT. 30 | | |

Next 50    Previous 50



**Home**   **Complaints/Parties**   **Actions**   **Pending Hearings**   **Case Report**   **Images**

Open Quick Search

## Case CIVMSC07-01488 - KENNETH BARKER VS. ROUND HILL COUNTRY

Move To This Date

| Viewed | Date | Action Text | Disposition | Image |
|--------|------|-------------|-------------|-------|
| | 07/13/2007 | CASE MANAGEMENT CONFERENCE WAS SET FOR 12/03/07 AT 8:30 IN DEPT. 30 | | |
| | 07/13/2007 | COLOR OF FILE IS GRAY | Not Applicable | |
| | 07/13/2007 | CASE ENTRY COMPLETE | Not Applicable | |
| | 07/13/2007 | CASE HAS BEEN ASSIGNED TO DEPT. 30 | | |
| | 07/13/2007 | COMPLAINT FILED. SUMMONS IS NOT (NONE PROVIDED AT THE TIME OF FILING) ISSUED | Not Applicable | N/A |

Previous 50

EXHIBIT "3"

Kenneth Barker,
2349 Royal Oaks Drive,
Alamo,CA. 94507.
Phone ( 925 ) 820-0198
Fax    ( 925 ) 820-0198

Plaintiff In Pro Per.

F I L E D

JAN - 8 2008

K. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By  S. KRICK  Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF CONTRA COSTA

### UNLIMITED JURISDICTION

C 08 - 0 0 0 5 9

| | |
|---|---|
| KENNETH BARKER, and | CASE NO. |
| LOIS ANNE BARKER | COMPLAINT FOR: NUISANCE: BREACH OF CONTRACT: BREACH OF IMPLIED COVENANT OF GOOD FAITH; FRAUD; AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MALICIOUS HARASSMENT. JURY TRIAL DEMANDED. |
| Plaintiff | |
| v. | |
| ROUND HILL COUNTRY CLUB, | |
| DOES, 1 through 75 inclusive. | PER LOCAL RULE 5 THIS CASE IS ASSIGNED TO DEPT_____ |
| Defendant | |

## COMPLAINT.

1 . Plaintiff , Kenneth Barker and Lois Anne Barker , bring this action for Nuisance caused by defendant's trespass of innumerable driving range golf balls bombarding plaintiff's home and garden ( premises ) ; for Breach of Contract ( Easement ); for Breach of the Implied Covenant of Good Faith ; for Fraud ; and for Intentional Infliction of Emotional Distress and Malicious Harassment .

1 .

Plaintiff seeks damages in the amount of $5,000,000.00 for the first four ( 4 ) causes of action; and $5,000,000.00 in punitive damages, for the last cause of action .

2. Plaintiff, Kenneth Barker and Lois Anne Barker are now, and at all times mentioned , residents of Alamo, California, with address at 2349 Royal Oaks Drive, Alamo, CA. 94507.

3 .Defendant, Round Hill Country Club, is now, and at all times mentioned, is a resident of Alamo, California, and a Corporation organized under the laws of the State of California, with it 's principal place of business located at 3169 Round Hill Road, Alamo, CA. 94507.

4. The true names and capacities of defendants sued in this action under the fictitious names DOES 1 through 75, inclusive, are unknown to plaintiff and plaintiff will seek leave of the court to amend this complaint to allege those names and capacities as soon as they are ascertained .

5. Plaintiff is informed and believes, on the basis of such information alleges, that at all times mentioned in this complaint, one or more of the defendants were acting as agents, servants, partner, employee, or joint venturer of one or more of the remaining defendants, and in doing the things described in this complaint were acting within the scope of the agency, service, partnership, joint venture, and/or employment with the permission and consent, express or implied, and for the benefit of one or more of the remaining defendants .

6. Allegations in this complaint against defendants refer to both the specifically named defendants and fictitiously named defendants.

# FIRST CAUSE OF ACTION

## NUISANCE

7. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 6, as though fully set forth herein.

8. Commencing on or about April 1995, defendant has unlawfully, bombarded plaintiff's premises with innumerable ( i .e. multi – thousands ) of driving range golf balls. Golf balls can be lethal. Because of fear of being hit by golf balls, plaintiff, and their guests and invitees, are unable to enjoy the premises, or fully use the rooms with windows facing the driving range. Additionally, Plaintiffs, Kenneth Barker and Lois Anne Barker, have each been hit seven ( 7 ) times each by range golf balls. Also, plaintiff's beloved cat was hit and injured by a driving range golf ball.

9. Plaintiff purchased their premises in August 26, 1974. ( Exhibit No . 1 )  However, golf ball trespass problems did not start until about 1995 ( i.e. 21 years later ) when defendant commenced making major changes to the golf course and driving range. These changes materially realigned, and critically shortened, the length of the existing driving range. As proximate result, the driving range in now far too short, being between about 165 to 200 yards long, whereas new golf courses are designed to have a driving range at least 375 yards long. Thus, defendant 's shortened driving range is only about half as long as it should be. Therefore, it is grossly deficient .The shortened driving range is root cause cause of the ongoing bombardment of plaintiff's property with driving range golf balls .

10. Defendant was grossly negligent in realigning and shortening the driving range without consideration of plaintiff 's constitutional rights of enjoying the full use of it's premises.

3.

Significantly, defendant continues to operate the driving range in a dangerous and unsafe

manner in reckless disregard for plaintiff's safety and in violation of OSHA, and Cal-

-OSHA, safety laws.

11. Plaintiff has repeatedly and continually requested, and demanded, defendant cease

and desist the invasion of plaintiff's premises with driving range golf balls. Defendant,

however, has failed and refused to do so.

12. Defendant's reckless disregard for plaintiff's safety constitutes a malicious act, and a

gross violation of plaintiff's constitutional rights to the full enjoyment of it's premises.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT ( EASEMENT )

13. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 12 as

though fully set forth here.

14. An Easement Agreement ( prepared by defendant ) was recorded on June 8, 1973, by

County Record No. 55298 ( Exhibit No. 2 ).It states in pertinent part, the following :

*Defendant will construct a fence for " ...preventing golf balls from the golf course and*

*driving range from trespassing or causing damage to the property of First Parties ( i.e.*

*plaintiff ) or causing damage to any person or persons, or invitees, of the first Parties*

*while on First Parties premises ..."*
                                                and,

*" Second Party ( i. e. defendant ) shall indemnify First Parties ( i.e. plaintiff ) against any*

*loss and damage which shall be caused by the exercise of said egress or by any wrongful*

*or negligent act or omission of Second Party ( i.e. defendant ) or it's agents or*

4.

*employees in the course of their employment."*    ( Italics and underlining added )

15. Not only has defendant failed/refused to prevent golf balls from the golf course and driving range from trespassing or causing damage to plaintiff's premises, defendant negligently shortened the length of the driving range. Thus, defendant's gross negligence actually caused the golf ball trespass problems, instead of preventing them, as required by the terms of the Easement Agreement.

16. Unquestionably, defendant breached the Easement Agreement. Therefore, pursuant to the express terms of the Easement Agreement, defendant is liable for plaintiff's loses and damages.

### THIRD CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

17. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 16 as though fully set forth here.

18. Defendant breached the Implied Covenant of Good Faith for the Easement Agreement by concealing that it intended to realign and materially shorten the driving range. Defendant knew, or should have known, that realigning and shortening the driving range allowed unrestricted trespass of multi thousands of range golf balls onto plaintiff's premises .

As a proximate result, seven ( 7 ) windows in plaintiff's home that face the driving range have been broken by range golf balls, making the kitchen area, breakfast nook, and upstairs bath room hazardous. Also, plaintiff is unable to use the garden areas for fear of being hit by range golf balls. Despite plaintiff's many requests that defendant abate the golf ball trespass, defendant has refused to do so .

5.

20. Defendant's unrelenting bombardment of plaintiff's premises has not only caused plaintiff to suffer fear, humiliation, intimidation, embarrassment, it prevented plaintiff from using the garden areas, and also greatly reduced the value of plaintiff's premises.

## FOURTH CAUSE OF ACTION

### FRAUD

21. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 20 as though fully set forth here.

22. On or about November 10, 1972, defendant sold the lot at 2349 Royal Oaks Drive, Alamo, CA. 94507 for the purpose of building a house on the lot, and executed an Indemnity Agreement for the property. ( Exhibit No. 3 )

23. On or about June 8, 1973, defendant prepared and recorded critical Easement Agreements with Contra Costa County ( Exhibit No. 2 ). As noted in Paragraph No.14 ( above ) defendant materially breached the Easement Agreement.

24. On August 26, 1974, plaintiff purchased it's premises at 2349 Royal Oaks Drive, Alamo, CA. 94507. ( Exhibit No. 1 ). As part of the purchase decision, plaintiff relied upon defendant's representations set forth in the Easement Agreement. They required defendant to prevent range golf balls from trespassing onto the premises, and to indemnify plaintiff for any loss or damage caused by any wrongful or negligent acts of defendant, or by defendant's agents or employees.

25. From the express terms of the Easement Agreement, defendant knew that realigning and materially shortening the driving range, would permit trespass of multi-thousands of golf balls onto plaintiff's premises. That constituted a wrongful and negligent act

6.

Thereby, defendant committed fraud.

26. By letter dated June 13, 2007,( Exhibit No. 4 ) defendant stated unless plaintiff changed it's position, and accepted defendant's illegal golf ball trespass on to it's premises, then "... *we (i.e. defendant ) really have nothing further to discuss.* "

27. Defendant 's Easement representations were clearly false and fraudulent. That is further confirmed by a defendant 's letter of June 19 , 2007. ( Exhibit No. 5 ) It states in pertinent part , the following :

" *... the Board of Directors of the Round Hill Country Club has concluded that it will no longer pursue it 's futile attempt to find a mutually agreeable resolution to whatever problem may exist with respect to the prevention of practice range balls from landing on your property .*

*As such, from here on round Hill country club will, on it ' s own, take such preventative steps as it deems advisable and in its own best interests in this matter.* "

28. Defendant 's bald faced written repudiations of the Easement Agreement ( which defendant prepared ) unquestionably constitutes fraud. Clearly, defendant fraudulently never had any intention of complying with the above quoted Easement provisions .

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## AND MALICIOUS HARASSMENT

29. Plaintiff incorporates by reference Paragraphs 1 through 27 as though fully set forth here.

7.

30. On November 28, 2007, without plaintiff's knowledge or consent, defendant

invaded, and illegally trespassed onto plaintiff's premises. See Declarations by Kenneth

Barker ( Exhibit No. 6 ) and Lois Anne Barker ( Exhibit No. 7 ).

Defendant's work crew parked their work vehicle in plaintiff's drive way, and thereafter,

proceeded to erect one of the 45 foot high fence poles from plaintiff's back garden for an

illegal 45 high x 220 foot long fence adjacent to the Easement boundary .

31. Defendant's fence construction work was performed in gross violation of the County

Ordinance Code and performed without the required County permits.

32. Plaintiff was required to call the Sheriff to remove defendant's work crew from it's

premises, and to call the County Building Inspection Department to have the illegally

constructed fence taken down .

33. Defendant was fully aware that it was violating the County Ordinance Code and

performing the fence construction work without the required permits. Therefore,

defendant's illegal invasion of plaintiff's property under these facts and circumstances ,

constitutes intentional infliction of emotional distress and malicious harassment.

Defendant's illegal invasion of plaintiff's premises was inexcusable. It was maliciously

performed to harasses, intimidate, harm, hurt, and oppress plaintiffs in their own home.

34. Plaintiff suffered emotionally distress, fear, intimidation, embarrassment, and

humiliation, from defendant's illegal invasion of plaintiff's premises. Therefore, under

these facts and circumstances, punitive damages, are warranted, and clearly required, in

order to deter defendant's further arrogant, arbitrary, capricious, and illegal conduct .

8.

## PRAYER FOR RELIEF.

Wherefore, requests that:

1. Plaintiff be awarded a sum of $5,000,000.00 against defendant for Nuisance; Breach of Contract; Breach Of the Covenant of Good Faith; and for Fraud.

2. Plaintiff be awarded a further additional sum of $5,000,000.00 for Punitive Damages for defendants's Intentional Infliction of Emotional Distress and Malicious Harassment.

3. Prejudgment interest; and

4. Such other and further relief as the court may deem just and proper.

Dated : 1/08/08

*Kenneth Barker*

Kenneth Barker, Plaintiff in Pro Per.

Plaintiff Demands A Jury Trial.

9.

1

2

**EXHIBIT LIST**

3

4

5  1. GRANT DEED DATED AUGUST 26, 1974.

6
   2. EASEMENT AGREEMENT DATED JUNE 8, 1973
7

8  3. INDEMNITY AGREEMENT DATED NOVEMBER 10, 1972.

9  4. DEFENDANT'S LETTER DATED JUNE 13, 2007.

10  5. DEFENDANT' S LETTER DATED JUNE 19, 2007.

11  6. DECLARATION BY KENNETB BARKER DATED JANUARY 7, 2008.

12  7. DECLARATION BY LOIS ANNE BARKER DATED JANUARY 7, 2008.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

10.

RECORDING REQUESTED BY

Transamerica Title Insurance Co.

AND WHEN RECORDED MAIL TO

Name    Mr. & Mrs. Kenneth Barker
Street  2349 Royal Oaks Drive
Address Alamo, Ca.
City &
State
Zip

MAIL TAX STATEMENTS TO

Name
Street  same as above
Address
City
State
Zip

AUG 29 1974
77088

RECORDED AT REQUEST OF
TRANSAMERICA TITLE INS. CO.

AT    9    AUG 29 1974
MIN. PAST    M.

OFFICIAL RECORDS OF
CONTRA COSTA COUNTY
J. R. OLSSON, County Recorder
Fee $

AUG 29 1974
CONTRA COSTA CO.
TRANSFER TAX
PAID    39.60

BOOK 7310 PAGE 342

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DOCUMENTARY TRANSFER TAX $ 39.40
...COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR
XX ..OR COMPUTED ON FULL VALUE LESS LIENS AND
ENCUMBRANCES REMAINING AT TIME OF SALE.
Transamerica Title Insurance Co.
Signature of Declarant or Agent determining tax, Firm Name

# GRANT DEED

(Escrow No. 347479 D )

By this instrument dated    August 26, 1974    for a valuable consideration,

JIMMIE R. LYNN AND CAROLE J. LYNN, husband and wife, as joint tenants

hereby GRANTS to

KENNETH BARKER AND LOIS ANNE BARKER, his wife, as joint tenants

the following described Real Property in the State of California, County of CONTRA COSTA

City of (unincorporated)

SEE EXHIBIT "A" ATTACHED HERETO.

JIMMIE R. LYNN

CAROLE J. LYNN

STATE OF CALIFORNIA
COUNTY OF Contra Costa    SS.

On August 26, 19 74 before me, the undersigned, a Notary Public in and for said
County and State, personally appeared Jimmie R. Lynn, Carole J. Lynn
known to me to be the
person whose name S are subscribed to this within instrument, and acknowledged to me that they executed the same.

Notary's Signature Bonnie L. Judd

OFFICIAL SEAL
BONNIE L. JUDD
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
My Commission Expires Oct. 19, 1976

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT "A"                                    BOOK 7310 № 343

The land referred to in this Report is situated in the State of California, County of _____ Contra Costa .
and is described as follows:

Portion of Lot 3, map of Subdivision 2794, filed May 23, 1962, Map Book 87, page 30, Contra Costa County records, described as follows:

Beginning on the northwest lines of Royal Oaks Drive, at the most southerly corner of Lot 3, as designated on said map of Subdivision 2794; thence from said point of beginning, along the exterior lines of said Lot 3, north 43° 35' 08" west, 185 feet; north 46° 24' 52" east, 6 feet and south 89° 44' 05" east, 110 feet to a point on the north lines of said Lot 3, distant thereon north 89° 44' 05" west, 189.57 feet from the most easterly corner thereof; thence south 79° 41' 38" east, 142.79 feet to a point on the northwest line of said Royal Oaks Drive, as designated on said map of Subdivision 2794, distant thereon southwesterly 55 feet from the most easterly corner of said Lot 3; thence along said Royal Oaks Drive, along the arc of a curve to the left with a radius of 310 feet, through a central angle of 11° 48' 56", an arc distance of 63.93 feet and south 46° 24' 52" west, 106 feet to the point of beginning.

EXCEPTING: The mineral rights reserved in the deed from Western Title Guaranty Company, Contra Costa County Division, recorded February 3, 1966, book 5050, page 483, Official Records, as follows:

"An undivided one-half (½) interest in and to all minerals, oil, other hydrocarbons, gas and all associated substances existing in or on said real property, together with the right to explore, drill for, extract, take from, remove and dispose of one-half (½) of any or all of said minerals, oil, other hydrocarbons, gas and all associated substances from said real property, below a depth of five hundred (500) feet from the surface thereof, by wells, equipment and means located on the surface of adjacent land and extended into said real property herein conveyed and hereinabove described at a point or points below a depth of five hundred (500) feet from the surface of said real property."

                                    END OF DOCUMENT

**55286**

JUN -8 1973

RECORDED AT REQUEST OF
WESTERN TITLE GUARANTY COMPANY,
CONTRA COSTA COUNTY, DIVISION
JUN -8 1973
AT 9;20 O'CLOCK A M.
CONTRA COSTA COUNTY RECORDS
W. T. PAASCH
COUNTY RECORDS

After Recording Return To:
Jim Bryson
Vice President
Round Hill Estates
3183 Round Hill Road
Alamo, California

EASEMENT   FEE $   7.00   365000-6

BOOK 6995 PAGE 22

/JIMMIE R. LYNN and CAROLE J. LYNN, his wife, herein-

after called First Parties, in consideration of value paid by ROUND HILL

ESTATES, a California corporation, hereinafter called Second Party, the

receipt whereof is hereby acknowledged, hereby grants to Second Party those

perpetual and exclusive easements and rights of way to construct, operate,

maintain, repair, reconstruct, replace and remove at any time, and from

time to time, providing however if said fence is down or lowered in any way

from its present elevation the party of the Second Part will cause the driving range

to be closed for the period of time the protection of said fence is affected, a wire

metal screen or fence, consisting of one or more lines of poles and/or other struc-

tures covered by a wire screen for the purpose of preventing golf balls from the

golf course and driving range from trespassing or causing damage to the property

of First Parties or causing damage to any person or persons, or invitees of the

First Parties while on First Parties' premises, and all necessary and proper founda-

tions, footings and fixtures for use in connection with said screen and fence and/or

other structure, together with a right of way on, along and in all of the hereinafter

described strip of those certain lands which are situated in the County of Contra

Costa, State of California and described as follows: –

A portion of Lot 3 as designated on the Map of
Tract #2794 Round Hill Country Club area.

The aforesaid strip is described as follows:–

Following described real property in the subdivision
2794 situated in the County of Contra Costa, State

DOCUMENTARY TRANSFER TAX $ ____
COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES REMAINING THEREON AT TIME OF SALE.
Signature of Declarant or agent determining tax. Firm name

2794 the following two courses: North 46° 24' 52" East 6.00 feet; South 89° 44' 05" East 110.08 feet; thence leaving said boundary of lot 3, South 79° 41' 38" East 142.89 feet to a point on a 310.21 foot radius curve, being the northerly line of Royal Oaks Drive; thence from a tangent which bears South 58° 13' 44" West and along said curve, being the northerly line of Royal Oaks Drive, to the left through a central angle of 1° 51' 27" and arc length of 10.06 feet; thence leaving said line of Royal Oaks Drive North 81° 00' 00" West 76.83 feet, thence North 85° 18' 20" West 169.85 feet to a point on the southwest line of said lot 3; thence North 43° 35' 08" west along said southwest line 2.00 feet to the Point of Beginning.

Containing 0.06 Acres more or less.

Second Party shall have the right to maintain grass turf on said strip of land and to use the same as a part of the fairway and driving range of said golf course.

First Parties hereby grant to Second Party:—

(a)    The right of ingress to and egress from said strip over and across said land by means of roads and lanes thereon, if such there by, otherwise by such route or routes as shall occasion the least practicable damage and inconvenience to First Parties;

(b)    The right from time to time to trim and to cut down and clear away or otherwise destroy any and all trees and brush now or hereafter on said strip and to trim and to cut down and clear away any trees on either side of said strip which now or hereafter in the opinion of Second Party may be a hazard to said screen, fence, poles and/or other structures, wires or cables, by reason of the danger of falling thereon, or may interfere with the exercise of Second Party's rights hereunder.

BOOK 6965 PAGE 23

BOOK 6965 PAGE 24

(d)    The right to mark the location of said strip by suitable markers set in the ground; provided that said markers shall be placed in such location which will not interfere with any reasonable use First Parties shall make of said strip.

(e)    First Parties further agree that nothing herein contained shall be held to change or modify the Indemnity Agreement dated November 10, 1972 between JIMMIE R. LYNN and CAROLE J. LYNN, his wife, and ROUND HILL ESTATES, a California corporation, of record in the office of the County Recorder of the County of Contra Costa, State of California.

Second Party hereby covenants and agrees:-

(a)    Second Party shall not fence said strip;

(b)    Second Party shall promptly backfill any excavations made by it on said strip and repair any damage it shall do to First Parties' land.

(c)    Second Party shall indemnify First Parties against any loss and damage which shall be caused by the exercise of said ingress and egress or by any wrongful or negligent act or omission of Second Party or of its agents or employees in the course of their employment.

First Parties reserve the right to use said strip for purposes which will not interfere with Second Party's full enjoyment of the rights hereby granted; provided that First Parties shall not:

(a)    Erect or construct any building or other structure, or drill or operate any well, or construct any other obstruction, or

rubbish, debris, or any other substance or material, whether combustible or noncombustible, on said strip, or so near thereto as to constitute, in the opinion of Second Party, a hazard to said fence or screen and/or structures, wires and poles.

(c)     Grant any easement or easements on, under, or over said strip without the written consent of Second Party.

The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

IN WITNESS WHEREOF, First Parties have executed these presents this      /      day of ~~May,~~ *June*, 1973.

<span style="float:right">BOOK 6965 PAGE 25</span>

_____
JIMMIE R. LYNN

_____
CAROLE J. LYNN,

FIRST PARTIES

STATE OF CALIFORNIA          )
                             : SS
COUNTY OF CONTRA             )
COSTA

On this      1st      day of ~~May,~~ June, 1973, before me, _____ Linda G. Johnson, a Notary Public in and for the County of Contra Costa, State of California, residing therein, duly commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me to be the persons described in and whose names are subscribed to the within instrument, EASEMENT, and they acknowledged to me that they executed the same.



BOOK 6965 PAGE 26

Northerly Line Lot 3 Per Subd. 2794 Record

N46°24'52"E
6.00

N89°44'05"W    110.08'

N85°18'20"W    169.88'

N79°41'38"W    142.89'

N81°00'00"W    76.83'

Portion   LOT 3

N43°35'08"W
185.13'

N46°24'52"E
106.01'

R310.72'
L=71.4834'   L=63.57'

N43°35'28"W(R)

Royal Oaks Drive

Scale: 1"=40'

EXHIBIT "B"

## INDEMNITY AGREEMENT

THIS AGREEMENT, made on the ___10___ day of November, 1972, in the County of Contra Costa, State of California.

The parties to this Agreement are JIMMIE R. LYNN and CAROLE J. LYNN, his wife, hereinafter called "Indemnitor" and ROUND HILL ESTATES, a California corporation, hereinafter called "Indemnitee".

Indemnitee has entered into a Deposit Receipt with Indemnitor to sell to Indemnitor certain real property in Contra Costa County, State of California, commonly known as 2349 Royal Oaks Drive, Round Hill, California; being Lot 3, Unit 2, Subdivision 2794, Records of the County of Contra Costa, State of California. Among other provisions, the Deposit Receipt provides that purchasers (Indemnitors herein) agree to hold sellers (Indemnitees herein) free and harmless from any and all claims and demands of every kind and character which may be suffered by persons while occupying or visiting the herein described property by reason of the use, maintenance and operation of the Round Hill Golf and Country Club or the driving range operated in connection therewith, or any other use of the adjoining premises.

Indemnitors acknowledge that they are familiar with the location of said lot in respect to the Round Hill Golf and Country Club course, and that the area of the said club set aside for use of members, servants, employees, guests or invitees as a practice area immediately adjoins the property hereinabove referred to; and they further acknowledge that they know that in the usual and ordinary use of said area, that golf balls from the course and driving range are driven onto said Lot 3, Unit 2 of Subdivision 2794.

IT IS AGREED:

1.  JIMMIE R. LYNN and CAROLE J. LYNN, his wife, hereby agree to indemnify ROUND HILL ESTATES, ROUND HILL GOLF AND COUNTRY CLUB, its agents, servants, employees, members, guests and invitees against any and all claims or damages, costs or judgments or actions, arising from any accident or injury or damage whatsoever, against said Round Hill Estates or Round Hill Golf and Country Club, or its agents, servants, employees, members, guests or invitees, in respect to the subject of indemnity herein recited, whether such claims or actions be rightfully or wrongfully brought or filed; and against all costs incurred by Indemnitee herein.

In case an action should be filed in respect to the subject of indemnity herein, Indemnitor agrees that they will defend the suit at their own cost and expense; and in default thereof, Indemnitee may employ an attorney of its own selection to appear and defend the action on behalf of Indemnitee, at the expense of said Indemnitor.

2. The indemnity herein provided for will extend from the date of this Agreement so long as the adjoining property is operated as a golf club and practice area.

Indemnitees agree that this Agreement shall be binding on their heirs, successors and assigns, and further agree that in the event that they shall sell, transfer or otherwise dispose of said property, that they will cause the assignee or purchaser thereof, to sign as Indemnitees, an Agreement on the same terms and conditions as herein contained.

3. Indemnitees, their heirs, successors and assigns, agree to keep in full force and effect liability insurance in the sum of not less than $ *100,000.00* to satisfy their obligation hereunder.

4. If the Indemnitee, in the enforcement of any part of this Indemnity Contract, shall incur necessary expenses or become obligated to pay attorneys fees or court costs, Indemnitors agree to reimburse Indemnitee for such expenses, attorneys fees or costs, within ten (10) days of receiving written notice from Indemnitee of the incurring of such expenses, costs or obligations.

5. Indemnitor agrees to pay Indemnitee interest at the rate of seven per cent (7%) per annum on any necessary expenses or costs incurred in the enforcement of the indemnity contract or any sums Indemnitee is obligated to pay with respect to the matters to which this indemnity is given, from the date on which expenses or costs are incurred or such sums are paid.

The Indemnitors acknowledge that they have read the foregoing Indemnity Agreement and understand the terms thereof, and that thereafter they signed their names as Indemnitors hereto.

-2-

IN WITNESS WHEREOF, the parties hereto have executed this instrument the day and year first above written.

_____
Jimmie R. Lynn

_____
Carole J. Lynn,                    Indemnitor.


ROUND HILL ESTATES, a
California Corporation

By _____
Its _____ Pres. _____ Indemnitee

STATE OF CALIFORNIA)
                   ) ss.
COUNTY OF          )

On this 10th day of November, 1972, before me Ruth D. Rimbach a Notary Public in and for the County of Contra Costa, residing therein, duly commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me to be the persons described in and whose names are subscribed to the within instrument, Indemnity Agreement, and they acknowledged to me that they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the day and year in this certificate first above written.



RUTH D. RIMBACH
NOTARY PUBLIC - CALIFORNIA
COUNTY OF CONTRA COSTA
My Commission Expires Jan. 7, 1976

_Ruth D. Rimbach_
Notary Public in and for said County of
_____, State of
California.

STATE OF CALIFORNIA)
                   ) ss.
COUNTY OF          )

On this 10th day of November, 1972, before me, WELTON R. CAMPBELL a Notary Public in and for the County of Contra Costa, residing therein, duly commissioned and sworn, personally appeared Harleel G Gelderman known to me to be the President of the corporation that executed the within instrument and the officers who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the day and year in this certificate first above written.

OFFICIAL SEAL
WELTON R. CAMPBELL
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
CONTRA COSTA COUNTY
My Commission Expires June 15, 1979

_Welton R. Campbell_
Notary Public in and for said County of
Contra Costa, State of
California.

*RH Round Hill Country Club*

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507

June 13, 2007

Re: Practice Facility

Dear Mr. Barker:

Thank you for taking the time to meet with David Plotnik and myself last week, to discuss your concerns about the Practice Facility. During that meeting, you shared with us numerous assertions of range balls entering your property and the club taking no action to resolve the problem.

We listened to your concerns as well as your demands for compensation to offset the years of harassment you assert you have been subjected to while living at the end of the driving range.

We suggested a potential solution would be to allow Round Hill Country Club to increase the height of the fence that currently exists. You declined this offer as a reasonable resolution.

The Club has taken many steps over the years to manage the use of the practice facility including but not limited to regularly posting of signs and instructions to the membership and guests that use the facility. The Club feels that it has taken reasonable measures to mitigate the use of the range.

The fact is that you purchased your property with an indemnity agreement and fence easement accepting the right of Round Hill Country Club Members and guests to use this property as a practice facility and with acknowledgement that golf balls from the course and driving range are driven in the direction of your lot!

Round Hill Country Club is doing its part to minimize your asserted inconvenience and is willing to do more in the suggestion to raise the fence to further protect your property, but you do not acknowledge our efforts or consider our recommendation to mitigate your concerns. Unless you would like to change your position on the matter, we really have nothing further to discuss.

Sincerely,

Greg Gonsalves, CCM
General Manager

Cc:     Carole Carluccio, President
        Round Hill Country Club
        Round Hill Country Club Board of Directors

*3169 Round Hill Road ● Alamo, California 94507 ● (925) 934-8211*

*Note - Delivered 4 - wrong*
*address - Jean Tote hand*
*delivered letter on June 19,*
*to us. Her address is 2394* *KB*

**MILLER STARR**
**REGALIA**

1331 N. California Blvd.    T 925 935 9400
Fifth Floor                F 925 933 4126
Walnut Creek, CA 94596.    www.msrlegal.com

Marvin B. Starr

June 19, 2007

Mr. Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507

Re:  Round Hill Country Club Practice Range Management and Operation

Dear Mr. Barker:

Please be advised that the Board of Directors of Round Hill Country Club has
concluded that it will no longer pursue its futile attempt to find a mutually agreeable
resolution to whatever problem may exist with respect to the prevention of practice
range balls from landing on your property.

As such, from here on Round Hill Country Club will, on its own, take such
preventative steps as it deems advisable and in its own best interests in the matter.

In the possibility that you have not yet seen or read the Easement recorded against
your property on June 8, 1973, I have enclosed a copy of the document for your
reference.  You may be assured that what Round Hill Country Club elects to do with
respect to the "golf ball problem" will be done in full compliance with the rights
granted to it by the Easement.

If you have any questions regarding any of the above, please feel free to contact me
about them.

Very truly yours,                (se)

*Marvin B Starr*

Marvin B. Starr

MBS:vse
cc   Greg Gonsalves, General Manager, Round Hill Country Club
     Carole Carluccio, President, Round Hill Country Club

## DECLARATION BY KENNETH BARKER

1 ) I, KENNETH BARKER, declare: I am one of the plaintiffs in the lawsuit Kenneth Barker and Lois Anne Barker, v. Round Hill Country Club.

2 ) On November 28, 2007, without my knowledge of consent, defendant invaded my premises at 2349 Royal Oaks Drive, Alamo CA. 94507, for the purpose of installing an illegal 45 feet high x 220 feet long fence adjacent to the easement boundary.

3 ) Defendant parked it's work vehicle in the driveway, and then the work crew proceeded into our back garden area to install one of the 45 feet high fence posts.

4 ) Defendant's fence construction was performed in gross violation of the County Ordinance Code and without the required County permits.

5 ) On November 28, 2007, I phoned the Sheriff's Department and complained to Round Hill Deputy Thomas about defendant's illegal invasion of my premises.

6 ) The undersigned also telephoned the County Building Inspection Enforcement Department ( Mr. Conrad Cram ) to complain about the illegal partially constructed fence, which was later removed by defendant.

7 ) On November 28, 2007, I also attempted to contact Mr. Greg Gonsalves ( defendant's General Manager ) by phone to complain about the illegal invasion of my premises. Mr Gonsalves was either unavailable, or would not take my phone call.

8 ) I declare under penalty of perjury of the laws of the State of California, that the foregoing is true and correct.

Dated: 1/08/08

_Kenneth Barker_

Kenneth Barker.

# DECLARATION OF LOIS ANNE BARKER

1 ) I, LOIS ANNE BARKER, declare: I am one of the plaintiffs in the lawsuit Kenneth

Barker and Lois Anne Barker v. Round Hill Country Club.

2 ) On November 28, 2007, I noticed a Round Hill Country Club work vehicle parked in

the drive way of our house. I subsequently discovered Round Hill Country Club

employees, without my knowledge or consent, had invaded our back garden to

erect a 45 foot long fence pole adjacent to the easement.

3 ) I asked a Round Hill worker what he was doing on our premises. He told me that he

was erecting a 45 high fence, and to call the Round Hill Country Club management if I

had any questions. I told him he had no right to be on our property and told him to leave.

He did so, and removed the work vehicle from our driveway.

4 ) About an hour later, I saw the same man working in our back garden with ropes trying

to hoist a 45 long fence pole into place. Without my permission or consent, he had again

invaded our premises gaining entry to our premises from the driving range.

5 ) I subsequently notified my husband of the illegal trespass onto our premises. He called

the Golf Club to complain, and he also reported it to the Sheriff, and the County Building

Department.

6 ) I later learned that Round Hill was in violation of the County Ordinance Code, and also

did not have the necessary County permits to build the fence.

7 ) I declare under penalty of the laws of the state of California that the foregoing is true

and correct.

Dated : 01/08/08

Lois A. Barker

Lois Anne Barker.

EXHIBIT "4"



**Actions**

Home    Complaints/Parties    Actions    Pending Hearings    Case Report    Images

Open Quick Search

## Case CIVMSC08-00059 - BARKER VS. ROUND HILL COUNTRY CLUB

Move To This Date

| Viewed | Date | Action Text | Disposition | Image |
|--------|------|-------------|-------------|-------|
| | 06/30/2008 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR COMPEL PRODUCTION OF DISCOVERY DOCUMENTS FILED BY KENNETH BARKER | VACATED | |
| | 06/16/2008 8:30 AM DEPT. 07 | HEARING ON OSC RE: CONSOLIDATE CASES; APPOINT SPECIAL MASTER/REFEREE BY COURT | COMPLETED | |
| | 06/10/2008 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR COMPEL PRODUCTION OF DISCOVERY DOCUMENTS FILED BY KENNETH BARKER | NOT HEARD/CONT | |
| | 06/03/2008 | PROOF OF SERVICE BY MAIL FILED RE: ANSWER TO DEFS RESPONSE TO PLTFS SEP STMNTS; P&A; DECS, SVD ON LEE ARCHER ON 06/02/08 | Not Applicable | N/A |
| | 06/03/2008 | PROOF OF SERVICE BY MAIL FILED RE: DEC OF KENNETH BARKER, SVD ON LEE ARCHER ON 06/02/08 | Not Applicable | N/A |
| | 06/02/2008 | DECLARATION OF KENNETH BARKER FILED RE: IN OPPOSITION TO JONAS DEC IN OPP TO PLNTFS MOTION TO COMPEL PRODUCT OF DOCS | Not Applicable | N/A |
| | 06/02/2008 | ANSWER TO DEFS RESPONSE TO PLNTFS SEPARATE STATEMENT OF ITEMS IN DISPUTE/PTS AND AUTH | Not Applicable | N/A |
| | 05/28/2008 | MEMORANDUM OF POINTS AND AUTHORITIES FILED BY ROUND HILL COUNTRYCLUB IN OPPO TO MOTION TO COMPEL PRODUCTION OF DOCS AND REQUEST FOR SANCTIONS | Not Applicable | N/A |
| | 05/28/2008 | DECLARATION OF WILLIAM S. FISKE FILED RE: IN OPPO TO MOTION TO COMPEL PRODUCTION OF DOCS AND SANCTIONS | Not Applicable | N/A |
| | 05/28/2008 | DECLARATION OF JULIET R. JONAS FILED RE: IN OPPO TO MTN TO COMPEL PROD OF DOCS AND SANCTIONS | Not Applicable | N/A |
| | 05/28/2008 | RESPONSE TO SEP STMNT OF ITEMS IN DISPUTE IN SUPP OF MTN TO COMPEL PROD OF DOCS AND REQ FOR SANCTIONS FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 05/27/2008 8:30 AM DEPT. 16 | CASE MANAGEMENT CONFERENCE | VACATED | |
| | 04/21/2008 | PROOF OF SERVICE BY MAIL FILED RE: NTC OF MTN; MTN TO COMPEL; MTN FOR SANCTIONS; DEC OF | Not Applicable | N/A |

| | | | | |
|---|---|---|---|---|
| | | KENNETH BARKER, SVD ON LEE ARCHER ON 4/18/0 8 | | |
| | 04/17/2008 | NOTICE OF/TO MOTION & MOTION TO COMPEL PRODUCTION OF DISCOVERY FILED ON BEHALF OF KENNETH BARKER | Not Applicable | N/A |
| | 04/17/2008 | SEPERATE STATEMENT OF ITEMS IN DISPUTE FILED BY KENNETH BARKER | Not Applicable | N/A |
| | 04/17/2008 | HEARING ON MOTION WAS SET FOR 6/10/08 AT 15:30 IN DEPT. 60 | | |
| | 04/17/2008 | MOTION TO/FOR COMPEL PRODUCTION OF DISCOVERY DOCUMENTS FILED BY KENNETH BARKER | | |
| | 03/24/2008 | RECVD CORRESPONDENCE FROM PLNTF KENNETH BARKER ADDRESSED TO MR. LEE ARCHER RE: FURTHER EXPLANATIO | Not Applicable | N/A |
| | 03/20/2008 | DEFAULT DEPARTMENT CHANGED TO 07 | | |
| | 03/20/2008 | HEARING ON OSC WAS SET FOR 6/16/08 AT 8:30 IN DEPT. 07 | | |
| | 03/20/2008 | ORDER TO SHOW CAUSE FILED | Not Applicable | N/A |
| | 03/20/2008 | CLERK'S CERTIFICATE OF MAILING OF ORDER TO SHOW CAUSE FILED 3/20/08 SENT TO ALL PARTIES | Not Applicable | |
| | 03/20/2008 | UPDATED CASE TO CHANGE / ADD OF PARTY KENNETH BARKER | Not Applicable | |
| | 03/13/2008 7:00 AM DEPT. 16 | CHECK FOR PROOF OF SERVICE | VACATED | |
| | 03/03/2008 7:00 AM DEPT. 16 | CHECK FOR REQUEST FOR ENTRY OF DEFAULT | VACATED | |
| | 02/11/2008 | OPPOSITION TO NTC OF RELATED CASES & ANS TO RELATED CASES FILED BY KENNETH BARKER. | Not Applicable | N/A |
| | 02/06/2008 | NOTICE OF/TO RELATED CASES FILED ON BEHALF OF ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 02/04/2008 | (U.J.) ANSWER TO COMPLAINT OF KENNETH BARKER FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 01/25/2008 | REQ FOR PRODUCTION OF DOCUMENTS AND OTHER ITEMS, SET NO 1 | Not Applicable | N/A |
| | 01/15/2008 | CLERK'S TICKLER TO CHECK FOR REQUEST FOR ENTRY OF DEFAULT WAS SET FOR 3/03/08 AT 7:00 IN DEPT. 16 | | |
| | 01/15/2008 | PROOF OF SUBSTITUTED SERVICE OF COMPLAINT OF KENNETH BARKER AS TO ROUND HILL COUNTRYCLUB WITH DECLARATION OF DILIGENCE AND DECLARATION OF MAILING ON 01/09/08 FILED | Not Applicable | |
| | 01/08/2008 | CLERK'S TICKLER TO CHECK FOR PROOF OF SERVICE WAS SET FOR 3/13/08 AT 7:00 IN DEPT. 16 | | |
| | 01/08/2008 | CASE MANAGEMENT CONFERENCE WAS SET FOR 5/27/08 AT 8:30 IN DEPT. 16 | | |
| | 01/08/2008 | COLOR OF FILE IS PINK | Not Applicable | |
| | 01/08/2008 | ORIGINAL SUMMONS ON COMPLAINT OF KENNETH BARKER FILED | Not Applicable | N/A |
| | 01/08/2008 | CASE ENTRY COMPLETE | Not Applicable | |

| | 01/08/2008 | CASE HAS BEEN ASSIGNED TO DEPT. 16 | | |
|---|---|---|---|---|
| | 01/08/2008 | COMPLAINT FILED. SUMMONS IS ISSUED | Not Applicable | N/A |

# EXHIBIT "5"

FILED

JUN 10 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1    Kenneth Barker and Lois Anne Barker,
2    2349 Royal Oaks Drive,
     Alamo. CA.94507.
3    Phone ( 925 ) 820- 0198  E-filing
4    Fax.  ( 925 ) 820- 0198

5    Plaintiffs In Pro Se.

6                        UNITED STATES DISTRICT COURT

7                        NORTHERN DISTRICT OF CALIFORNIA

8

9    KENNETH BARKER,                    )   C08-02898
10        and                           )                        CW
     LOIS ANNE BARKER                   )
11                                      )                        ADR
                                        )
12                        Plaintiffs,   )   COMPLAINT FOR VIOLATIONS OF
                                        )   THE RACKETEER INFLUENCED AND
13   vs.                                )   CORRUPT ORGANIZATIONS ACT
                                        )   (18USCS 1961-1968).
14   DEFAULT RESOLUTION NETWORK;        )
15   FIDELITY NATIONAL TITLE;           )
     MORTGAGE ELECTRONICREGISTRATION    )
16   SYSTEMS, INC; ALBORG,VEILUVA & EPSTIEN; )
     TITLE COURT SERVICES INC; GENPACT  )   DEMAND FOR JURY TRIAL
17    MORTGAGE SERVICES; DOES 1 through 50, )
18   inclusive.                         )
                                        )
19                        Defendants.   )
                                        )
20

21

22                                1.

23                            COMPLAINT

24   Plaintiffs, Kenneth and Lois Anne Barker, allege:

25   1 ) **Jurisdiction.** This court has jurisdiction over this complaint because it arises under the

26   laws of the United States.

27

2 ) **Venue.** Venue is appropriate in either Oakland of San Francisco, because defendants do

business in Contra Contra County and San Francisco County, and the complained of acts,

events, and omissions, occurred in Contra Costa County.

3 ) **Intradistrict Assignment.** This lawsuit could be assigned to either the Oakland

Division, or San Francisco Division, of this court, because a substantial part of the

acts, events, or omissions, which gave rise to this lawsuit occurred in Contra Costa

County, and the Property in dispute is located in Contra Costa County.

4 ) Plaintiffs Kenneth Barker and Lois Anne Barker ( hereinafter plaintiffs ) are joint

owners of the Property in dispute, which is located at 2349 Royal Oaks Drive, Alamo,CA,

94507.( hereinafter, sometimes " Property") This Property is a central issue in this lawsuit.

5 ) On the basis of the information and allegations in this lawsuit, plaintiffs bring this

action against the above named defendants to obtain Injunctive Relief and/or a Writ of

Mandate order, or another appropriate order by the Court, to cancel, dismiss, and throw

out, an electronically filed non judicial " Notice Of Default And Election To Sell Under

Deed Of Trust " with Trustee Sale N.08-00031 -12 for the Property located at: 2349 Royal

Oaks Drive, Alamo, CA.94507.

6 ) The Notice Of Default was recorded on May 1, 2008. The Notice of Default ( herein

after, sometimes " Notice." ) was electronically recorded by defendant via Instrument No.

20088146777 in the Official Records of Contra Costa County, California. It was served on

plaintiffs on May 8, 2008 by personal service,( **Exhibit No. 1**) and served a second time

by U.S. Certified Mail dated May 29, 2008. ( **Exhibit No. 2** )

2

7 )Plaintiffs do not know the true name and capacities of defendants sued herein as DOES

1 through 50 inclusive, and plaintiffs sues these defendants by such fictitious names and

will amend this complaint to allege their true names and capacities when the same have

been ascertained.

8 ) Plaintiffs respectfully petition this Court to promptly issue the requested Injunctive

Relief, and/or Writ of Mandate order, or other appropriate order, because defendant via the

above noted " Notice of Default " has stated it will set a sale date of the Property after 3

months of the recordation date which was May 1, 2008.

9 ) As described below, plaintiff alleges defendants are associated in fact, acting jointly as

a racketeering enterprise, engaged in an illegal scheme via a pattern of fraud,

misrepresentation, and conspiracy, fraudulently using the U.S. Mails and interstate Wires

for their unlawful financial gain to damage plaintiff. Thereby, defendants repeatedly

violated the " The Racketeer Influenced and Corrupt Organizations Act ( 18 USCS 1961

-1981 ) " ( hereinafter, sometimes RICO ). Defendants organized themselves by an an

illegal scheme to function as a racketeering organization and a corrupt enterprise.

10 ) Plaintiffs seek triple damages, legal fees, and costs, all as allowed by " The Racketeer

Influenced and Corrupt Organizations Act ( 18 USCS 1961 -1968 ) ", and other remedies

allowed by law and/or as deemed appropriate by the court.

11 ) By personal service on May 8, 2008, and again by Certified U.S. Mail on May 29,

2008, defendant served plaintiffs with an electronically filed Foreclosure " Notice " using

the U.S. Mail and interstate Wires. Unlawfully, however, defendant, has no proof that it

owns a Note, Deed of Trust, or Mortgage on the Property. Using the U.S. Mails and

interstate Wires to file a Foreclosure " Notice " on plaintiffs Property, without the legal

right to do so constitutes an illegal scheme to commit fraud, conspiracy to commit fraud,

and fraud, in order to fraudulently seize plaintiffs Property for defendants illegal financial

gain and harm plaintiff. All are predicate acts resulting in civil RICO violations.

12 ) In order to engage in it's illegal scheme to function as a racketeering organization and

corrupt enterprise, defendant willfully ignored the " Real Party In Interest Rule ".

That law requires a must party prove it is the " Real Party In Interest " *before* it can

legally file a Foreclosure " Notice ". Defendant's willfully failed to do so. Plaintiff used

U.S. Mail and interstate Wires with the intent of damaging plaintiff for defendants illegal

financial gain. That is a predicate act which is civil RICO violation.

13 ) Defendants, knew, or should have known, that they lacked legal standing to file a

Notice of Default and sell plaintiffs property under a Deed of Trust. Defendants were

insiders, not outsiders who simply perform assigned services for a fee. Unquestionably,

defendant is engaged in a predatory " Foreclosure Mill " conspiracy, using U.S. Mail and

 interstate Wires with the intent and purpose of obtaining fraudulent illegal financial

gain,and thereby damaging plaintiff. That is a predicate act which is a civil RICO

violation.

14 ) Defendants agreed by, and between themselves, to engage in a conspiratorial  scheme

to fraudulently obtain money from plaintiff and Others. Defendants engaged in overt acts

 of  fraudulent foreclosures via mail fraud and interstate wire fraud, and all defendants

knew such overt acts would take place. Defendants were not simply pursuing their

business interests. Rather they had a conspiratorial motive to defraud plaintiff and were

4.

1
2  acting on behalf of the enterprise of which they were members. Defendants committed acts
3
   of fraud when they prepared and served the Foreclosure " Notice " which set forth the
4
5  alleged amounts involved as due and owing of $137818.75 and $750,000.00. These are all
6  predicate acts which are civil RICO violations.

7  15 ) Defendants, as persons, set up a organizational association in fact enterprise
8
   structure, consisting of a title company, an agent of the title company, a law firm, a
9
10 beneficiary, and agents for them. The resulting enterprise enabled defendants to function
11 as a racketeering organization and to engage in a pattern of racketeering activity. That is a
12 predicate act which is a civil RICO violation.

13 16 ) Plaintiff has suffered damages in an amount not yet ascertained, with interest on that
14 amount, based upon triple damages that are mandated by law for the RICO violations cited
15
16 above.

17
18                                    **11.**
19
                           **ARGUMENT AND LAW**
20 17 )   *SEDIMA S.P.R.L. v. IMREX COMPANY,INC., 473 US 479, 481 ( 1985).*

21 is considered the seminal law for civil *RICO*. That case holds  that the " Racketeer

22 Influenced And Corrupt Organizations Act ( 18 USCS 1961-1968 ) is to be read broadly,

23 not only because of Congress' expansive language and overall approach, but also because

24 of it's express admonition that the ACT is to be liberally construed to effectuate its

25 remedial purposes."Also, *Sedima* does not require racketeering activity distinct from that

26
27 occurring as a result of predicate acts themselves.

18 ) Defendants, in their predatory greed as an enterprise to harm plaintiff, set up a

sophisticated computerized electronic foreclosure filing system in a racketeering activity

to collect on an unlawful debt. Unquestionably, defendants knew their overt acts of

fraudulent foreclosures using U.S. Mails and interstate Wires were simply a part of their

over all enterprise and racketeering activity.

19 ) Furthermore,  "...injury *not* from the predicate acts themselves, but from the fact they

were performed as part of the conduct of an enterprise..." goes to the heart of civil RICO.

*American National Bank and Trust Company v. Harco Inc. 473 US 606 ( 1985 )*

19 ) In essence, defendants are attempting to illegally manipulate foreclosure law and the

courts by fraudulently using the U.S. Mails and Interstate Wires as an ally to illegally

deprive home owners of their homes.

20 ) Very recent decisions by the Federal Courts throughout the United States have not

only repeatedly dismissed and  tossed out, similar false Foreclosure " Notices "; the Courts

have also assessed very stiff sanctions  for those who mislead the Court.

21 ) U.S District Judge Christopher A. Boyko of the Northern District of Ohio on October

31, 2007, in a six ( 6 ) page opinion dismissed, and tossed out, 14 Deutsche Bank filed

foreclosures in a ruling based on lack of standing for not owning/holding the mortgage

loan at the time the foreclosures were filed. *Foreclosure Cases No.1: 07CV 2282 et al.*

22 ) Using exceptionally strong language, and three ( 3 ) foot notes, Judge Boyko

lambasted  Deutsche Bank and it's lawyers and agents, for attempting to improperly make

the Federal Court system a compliant ally to illegally deprive home owners of their homes.

**23 ) Most significantly, in this case, defendants are attempting to use similar illegality.**

**Their conduct constitutes text book examples of predicate acts and multiple civil**

**RICO violations.**

6.

24 ) Shortly after Judge Boyko's decision, Federal Judge Kathleen M. O' Malley in

Cleveland Ohio, also dismissed 32 foreclosure actions, because, these too, were filed

without proof that plaintiff owned the mortgages.

25 ) In November 2007, Federal Judge Thomas A. Rose, in Dayton, Ohio, also ruled that

26 0f 27 foreclosure notices in front of him had no proof that plaintiff's owned the

mortgages. Therefore, he dismissed them.

26 ) Defendants conduct their business as a predatory " Foreclosure Mill " enterprise by

filing foreclosure notices without owning the note, or mortgage. Enterprise members

collectively  participate in  filing thousands of fraudulent computer generated Foreclosure

" Notices " utilizing defective rough shod filing practices that trample a borrower's rights.

Defendants use the non judicial method of foreclosure, thus, seeking to hide deceitful

sharp practice. That is a predicate act and a civil RICO violation.

27 ) A recent similar case of deceit and foreclosure misrepresentation involved Well Fargo

Bank, it's agents and attorneys.( Jacalyn S. Nosek v. Ameriquest Mortgage Company, et al.

Chapter 13 -Case No. 02- 46025 JBR ).In that case on April 25, 2008, the Honorable

Judge Joel Rosenthal of the United States Bankruptcy Court, District of Massachusetts

imposed the following sanctions. ( **Exhibit No. 3** )

i ) Ameriquest Mortgage Company in the amount of $250,000.00.

ii ) Abitt & Charlton  ( a law firm ) in the amount of $25,000.00

iii ) Attorney Robert Charlton in the amount of $25,000.00.

iv ) Bachalter Nemer  Fields and Younger ( a law firm ) in the amount of $100,000.00.

v ) Wells Fargo Bank in the amount of $250,000.00.

7.

### 111.

## SUMMARY OF ARGUMENT

28 ) Defendants are persons who are organized into an enterprise associated in fact to function as a racketeering predatory foreclose mill organization. Using U.S. Mail and Interstate Wires, their conduct is a pattern of conspiracy, misrepresentation, and fraudulent foreclosure filings, resulting in multiple civil RICO violations.

29 ) Defendants, have unclean hands. Defendants seek to use the U.S Mails and Interstate Wires, and the court system, as allies for illegally seizing plaintiff's property.

30 ) Plaintiff has been injured by defendants for it's property by reason of the above noted violations or RICO.

31 ) The Honorable Federal Judge Christopher A. Boyko in his ruling throwing out fraudulent foreclosures, stated that the integrity of the Federal justice system is " priceless ", and not for sale. It is believed this Court will repeat Judge Boyko's ruling.

WHEREFORE, PLAINTIFFS PRAY FOR:

1 . Judgment against defendants for civil RICO violations.

2 . Preemptory Injunctive Relief, and/or a Writ of Mandate, or other order, be issued by this court to dismiss and throw out defendants Notice Of Default.

3 . Damages in an amount not yet ascertained with interest on that amount pursuant to the triple damages allowed by RICO.

4 . For such other and further relief as the court deems proper.

Dated: 06/10/08

Kenneth Barker, Plaintiff In Pro Se.

Plaintiff Demands A Trial By Jury.

8.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## LIST OF EXHIBITS.

**Exhibit No. 1.** Notice Of Default And Election To Sell Under Deed Of Trust.

**Exhibit No. 2** Notice Of Default And Election To Sell Under Deed Of Trust Sent By U.S. Mails.

**Exhibit No. 3**   Order For Sanctions Issued  by the Honorable Judge Joel B. Rosenthal, United States Bankruptcy Court District Of Massachusetts.



**Recording Requested By**
**and When Recorded Mail to:**

**Default Resolution Network**
**50 California Street**
**Suite 3550**
**San Francisco, CA  94111**

CERTIFIED COPY

Recorded May 1, 2008
Instrument Number 2008146777
Official Records
Contra Costa County, California

Fidelity National Title

Trustee Sale No: 08-00031-1
Loan No:  6CB050331004

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $137,818.75 as of April 20, 2008, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact :

EXHIBIT 1



**Alborg, Veiluva & Epstein**
c/o Default Resolution Network
50 California Street
Suite 3550
San Francisco, CA 94111
Phone: 415-981-5720  TS# 08-00031-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That default has been declared by the current beneficiary (the "Beneficiary") under that certain Deed of Trust dated as of March 23, 2005, executed by Kenneth Barker and Lois Anne Barker, his wife, as joint tenants, as trustor (the "Original Trustor"), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as beneficiary, recorded March 30, 2005 as Instrument Number 2005-0108000-00 in Book n/a at Page n/a of official records in the Office of the Recorder of Contra Costa County, California (the "Original Deed of Trust"), and that

The Original Deed of Trust and any modifications thereto are collectively referred to herein from time to time as the "Deed of Trust", and that

The Deed of Trust encumbers certain property more particularly described therein (less any reconveyances therefrom, and with any additions thereto, the "Trust Property"), and that

The Deed of Trust secures the payment of and the performance of certain obligations, including but not limited to, the obligations set forth in that certain Promissory Note with a face amount of $750,000.00 (the "Original Note"), and that

The Original Note and any modifications thereto are collectively referred to herein from time to time as the "Note", and that

The Note and any other documents evidencing the obligations secured by the Deed of Trust, together with any modifications thereto, are collectively referred to herein from time to time as the "Secured Obligations", and that

The term "Trustor" as used herein shall mean either the Original Trustor or, if applicable, its successor in interest with respect to the Trust Property, and that

The term "Trustee" as used herein shall mean the original trustee under the Deed of Trust or, if applicable, its successors in interest, and that

A breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the Trustor has failed to perform obligations pursuant to or under the Secured Obligations and/or the Deed of Trust, specifically: failed to pay payments which became due; together with late charges due; failed to pay advances made by the Beneficiary; failed to pay attorneys' fees and expenses; failed to reimburse Beneficiary for payback of gain on loan sale; and that



The Trustor has failed, or shall hereafter fail, to pay all other and subsequent interest and/or principal together with late charges and/or default interest and/or any and all other obligations and indebtedness as may become due under the terms of or under the Secured Obligations and/or Deed of Trust and not performed and/or paid including, without limitation, reimbursement to the Beneficiary and/or the Trustee of any of the following fees, costs and expenses heretofore or hereafter incurred, suffered or paid by the Beneficiary and/or the Trustee in connection with the Secured Obligations and/or Deed of Trust, the Trustor or the Trust Property:

1. attorneys' fees and costs including, without limitation, those incurred in connection with foreclosure of the Deed of Trust, appointment of a receiver with respect to the Trust Property, litigation over the amount, validity, enforcement or priority of the Secured Obligations and/or Deed of Trust, or commencement of an action or proceeding for relief from any bankruptcy court or other judicial or administrative stay, order or injunction, and all other such matters;

2. real and/or personal property taxes, or payments under or with respect to prior or junior liens or encumbrances, insurance premiums and all other such matters;

3. protection, preservation, repairs, restoration or completion of the Trust Property, and all other such matters;

4. compliance with any applicable laws, regulations or orders, and all other such matters;

5. Trustee's fees, trustee's sale guarantee premiums, and other foreclosure costs, and all other such matters; and that

It is the intention of the Beneficiary to include herein all delinquent sums or obligations now or hereafter secured by and under the Deed of Trust, whether presently known or unknown, and whether or not specifically set forth herein, and that

By reason thereof, the present beneficiary under such Deed of Trust, has delivered to said Trustee a Declaration and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.

Date: April 30, 2008

Default Resolution Network
Agent for the Beneficiary
By: Title Court Services, Inc. its Agent

_____/S/_____

By:

EXHIBIT 2

**CERTIFIED MAIL**

RESOLUTION NETWORK
a division of Pitney Bowes Tax Company

50 California St, Ste 3550
San Francisco, CA 94111

7160 3901 9845 6380 3791



UNITED STATES POSTAGE
PITNEY BOWES
02 1A        $ 05.32⁰
0004612688   MAY 29 2008
MAILED FROM ZIP CODE 95765

Paul Barker
2349 Royal Oaks Drive

Alamo, CA 94507
1m 08-00631-1
94507+2222 C003

---



**CERTIFIED MAIL**

RESOLUTION NETWORK
a division of Pitney Bowes Tax Company

50 California St, Ste 3550
San Francisco, CA 94111

7160 3901 9845 6380 5276



UNITED STATES POSTAGE
PITNEY BOWES
02 1A        $ 05.32⁰
0004612688   MAY 29 2008
MAILED FROM ZIP CODE 95765

Ellen Barker
c/o Kenneth Barker
2349 Royal Oaks Drive
Alamo, CA 94507
1m 08-00631-1
94507+2222 C003

# United States Bankruptcy Court
## District of Massachusetts

In re:                              )
                                    )
JACALYN S. NOSEK,                   )      Chapter 13
                 DEBTOR.            )      Case No. 02-46025 -JBR
                                    )
_____ )
                                    )
JACALYN S. NOSEK,                   )      Adversary Proceeding
                 PLAINTIFF,         )      No. 04-4517 and
                                    )      No. 07-4109
v.                                  )
                                    )
AMERIQUEST MORTGAGE COMPANY,        )
et al.                              )
                 DEFENDANTS         )
                                    )

## MEMORANDUM OF DECISION REGARDING ORDER TO SHOW CAUSE

This matter came before the court for a hearing on the Court's Order to Show Cause why sanctions should not be imposed for apparent misrepresentations as to the status of Ameriquest Mortgage Company as the holder of the note and mortgage at issue in this case and adversary proceedings.

ACTS

## CONCLUSION

For the reasons set forth herein, sanctions will be imposed as set forth above on

- Ameriquest in the amount of $250,000;

- Ablitt & Charlton, P.C., formerly known as Ablitt & Caruolo, P.C., in the amount of $25,000;

- Attorney Robert Charlton in the amount of $25,000;

- Buchalter Nemer Fields & Younger in the amount of $100,000; and

- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Sanctions will not be imposed on

- Attorney Jennifer Haskell;

- Attorney William Amann;

- Attorney R. Bruce Allensworth; and Kirkpatrick & Lockhart Preston Gates Ellis.

A separate order will issue.

*Joel B. Rosenthal*

Dated: April 25, 2008

Joel B. Rosenthal
United States Bankruptcy Judge

**EXHIBIT 3**

EXHIBIT "6"



# Actions



**Home**      **Complaints/Parties**      **Actions**      **Pending Hearings**      **Case Report**      **Images**

[ Open Quick Search ]

## Case CIVMSN08-0822 - BARKER VS DEFAULT RESOLUTION NETWORK, ET AL

[ Move To This Date ]

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
| | 08/12/2008 9:00 AM DEPT. 09 | HEARING ON DEMURRER TO COMPLAINT OF KENNETH BARKER FILED BY MORTGAGE ELECTRONICREGISTRATION SYSTEMS, ALBORG, VEILUVA & EPSTIEN, GENPACT MORTGAGE SERVICES | | |
| | 08/05/2008 9:00 AM DEPT. 09 | HEARING ON DEMURRER TO COMPLAINT OF KENNETH BARKER FILED BY ALBORG, VEILUVA & EPSTIEN | | |
| | 07/08/2008 | PROOF OF SERVICE BY OVERNIGHT DELIVERY OF NTC, MPA, DEMURRER ON K BARKER FILED; SERVED ON 07/07/08 | Not Applicable | N/A |
| | 07/07/2008 | PROOF OF SERVICE BY MAIL FILED ON 1ST AMENDED COMPLAINT OF KENNETH BARKER AS TO DEFAULT RESOLUTIONNETWORK, FIDELITY NATIONAL TITLE, MORTGAGE ELECTRONICREGISTRATION SYSTEMS, ALBORG, VEILUVA & EPSTIEN, TITLE COURT SERVICES, INC., GENPACT MORTGAGE SERVICES, MICHAEL J VEILUVA, DARRELL MARTIN WITH MAILING DATE OF 07/07/08 | Not Applicable | N/A |
| | 07/07/2008 | NEW PARTY(IES) ADDED TO THIS COMPLAINT IS/ARE: MICHAEL J VEILUVA, DARRELL MARTIN | Not Applicable | |
| | 07/07/2008 | (U.J.) 1ST AMENDED COMPLAINT OF KENNETH BARKER FILED | Not Applicable | N/A |
| | 06/25/2008 | MEMORANDUM OF POINTS AND AUTHORITIES FILED BY MORTGAGE ELECTRONICREGISTRATION SYSTEMS, ALBORG, VEILUVA & EPSTIEN, GENPACT MORTGAGE SERVICES IN SUPPORT OF DEMURRER TO PLAINTIFFS UNVERIFIED COMPLAINT | Not Applicable | N/A |
| | 06/25/2008 | NOTICE OF/TO DEMURRER FILED ON BEHALF OF MORTGAGE ELECTRONICREGISTRATION SYSTEMS, ALBORG, VEILUVA & EPSTIEN, GENPACT MORTGAGE SERVICES | Not Applicable | N/A |
| | 06/25/2008 | HEARING ON DEMURRER WAS SET FOR 8/12/08 AT 9:00 IN DEPT. 09 | | |
| | 06/25/2008 | DEMURRER TO COMPLAINT OF KENNETH BARKER FILED BY MORTGAGE ELECTRONICREGISTRATION SYSTEMS, ALBORG, VEILUVA & EPSTIEN, GENPACT MORTGAGE SERVICES | Not Applicable | N/A |
| | 06/24/2008 | (U.J.) ANSWER TO COMPLAINT OF KENNETH BARKER FILED BY TITLE COURT SERVICES, INC. | Not Applicable | N/A |
| | | PROOF OF SERVICE BY OVERNIGHT DELIVERY OF NTC OF | Not |  |

| | | | | |
|---|---|---|---|---|
| | 06/18/2008 | HRNG OF DEMURRER, MPA ON KENNETH BARKER FILED; SERVED ON 06/17/08 | Applicable | N/A |
| | 06/17/2008 | MEMORANDUM OF POINTS AND AUTHORITIES FILED BY ALBORG, VEILUVA & EPSTIEN IN SUPPORT OF DEMURRER TO PLAINTIFFS UNVERIFIED COMPLAINT | Not Applicable | N/A |
| | 06/17/2008 | NOTICE OF/TO HRG OF DEF ALBORG, VEILUVA & EPSTEINS DEMURRER FILED ON BEHALF OF ALBORG, VEILUVA & EPSTIEN | Not Applicable | N/A |
| | 06/17/2008 | HEARING ON DEMURRER WAS SET FOR 8/05/08 AT 9:00 IN DEPT. 09 | | |
| | 06/17/2008 | DEMURRER TO COMPLAINT OF KENNETH BARKER FILED BY ALBORG, VEILUVA & EPSTIEN | Not Applicable | N/A |
| | 05/28/2008 | PROOF OF SUBSTITUTED SERVICE OF COMPLAINT OF KENNETH BARKER RE: BUSINESS FIDELITY NATIONAL TITLE W/MAILING ON 05/15/08 FILED | Not Applicable | N/A |
| | 05/28/2008 | PROOF OF SUBSTITUTED SERVICE OF COMPLAINT OF KENNETH BARKER RE: BUSINESS DEFAULT RESOLUTIONNETWORK W/MAILING ON 05/15/08 FILED | Not Applicable | N/A |
| | 05/21/2008 | PROOF OF SUBSTITUTED SERVICE OF COMPLAINT OF KENNETH BARKER RE: BUSINESS ALBORG, VEILUVA & EPSTIEN W/MAILING ON 05/15/08 FILED | Not Applicable | N/A |
| | 05/15/2008 | COLOR OF FILE IS GOLDENROD | Not Applicable | |
| | 05/15/2008 | ORIGINAL SUMMONS ON COMPLAINT OF KENNETH BARKER FILED | Not Applicable | N/A |
| | 05/15/2008 | CASE ENTRY COMPLETE | Not Applicable | |
| | 05/15/2008 | COMPLAINT FILED. SUMMONS IS ISSUED | Not Applicable | N/A |

EXHIBIT "7"



# Actions



**Home**    **Complaints/Parties**    **Actions**    **Pending Hearings**    **Case Report**    **Images**

Open Quick Search

## Case CIVMSC07-01429 - BARKER VS. ROUND HILL COUNTRY CLUB

Move To This Date

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
| | 08/18/2008 8:30 AM DEPT. 07 | FURTHER CASE MANAGEMENT CONFERENCE | | |
| | 06/30/2008 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR COMPEL PRODUCTION OF DISC DOCS FILED BY KENNETH BARKER | COMPLETED | |
| | 06/26/2008 8:30 AM DEPT. 07 | HEARING ON MOTION FOR SUMMARY JUDGMENT FILED BY KENNETH BARKER | DENIED | |
| | 06/18/2008 | ORDER APPOINTING WILLIAM K. HOUSTON JR AS DISCOVERY REFEREE SENT TO ROOM 103 FOR FILING | Not Applicable | N/A |
| | 06/16/2008 8:30 AM DEPT. 07 | HEARING ON OSC RE: CONSOLIDATE CASE; APPOINT SPECIAL MASTER/REFEREE BY COURT | COMPLETED | |
| | 06/16/2008 | PLNTFFS ANSWER TO DEFS OPPOSITION TO PLNTFFS MOTION FOR SUMMARY JUDGMENT | Not Applicable | N/A |
| | 06/12/2008 | DEFS NON-CALIFORNIA AUTHORITY LODGED IN SUPP OF DEFS OPPO TO PLTFS MOTION FOR SUMM JUDGMENT | Not Applicable | N/A |
| | 06/12/2008 | OBJECTION TO PLTFS EVIDENCE IN SUPP OF MTN FOR SUMM JUDGMENT FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 06/12/2008 | RESPONSE TO AND OPPO TO PLTFS SEPARATE STMNT OF UNDISPUTED FACTS IN SUPP OF MTN FOR SUMMARY JUDGMENT FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 06/12/2008 | OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT FILED BY ROUND HILL COUNTRY CLUB. | Not Applicable | N/A |
| | 06/12/2008 | STATE OF CALIFORNIAS RESPONSE TO ORDER TO SHOW CAUSE | Not Applicable | N/A |
| | 06/05/2008 3:30 PM DEPT. 60 | HEARING ON MOTION TO/FOR COMPEL PRODUCTION OF DISC DOCS FILED BY KENNETH BARKER | COMPLETED | |
| | 06/02/2008 9:05 AM DEPT. 16 | JURY TRIAL - LONG CAUSE/ 10 DAY(S) | VACATED | |
| | 05/28/2008 | ANSWER TO DEFS RESPONSE TO PLAINTIFFS SEPARATE STATEMENT | Not Applicable | N/A |
| | 05/22/2008 | DECLARATION OF JULIET R. JONAS FILED RE: IN OPPO TO MTN TO COMPEL PROD OF DOCUMENTS AND SAN CTIONS | Not Applicable | N/A |
| | 05/22/2008 | DECLARATION OF WILLIAM S. FISKE FILED RE: IN OPPO TO MTN TO COMPEL PROD OF DOCUMENTS & SANCT | Not | N/A |

| | | IONS | Applicable | |
|---|---|---|---|---|
| | 05/22/2008 | RESPONSE TO SEPARATE STATEMENT OF ITEMS IN DISPUTE/MTN TO COMP EL PROD OF DOCUMENTS & REQST FOR SANCTIONS FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 05/22/2008 | POINTS AND AUTHORITIES IN OPPOSITION TO MTN TO COMPEL PROD OF DOCUMENTS & REQST SANCTIONS FILED BY ROUND HILL COUNTRY CLUB | Not Applicable | N/A |
| | 05/20/2008 9:05 AM DEPT. 16 | ISSUE CONFERENCE | VACATED | |
| | 04/17/2008 | PROOF OF SERVICE BY MAIL FILED RE: NTC OF MTN/MTN TO COMPEL; MTN FOR SANC; DEC SVD ON LEE ARCHER ON 4/15/08 | Not Applicable | N/A |
| | 04/14/2008 | SEPERATE STATEMENT OF ITEMS IN DISPUTE FILED | Not Applicable | N/A |
| | 04/14/2008 | HEARING ON MOTION WAS SET FOR 6/05/08 AT 15:30 IN DEPT. 60 | | |
| | 04/14/2008 | MOTION TO/FOR COMPEL PRODUCTION OF DISCOVERY DOCS FILED BY KENNETH BARKER | | |
| | 04/01/2008 | STATEMENT OF UNDISPUTED | Not Applicable | N/A |
| | 04/01/2008 | HEARING ON MOTION FOR SUMMARY JUDGMENT WAS SET FOR 6/26/08 AT 8:30 IN DEPT. 07 | | |
| | 04/01/2008 | MOTION FOR SUMMARY JUDGMENT FILED BY KENNETH BARKER | | N/A |
| | 03/20/2008 | HEARING ON OSC WAS SET FOR 6/16/08 AT 8:30 IN DEPT. 07 | | |
| | 03/20/2008 | DEFAULT DEPARTMENT CHANGED TO 07 | | |
| | 03/20/2008 | ORDER TO SHOW CAUSE FILED | Not Applicable | N/A |
| | 03/20/2008 | CLERK'S CERTIFICATE OF MAILING OF ORDER TO SHOW CAUSE FILED 3/20/08 SENT TO ALL PARTIES | Not Applicable | |
| | 03/17/2008 | ORDER ADOPTING TENTATIVE RULING DENYING PLAINTIFFS MOTION FOR DEFAULT JUDGMENT FILED | Not Applicable | N/A |
| | 03/07/2008 8:30 AM DEPT. 16 | HEARING ON MOTION TO/FOR DEFAULT JUDGMENT FILED BY KENNETH BARKER | DENIED | |
| | 03/03/2008 | CORRECTION OF TYPOGRAPHICAL ERROR FILED BY: KENNETH BARKER | Not Applicable | N/A |
| | 02/27/2008 | RESPONSE TO DEFTS OPPOSITION TO PLTFS MTN FOR A DEFAULT JUDGMENT FILED BY KENNETH BARKER | Not Applicable | N/A |
| | 02/25/2008 | DEFTS OPPOS TO PLTF MOT FOR DEFAULT JUDGMENT | Not Applicable | N/A |
| | 02/11/2008 | OPPOSITION TO NTC OF RELATED CASES AND ANS TO RELATED CASES FILED BY KENNETH BARKER. | Not Applicable | N/A |
| | 01/24/2008 | REQ TO ROUND HILL COUNTRY CLUB FOR PRODUCTION OF DOCUMENTS | Not Applicable | N/A |
| | 01/23/2008 | HEARING ON MOTION WAS SET FOR 3/07/08 AT 8:30 IN DEPT. 16 | | |
| | 01/23/2008 | MOTION TO/FOR DEFAULT JUDGMENT FILED BY KENNETH BARKER | | |
| | | | | |

| | 01/18/2008 | COPIES | Not Applicable | |
| | 01/02/2008 | PRF OF PERSONAL SERVICE ON ROUND HILL COUNTRY CLUB LAWSUIT, FOR VIOLATION OF THE CALIF FALSE CLAIMS | Not Applicable | N/A |
| | 12/19/2007 8:30 AM DEPT. 16 | CASE MANAGEMENT CONFERENCE | COMPLETED | |
| | 12/17/2007 | CASE MANAGEMENT CONFERENCE STATEMENT FILED BY KENNETH BARKER | Not Applicable | N/A |
| | 12/14/2007 8:30 AM DEPT. 16 | HEARING ON MOTION TO/FOR DEFAULT JUDGMENT FILED BY KENNETH BARKER | DENIED | |
| | 12/12/2007 | PROOF OF SERVICE BY MAIL FILED RE: ANSWER TO OPPOSITION TO MTN FOR A DEFAULT JUDGMENT TO: LEE ARCHER ON: 12/10/07 | Not Applicable | N/A |
| | 12/11/2007 | ANSWER TO DEFENDANTS OPPOSITION TO PLAINTIFFS MTN FOR A DEFAULT JUDGMENT FILED | Not Applicable | N/A |
| | 12/03/2007 | OPPOSITION TO MOTION TO/FOR A DEFAULT JUDGMENT FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |
| | 12/03/2007 | DECLARATION OF PROBAL G. YOUNG FILED RE: IN SUPPORT OF OPPO TO MTN FOR A DEFAULT JUDGMENT | Not Applicable | N/A |
| | 11/15/2007 7:00 AM DEPT. 16 | CHECK FOR REQUEST FOR ENTRY OF DEFAULT | VACATED | |
| | 11/14/2007 | (U.J.) ANSWER TO COMPLAINT OF KENNETH BARKER FILED BY ROUND HILL COUNTRYCLUB | Not Applicable | N/A |

Next 50



Home    **Complaints/Parties**    **Actions**    **Pending Hearings**    **Case Report**    **Images**

Open Quick Search

## Case CIVMSC07-01429 - BARKER VS. ROUND HILL COUNTRY CLUB

Move To This Date

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
| | 11/09/2007 | PROOF OF SERVICE BY CERTIFIED MAIL OF NTC/MTN TO CORRECT & MTN FOR DEFAULT JUDGEMENT ON LEE ARCHER FILED; SERVED ON 11/08/07 | Not Applicable | N/A |
| | 11/08/2007 | HEARING ON MOTION WAS SET FOR 12/14/07 AT 8:30 IN DEPT. 16 | | |
| | 11/08/2007 | MOTION TO/FOR DEFAULT JUDGMENT FILED BY KENNETH BARKER | | |
| | 10/29/2007 8:30 AM DEPT. 16 | CASE MANAGEMENT CONFERENCE | COMPLETED | |
| | 10/01/2007 | CLERK'S TICKLER TO CHECK FOR REQUEST FOR ENTRY OF DEFAULT WAS SET FOR 11/15/07 AT 7:00 IN DEPT. 16 | | |
| | 10/01/2007 | PROOF OF PERSONAL SERVICE FILED ON COMPLAINT OF KENNETH BARKER AS TO ROUND HILL COUNTRYCLUB WITH SERVICE DATE OF 10/01/07 | Not Applicable | N/A |
| | 10/01/2007 | SUMMONS ISSUED ON THE COMPLAINT OF KENNETH BARKER | Not Applicable | |
| | 10/01/2007 | ORIGINAL SUMMONS ON COMPLAINT OF KENNETH BARKER FILED | Not Applicable | N/A |
| | 09/25/2007 | CLERK'S CERTIFICATE OF MAILING OF NOTICE OF CASE MANAGEMENT CONFERENCE SENT TO ALL PARTIES | Not Applicable | |
| | 09/25/2007 | CASE MANAGEMENT CONFERENCE WAS SET FOR 10/29/07 AT 8:30 IN DEPT. 16 | | |
| | 09/06/2007 | ORDER RE ELECTION TO DECLINE TO INTERVENE AND UNSEALING OF FILE CRC RULE 2.573(D) FILED | Not Applicable | N/A |
| | 09/06/2007 | NOTICE OF/TO ELECTION TO DECLINE TO INTERVENE FILED ON BEHALF OF THE STATE OF CALIFORNIA | Not Applicable | N/A |
| | 09/06/2007 | THE STATE OF CALIFORNIA IS EXEMPT FROM FILING FEES. | Not Applicable | |
| | 09/06/2007 | APPLICATION/DECLARATION TO/FOR ORDER RE ELECTION NOT TO INTERVENE AND UNSEALING FILED BY THE STATE OF CALIFORNIA | Not Applicable | N/A |
| | 09/06/2007 | THE STATE OF CALIFORNIA ADDED AS A PARTY | Not Applicable | |
| | 09/04/2007 | ON THE COMPLAINT OF KENNETH BARKER, THE STATE OF CALIFORNIA IS REMOVED AS A PLAINTIFF. | Not Applicable | |

| | 09/04/2007 7:00 AM DEPT. 16 | CHECK FOR ATTORNEY GENERAL TO RESPOND | VACATED | |
| --- | --- | --- | --- | --- |
| | 07/05/2007 | PLACED ON CLERK`S CALENDAR FOR 9/04/07 AT 7:00 IN DEPT. 16 | | |
| | 07/05/2007 | COLOR OF FILE IS GRAY | Not Applicable | |
| | 07/05/2007 | CASE ENTRY COMPLETE | Not Applicable | |
| | 07/05/2007 | CASE HAS BEEN ASSIGNED TO DEPT. 16 | | |
| | 07/05/2007 | COMPLAINT FILED. SUMMONS IS NOT ISSUED | Not Applicable | N/A |

Previous 50

# EXHIBIT "8"

[06/19/2007 13:23 [TX/RX NO 5630]

FROM : CB RICHARD ELLIS                FAX NO. : 925 251 4688             Nov. 02 2001 02:38PM  P6

55096

JUN -8 1973

RECORDED AT REQUEST OF
WESTERN TITLE QUARANTY COMPANY
CONTRA COSTA COUNTY DIVISION
JUN -8 1973

After Recording Return To:
Jim Bryson
Vice President
Round Hill Estates
3183 Round Hill Road
Alamo, California

AT 9:28 O'CLOCK A M.
CONTRA COSTA COUNTY RECORDS
W. T. PAASCH
COUNTY RECORDS

EASEMENT  FEE $ 7⁰⁰                        308000-6

JIMMIE R. LYNN and CAROLE J. LYNN, his wife, herein-

after called First Parties, in consideration of value paid by ROUND HILL

ESTATES, a California corporation, hereinafter called Second Party, the

receipt whereof is hereby acknowledged, hereby grants to Second Party those

perpetual and exclusive easements and rights of way to construct, operate,

maintain, repair, reconstruct, replace and remove at any time, and from

time to time, providing however if said fence is down or lowered in any way

from its present elevation the party of the Second Part will cause the driving range

to be closed for the period of time the protection of said fence is affected, a wire

metal screen or fence, consisting of one or more lines of poles and/or other struc-

tures covered by a wire screen for the purpose of preventing golf balls from the

golf course and driving range from trespassing or causing damage to the property

of First Parties or causing damage to any person or persons, or invitees of the

First Parties while on First Parties' premises, and all necessary and proper founda-

tions, footings and fixtures for use in connection with said screen and fence and/or

other structure, together with a right of way on, along and in all of the hereinafter

described strip of those certain lands which are situated in the County of Contra

Costa, State of California and described as follows: -

   A portion of Lot 3 as designated on the Map of
   Tract #2794 Round Hill Country Club area.

The aforesaid strip is described as follows:-

   Following described real property in the subdivision
   2794 situated in the County of Contra Costa, State
   of California:

   Beginning at the northerly common corner of lots 3 and
   4 of subdivision 2794 as recorded in the office of the
   County Recorder of Contra Costa County in Map Book 87
   at Page 32A; thence from said corner and along the
   exterior boundary of said lot 3 and said subdivision

RH0137

BOOK 6965 PAGE 23

2794 the following two courses; North 46° 24' 52" East 6.00 feet; South 89° 44' 05" East 110.08 feet; thence leaving said boundary of lot 3, South 79° 41' 38" East 142.89 feet to a point on a 310.21 foot radius curve, being the northerly line of Royal Oaks Drive; thence from a tangent which bears South 58° 13' 44" West and along said curve, being the northerly line of Royal Oaks Drive, to the left through a central angle of 1° 51' 27" and arc length of 10.06 feet; thence leaving said line of Royal Oaks Drive North 81° 00' 00" West 76.83 feet, thence North 85° 18' 20" West 169.85 feet to a point on the southwest line of said lot 3; thence North 43° 35' 08" west along said southwest line 2.00 feet to the Point of Beginning.

Containing 0.06 Acres more or less.

Second Party shall have the right to maintain grass turf on said strip of land and to use the same as a part of the fairway and driving range of said golf course.

First Parties hereby grant to Second Party: -

(a) The right of ingress to and egress from said strip over and across said land by means of roads and lanes thereon, if such there be, otherwise by such route or routes as shall occasion the least practicable damage and inconvenience to First Parties;

(b) The right from time to time to trim and to cut down and clear away or otherwise destroy any and all trees and brush now or hereafter on said strip and to trim and to cut down and clear away any trees on either side of said strip which now or hereafter in the opinion of Second Party may be a hazard to said screen, fence, poles and/or other structures, wires or cables, by reason of the danger of falling thereon, or may interfere with the exercise of Second Party's rights hereunder.

(c) The right from time to time to enlarge, improve, reconstruct, relocate and replace any poles or structures constructed hereunder with any other number or type of poles or structures either in the original location or at any alternate location or locations within said strip;

06/19/2007 13:23 [TX/RX NO 5630]

FROM : CB RICHARD ELLIS          FAX NO. : 925 251 4688          Nov. 02 2001 02:39PM  P7

(d)   The right to mark the location of said strip by suitable markers set in the ground; provided that said markers shall be placed in such location which will not interfere with any reasonable use First Parties shall make of said strip.

(e)   First Parties further agree that nothing herein contained shall be held to change or modify the Indemnity Agreement dated November 10, 1972 between JIMMIE R. LYNN and CAROLE J. LYNN, his wife, and ROUND HILL ESTATES, a California corporation, of record in the office of the County Recorder of the County of Contra Costa, State of California.

Second Party hereby covenants and agrees:-

(a)   Second Party shall not fence said strip;

(b)   Second Party shall promptly backfill any excavations made by it on said strip and repair any damage it shall do to First Parties' land.

(c)   Second Party shall indemnify First Parties against any loss and damage which shall be caused by the exercise of said ingress and egress or by any wrongful or negligent act or omission of Second Party or of its agents or employees in the course of their employment.

First Parties reserve the right to use said strip for purposes which will not interfere with Second Party's full enjoyment of the rights hereby granted; provided that First Parties shall not:

(a)   Erect or construct any building or other structure, or drill or operate any well, or construct any other obstruction, or add to the ground level in said strip.

(b)   Deposit or permit or allow to be deposited, earth,

-3-

RH0139

FROM :          FAX NO. :          Jun. 19 2007 12:27PM  P6

RH0140

BOOK 6965 PAGE 25

rubbish, debris, or any other substance or material, whether combustible or noncombustible, on said strip, or so near thereto as to constitute, in the opinion of Second Party, a hazard to said fence or screen and/or structures, wires and poles.

(c) Grant any easement or easements on, under, or over said strip without the written consent of Second Party.

The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

IN WITNESS WHEREOF, First Parties have executed these presents this 1 day of ~~May~~ June, 1973.

JIMMIE R. LYNN

CAROLE J. LYNN,

FIRST PARTIES

STATE OF CALIFORNIA )
: SS
COUNTY OF CONTRA COSTA )

On this 1st day of ~~May~~ June, 1973, before me, Linda C. Johnson, a Notary Public in and for the County of Contra Costa, State of California, residing therein, duly commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me to be the persons described in and whose names are subscribed to the within instrument, EASEMENT, and they acknowledged to me that they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the day and year in this certificate first above written.

OFFICIAL SEAL
LINDA C. JOHNSON
NOTARY PUBLIC CALIFORNIA
CONTRA COSTA COUNTY
My Commission Expires Sept. 17, 1976

Notary Public in and for said County of Contra Costa, State of California.

-4-

06/19/2007 T 13:23 [TX/RX NO 5630]

FROM : CB RICHARD ELLIS FAX NO. : 925 251 4688 Nov. 02 2001 02:41PM P9

BOOK 6965 PAGE 26

Northerly Line Lot 3 Per Subd. 2794 Record
N46°24'52"E
6.00'
N89°44'05"W 110.08'
N79°41'38"W 142.89'
N80°00'00"W
76.83'
Portion Lot 3
N43°35'08"W
185.13'
R=310.22'
N44°24'52"E
106.07'
Royal Oaks Drive
Scale 1"=40'

WILLIAM J. BLACK AND ASSOCIATES
CONSULTING ENGINEERS

| | | |
|---|---|---|
| DRAWN PED | Fence Easement | DATE 5-8-73 |
| CHECKED Rivl | Lot 3, Subd. 2794 | DRAWING NO. |
| APPROVED | Round Hill Estates Unit 2 | E-107 |
| JOB NO. 7322 | Contra Costa County, California | |

END OF DOCUMENT

RH0141

EXHIBIT "9"

FROM : CB RICHARD ELLIS          FAX NO. : 925 251 4688          Nov. 02 2001 02:34PM P2

39306          APR 27 1973          173199-6

When recorded mail to:
Ray Mathews
c/o Round Hill Estates
P.O. Box 415
Danville, CA

EXHIBIT "B"
(Indemnity Agmt)
**INDEMNITY AGREEMENT**

BOOK 6925 PAGE 184

THIS AGREEMENT, made on the ___10___ day of November, 1972, in the County of Contra Costa, State of California.

The parties to this Agreement are JIMMIE R. LYNN and CAROLE J. LYNN, his wife, hereinafter called "Indemnitor" and ROUND HILL ESTATES, a California corporation, hereinafter called "Indemnitee".

Indemnitee has entered into a Deposit Receipt with Indemnitor to sell to Indemnitor certain real property in Contra Costa County, State of California, commonly known as 2349 Royal Oaks Drive, Round Hill, California; being Lot 3, Unit 2, Subdivision 2794, Records of the County of Contra Costa, State of California. Among other provisions, the Deposit Receipt provides that purchasers (Indemnitors herein) agree to hold sellers (Indemnitees herein) free and harmless from any and all claims and demands of every kind and character which may be suffered by persons while occupying or visiting the herein described property by reason of the use, maintenance and operation of the Round Hill Golf and Country Club or the driving range operated in connection therewith, or any other use of the adjoining premises.

Indemnitors acknowledge that they are familiar with the location of said lot in respect to the Round Hill Golf and Country Club course, and that the area of the said club set aside for use of members, servants, employees, guests or invitees as a practice area immediately adjoins the property hereinabove referred to; and they further acknowledge that they know that in the usual and ordinary use of said area, that golf balls from the course and driving range are driven onto said Lot 3, Unit 2 of Subdivision 2794.

IT IS AGREED:

1. JIMMIE R. LYNN and CAROLE J. LYNN, his wife, hereby agree to indemnify ROUND HILL ESTATES, ROUND HILL GOLF AND COUNTRY CLUB, its agents, servants, employees, members, guests and invitees against any and all claims or damages, costs or judgments or actions, arising from any accident or injury or damage whatsoever, against said Round Hill Estates or Round Hill Golf and Country Club, or its agents, servants, employees, members, guests or invitees, in respect to the subject of indemnity herein recited, whether such claims or actions be rightfully or wrongfully brought or filed; and against all costs incurred by Indemnitee herein.

RH0142

BOOK 6925 PAGE 185

In case an action should be filed in respect to the subject of indemnity herein, Indemnitor agrees that they will defend the suit at their own cost and expense; and in default thereof, Indemnitee may employ an attorney of its own selection to appear and defend the action on behalf of Indemnitee, at the expense of said Indemnitor.

2.  The indemnity herein provided for will extend from the date of this Agreement so long as the adjoining property is operated as a golf club and practice area.

Indemnitees agree that this Agreement shall be binding on their heirs, successors and assigns, and further agree that in the event that they shall sell, transfer or otherwise dispose of said property, that they will cause the assignee or purchaser thereof, to sign as Indemnitees, an Agreement on the same terms and conditions as herein contained.

3.  Indemnitees, their heirs, successors and assigns, agree to keep in full force and effect liability insurance in the sum of not less than $ _100,000 #_ to satisfy their obligation hereunder.

4.  If the Indemnitee, in the enforcement of any part of this Indemnity Contract, shall incur necessary expenses or become obligated to pay attorneys fees or court costs, Indemnitors agree to reimburse Indemnitee for such expenses, attorneys fees or costs, within ten (10) days of receiving written notice from Indemnitee of the incurring of such expenses, costs or obligations.

5.  Indemnitor agrees to pay Indemnitee interest at the rate of seven per cent (7%) per annum on any necessary expenses or costs incurred in the enforcement of the indemnity contract or any sums Indemnitee is obligated to pay with respect to the matters to which this indemnity is given, from the date on which expenses or costs are incurred or such sums are paid.

The Indemnitors acknowledge that they have read the foregoing Indemnity Agreement and understand the terms thereof, and that thereafter they signed their names as Indemnitors hereto.

-2-

RH0143

BOOK 6925 PAGE 186

IN WITNESS WHEREOF, the parties hereto have executed this instrument the day and year first above written.

Jimmie R. Lynn

Carole J. Lynn,

                                                    Indemnitor

ROUND HILL ESTATES, a
California Corporation

By _____

Its _____  Pres.

                                                    Indemnitee

RH0144

BOOK 6925 PAGE 187

STATE OF CALIFORNIA)
                   ) ss.
COUNTY OF          )

On this 10th day of November, 1972, before me Ruth D. Rimbach a Notary Public in and for the County of Contra Costa, residing therein, duly commissioned and sworn, personally appeared JIMMIE R. LYNN and CAROLE J. LYNN, his wife, known to me to be the persons described in and whose names are subscribed to the within instrument, Indemnity Agreement, and they acknowledged to me that they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the day and year in this certificate first above written.

RUTH D. RIMBACH
NOTARY PUBLIC · CALIFORNIA
COUNTY OF CONTRA COSTA
My Commission Expires Dec. 7, 1976

_Ruth D. Rimbach_
Notary Public in and for said County of
_____, State of
California.

STATE OF CALIFORNIA)
                   ) ss.
COUNTY OF          )

On this 10th day of November, 1972, before me, WELTON R. CAMPBELL a Notary Public in and for the County of Contra Costa, residing therein, duly commissioned and sworn, personally appeared Harlan S Geldermann known to me to be the President of the corporation that executed the within instrument and the officers who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the day and year in this certificate first above written.

OFFICIAL SEAL
WELTON R. CAMPBELL
NOTARY PUBLIC · CALIFORNIA
PRINCIPAL OFFICE IN
CONTRA COSTA COUNTY
My Commission Expires June 15, 1975

_Welton R. Campbell_
Notary Public in and for said County of
_Contra Costa_, State of
California.

RECORDED AT REQUEST OF
TRANSAMERICA TITLE
INSURANCE CORPORATION
AT 35 Min. Past 6 P.M.
APR 27 1973
OFFICIAL RECORDS OF
CONTRA COSTA COUNTY
W. T. PAASCH
COUNTY RECORDER

FEE $ 6.00

END OF DOCUMENT

RH0145

1  Lee A. Archer (Bar No. 038938)
   larcher@archernorris.com
2  William S. Fiske (Bar No. 246099)
   wfiske@archernorris.com
3  ARCHER NORRIS
   A Professional Law Corporation
4  2033 North Main Street, Suite 800
   Walnut Creek, California  94596-3759
5  Telephone:    925.930.6600
   Facsimile:    925.930.6620
6
   Attorneys for Defendants
7  ROUND HILL COUNTRY CLUB, GREG
   GONSALVES, DAVID PLOTNIK, CAROLE
8  CARLUCCIO, PETE DAVIS, MARVIN B.
   STARR, AND MILLER STARR REGALIA
9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  KENNETH BARKER and LOIS ANNE        Case No.  3:08-CV-02977-SI
    BARKER,
14                                      **[PROPOSED] ORDER DISMISSING
                    Plaintiffs,         PLAINTIFFS' COMPLAINT**
15
            v.                          Date:      Friday, October 3, 2008
16                                      Time:      9:00 a.m.
    ROUND HILL COUNTRY CLUB;            Dept:      10
17  CAROLE CARLUCCIO; GREG              Judge:     Hon. Susan Illston
    GONSALVES; DAVID PLOTNIK; PETE
18  DAVIS; MARVIN B. STARR; MILLER      Complaint Filed:  June 17, 2008
    STARR REGALIA; DOES 1 to 50
19  inclusive,

20                  Defendants.

21

22      Defendants' Motion to Dismiss Plaintiffs' Complaint came on regularly for hearing on

23  October 3, 2008, before Department 10 of the above-entitled Court, the Honorable Susan Illston

24  presiding.

25      After considering the oral argument presented by counsel and the papers filed in support

26  of and in opposition to the motion, and **GOOD CAUSE APPEARING THEREFOR**

27  ///

28  ///

R009501 1/679168-1

[PROPOSED] ORDER DISMISSING PLAINTIFFS' COMPLAINT

1    **IT IS ORDERED**:

2    [   ]   Plaintiffs' complaint fails to state a claim upon which relief can be granted pursuant to

3    Federal Rule of Civil Procedure 12(b)(6), and accordingly the complaint is dismissed with

4    prejudice as to all the defendants: Round Hill Country Club, Carole Carluccio, Greg Gonsalves,

5    David Plotnick, Pete Davis, Marvin B. Starr, and Miller Starr Regalia.

6    [   ]   The complaint and action is dismissed without prejudice and without leave to amend for

7    want of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

8    [   ]   A stay of Plaintiff's federal action is merited due to the pending state court actions

9    between the same parties and which involve the identical facts as those alleged in Plaintiff's

10   federal complaint filed June 17, 2008.

11

12   Dated: _____, 2008

13

14                                              _____

15                                              Honorable Susan Illston

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER DISMISSING PLAINTIFFS' COMPLAINT

1  Lee A. Archer (Bar No. 038938)
   larcher@archernorris.com
2  William S. Fiske (Bar No. 246099)
   wfiske@archernorris.com
3  ARCHER NORRIS
   A Professional Law Corporation
4  2033 North Main Street, Suite 800
   Walnut Creek, California  94596-3759
5  Telephone:    925.930.6600
   Facsimile:    925.930.6620
6
   Attorneys for Defendants
7  ROUND HILL COUNTRY CLUB, GREG
   GONSALVES, DAVID PLOTNIK, CAROLE
8  CARLUCCIO, PETE DAVIS, MARVIN B.
   STARR, AND MILLER STARR REGALIA
9

10                UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13  KENNETH BARKER and LOIS ANNE          Case No.  3:08-CV-02977-SI
    BARKER,
14                                        **PROOF OF ELECTRONIC SERVICE OF**
                Plaintiffs,               **DEFENDANTS' NOTICE OF MOTION TO**
15                                        **DISMISS PLAINTIFFS' COMPLAINT**
                                          **PURSUANT TO FRCP 12(B)(1) AND**
16          v.                            **12(B)(6), MOTION TO DISMISS AND**
                                          **DECLARATION OF WILLIAM S. FISKE**
17  ROUND HILL COUNTRY CLUB;
    CAROLE CARLUCCIO; GREG                Date:      Friday, October 3, 2008
18  GONSALVES; DAVID PLOTNIK; PETE        Time:      9:00 a.m.
    DAVIS; MARVIN B. STARR; MILLER        Dept:      10
19  STARR REGALIA; DOES 1 to 50           Judge:     Hon. Susan Illston
    inclusive,
20                                        Complaint Filed:  June 17, 2008
                Defendants.
21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///
    R0095011/679629-1

                    PROOF OF ELECTRONIC SERVICE

1

**PROOF OF SERVICE**

2

**Name of Action:  Barker v. Round Hill Country Club, et al., U.S. District Court, Northern District of California, Case No. 3:08-CV-02977-SI**

3

4

      I, the undersigned, declare that I am a citizen of the United States and employed in Contra Costa County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 2033 North Main Street, Suite 800, Walnut Creek, California 94596-3759.  On July 10, 2008, I served a copy of the within document(s):

5

6

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT [Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; DECLARATION OF WILLIAM S. FISKE AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS and [PROPOSED] ORDER DISMISSING PLAINTIFFS' COMPLAINT**

7

8

9

10

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

11

12

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below.

13

14

☐    by placing the document(s) listed above in a sealed Overnight envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Overnight agent for delivery.

15

16

☒    by transmitting by electronic transmission the document(s) listed above to the person(s) set forth below.

17

18

Kenneth Barker           Plaintiffs

19

Lois Anne Barker         Phone and Fax: (925) 820-0198

2349 Royal Oaks Drive

20

Alamo, CA 94507

21

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

22

23

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 10, 2008, at Walnut Creek, California.

24

25

_____

26

Tracy L. Pico

27

28

R009501 1/679130-1