IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH BARKER and LOIS ANNE BARKER,<br><br>             Plaintiffs,<br><br>  v.<br><br>ROUND HILL COUNTRY CLUB, *et al.*,<br><br>             Defendants.<br>_____/ | No. C 08-2977 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH LEAVE TO AMEND; DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SANCTIONS** |

The parties have filed several motions which are scheduled for a hearing on October 3, 2008. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument, and VACATES the hearing. The Court also VACATES the case management conference scheduled for October 3, 2008. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss the complaint with leave to amend, DENIES plaintiffs' motion for a default judgment, and DENIES plaintiffs' motion for sanctions. If plaintiffs wish to amend the complaint, they must file an amended complaint no later than **October 7, 2008**.

**BACKGROUND**

On June 17, 2008, plaintiffs Kenneth and Lois Barker filed this lawsuit against defendants Round Hill Country Club, a law firm (Miller, Starr and Regalia), and five individuals connected with either Round Hill or the law firm. Plaintiffs allege a violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The complaint alleges that plaintiffs purchased a residence located at 2349 Royal Oaks Drive in Alamo, California in August 1974. Complaint ¶ 7.

The property was subject to an easement, and plaintiffs allege that they "relied upon the terms, conditions, and legal promises, contained in the Easement when purchasing the premises" in 1974. *Id.* ¶ 9; *see also id.* Ex. 2 (Easement Agreement).[1] The Easement Agreement was entered into between plaintiffs' predecessors-in-interest, Jimmie R. Lynn and Carole R. Lynn, and Round Hill Estates, a California corporation. Fiske Decl. Ex. 8. As memorialized in the Easement Agreement, the Lynns granted Round Hill Estates "those perpetual and exclusive easements and rights of way to construct, operate, maintain, repair, reconstruct, replace and remove at any time, and from time to time [a fence] . . ." located on a strip of land. *Id.* The Lynns granted Round Hill Estates various rights with respect to the fence, such as the right of ingress to and egress from the strip. Under the Easement Agreement, Round Hill Estates ("the Second Party" in the Easement Agreement) agreed, *inter alia*, to "indemnify First Parties against any loss and damage which shall be caused by the exercise of said ingress and egress [upon the strip] or by any wrongful or negligent act or omission of Second Party or of its agents or employees in the course of their employment." *Id.*

The Easement Agreement also states that the Lynns "further agree that nothing [within the Easement Agreement] shall be held to change or modify the Indemnity Agreement dated November 10, 1972 between Jimmie R. Lynn and Carole J. Lynn, his wife, and Round Hill Estates . . ." *Id.* The Indemnity Agreement,[2] in turn, provides:

> Indemnitors acknowledge that they are familiar with the location of [2349 Royal Oaks Drive] in respect to the Round Hill Golf and Country Club course, and that the area of the said club set aside for use of members, servants, employees, guests or invitees as a practice area immediately adjoins [2349 Royal Oaks Drive] . . . and they further acknowledge that they know that in the usual and ordinary use of said area, that golf

---

[1] Exhibits attached to the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co. Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989). However, plaintiffs attached an incomplete copy of the Easement Agreement. Defendants have filed a complete copy of the same document, Fiske Decl. Ex. 8, and the Court will cite to the complete version.

[2] The Indemnity Agreement is dated November 10, 1972, and was publicly recorded. Plaintiff Kenneth Barker filed the Indemnity Agreement as an exhibit in a related state court action. *See* Fiske Decl. Ex. 9. The Court takes judicial notice of the documents attached to the Fiske Declaration. These filings pertain to a number of lawsuits filed by plaintiffs, including two actions currently pending in state court that involve many of the same parties as are involved in this case, and allege the same facts regarding trespassing golf balls. *Kenneth Barker v. Round Hill Country Club et al.*, Case No. MSC07-01488 (Sup. Ct. Contra Costa County), and *Kenneth Barker and Lois Barker v. Round Hill Country Club*, Case No. MSC08-00059 (Sup. Ct. Contra Costa County).

balls from the course and driving range are driven onto [2349 Royal Oaks Drive]." Fiske Decl. Ex. 9. Under the Indemnity Agreement, the Lynns agreed to indemnify and hold Round Hill Estates "free and harmless from any and all claims and demands of every kind and character which may be suffered by persons while occupying or visiting the herein described property by reason of the use, maintenance and operation of the Round Hill Golf and Country Club or the driving range operated in connection therewith, or any other use of the adjoining premises." *Id*. The Easement Agreement states that "all covenants shall apply to and run with the land." Fiske Decl. Ex. 8.

Plaintiffs allege that after their purchase of 2349 Royal Oaks Drive, "for about 22 years plaintiffs lived in peace and harmony with defendant Round Hill Country Club," but that in about 1995, defendants began making changes to the golf course and driving range which resulted in "thousands" of golf balls "trespassing" onto plaintiffs' property. Complaint ¶¶ 11-12. Plaintiffs allege that defendants shortened and "realigned" the driving range, that the driving range is now far too short, and that as a result plaintiffs' premises is "bombarded on a daily basis with driving range golf balls." *Id*. ¶ 12. Plaintiffs allege that the bombardment of golf balls has reduced the value of their property by at least $600,000 since 2006, and they seek treble damages under RICO.

On July 20, 2008, defendants electronically filed a motion to dismiss the complaint for failure to state a claim. On August 5, 2008, plaintiff Kenneth Barker filed a letter with the Court stating that he understood that defendants had electronically filed an answer to the complaint, but that plaintiffs had not been served with a paper copy. On August 6, 2006, defense counsel mailed a copy of the motion to plaintiffs. Plaintiffs' Motion for Sanctions, Ex. 3. On August 18, 2008, plaintiffs filed a "motion for judgment by default: opposition to defendants' motion to dismiss plaintiffs' complaint." On August 25, 2008, plaintiffs filed a motion for sanctions. By their motion, defendants seek to dismiss the complaint for failure to state a claim, or alternatively to stay this action pending the resolution of related state court proceedings. Plaintiffs' motions for default judgment and sanctions assert that defendants did not timely respond to the complaint because plaintiffs were not served with the motion to dismiss on July 20, 2008.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

3

fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

**DISCUSSION**

**I.     Plaintiffs' motions for default judgment and for sanctions**

Plaintiffs assert that default judgment should be entered against defendants because defendants did not serve plaintiffs with defendants' motion on July 20, 2008. Plaintiffs also accuse defense counsel of lying to the Court by filing the proof of service showing that the motion was originally electronically filed. Plaintiffs seek monetary sanctions in the amount of $50,000 against each of defendants' attorneys, as well as plaintiffs' "estimated legal fees" of $3,850.

The Court finds that plaintiffs' motions lack merit. As defendants explain in their oppositions to plaintiffs' motions, defense counsel timely electronically filed their response to plaintiffs' complaint, and believed that it was proper to do so because the docket identified this case as "designated for Electronic Filing." Immediately upon learning that plaintiffs had not in fact received an electronic copy of defendants' motion, defense counsel mailed plaintiffs a copy of the motion. The Court finds that defendants are not in default, plaintiffs have not been prejudiced in any way, and plaintiffs' request for punitive sanctions is wholly improper. Accordingly, the Court DENIES plaintiffs' motions.

**II.    Defendants' motion to dismiss**

Defendants move to dismiss the complaint for failure to state a claim. The complaint alleges a single claim under RICO. Although the basis for the RICO claim is somewhat unclear, plaintiffs'

4

complaint contains this "Summary" of the claim:

> Defendants entered into a legally binding Easement which provided defendants would indemnify plaintiffs from any wrongful or negligent act or omission by defendant or of its employees or agents in the course of their employment.
>
> Defendant committed numerous wrongful, and negligent acts and omissions, by making the premises unsafe, making it unsalable, and reducing the value of the premises by at least $600,000.00 from the 2006 price, via multi thousands of trespassing driving range golf balls bombarding plaintiffs' premises.
>
> Defendants not only refused to indemnify plaintiffs for defendants' wrongful and negligent acts and omissions, defendants operated as an association in fact, corrupt enterprise, via conspiracy and fraud in an illegal scheme to damage and defraud plaintiffs. Thereby, defendants committed multiple civil RICO violations.

Complaint ¶¶ 26-28. The complaint alleges that the "continual bombardment" of plaintiffs' premises with golf balls is a "wrongful or negligent act or omission" under the Easement Agreement, and that defendants are obligated to indemnify plaintiffs. *Id.* ¶ 17.

The complaint identifies four "predicate acts" under RICO: (1) a June 19, 2007 letter from defendant Marvin Starr (of Miller, Starr and Regalia) to plaintiffs stating that "the Board of Directors of the Round Hill Country Club has concluded that it will no longer pursue its futile attempt to find a mutually agreeable resolution to whatever problem may exist with respect to the prevention of practice range balls from landing on your property."; (2) a statement in the same letter that "As such, from here on Round Hill Country Club will, on its own, take such preventative steps as it deems advisable and in its own best interests in the matter."; (3) a July 6, 2007 letter from Mr. Starr stating that "even if it was the case that your property would, in fact, lose some of its present value, the 1973 Fence Easement clearly imposes such a loss on the owner of your property and not the Club."; and (4) a June 13, 2007 letter from Round Hill General Manager Greg Gonsalves stating, "Unless you would like to change your position on this matter we really have nothing further to discuss." Complaint ¶¶ 18-21, Ex. 4-6. The complaint also alleges that "Using U.S. Mail and Interstate Wire, defendants, as persons, set up an enterprise structure association in fact, consisting of the Round Hill Country Club, its President (Carluccio), its previous President (Davis), its General Manager (Gonsalves), its lawyer (Marvin B. Starr), and its law firm (Miller, Starr and Regalia), and its employees and agents. They functioned together as a racketeering organization to engage in a pattern of racketeering activity designed to damage and defraud plaintiff." *Id.* ¶ 22. Finally, the complaint alleges that defendants have repeatedly

5

refused to comply with the Easement Indemnification provisions, "thereby selling the lot under false pretenses and damaging plaintiffs" and that the "Easement was part and parcel of the defendants' conspiratorial scheme to defraud plaintiff." *Id.*

Defendants contend that plaintiffs have not and cannot allege a claim under RICO. Among other things, defendants argue that plaintiffs' allegations hinge upon fictitious indemnification rights. Defendants note that under the Indemnity Agreement, the owner of 2349 Royal Oaks Drive agrees to indemnify Round Hill Golf and Country Club, its agents, servants, employees, members, guests and invitees against "any and all claims or damages . . . arising from any accidents or injury or damage whatsoever," not the other way around as alleged by plaintiffs. The Easement Agreement specifically provides that it does not "change or modify the Indemnity Agreement," and the Easement Agreement's references to indemnification appear to relate primarily to damage which might be caused by ingress or egress or acts otherwise related to the strip of land burdened by the easement.

Plaintiffs' opposition to defendants' motion to dismiss does not contain any legal argument, nor do plaintiffs state how they would amend their complaint if given leave to do so. The Court agrees with defendants that plaintiffs have not alleged a RICO claim based upon an alleged violation of the Easement and Indemnity Agreements; the plain language of those documents does not support plaintiffs' allegations. Further, the "predicate acts" identified by plaintiffs – the letters from Mr. Starr and Mr. Gonsalves – are not the types of "predicate acts" to state a claim under RICO. "Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact." *Blount Financial Servs., Inc. v. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987) (affirming dismissal of RICO claim because "[s]ending a financial statement which misconstrues the prime rate provided by the terms of the contract may breach the contract but it does not amount to a RICO mail fraud cause of action.").

The Court is extremely skeptical that plaintiffs can allege a RICO claim based upon the allegedly trespassing golf balls. However, in light of the fact that plaintiffs are representing themselves, the Court will grant plaintiffs leave to amend the complaint. If plaintiffs wish to amend the complaint, they must allege facts to establish each separate element of a RICO claim – "(1) conduct (2) of an enterprise (3)

6

through a pattern (4) of racketeering activity." *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 481-82 (1985); *see also Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (1983) (discussing elements in greater detail); *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980) (discussing mail and wire fraud). Conclusory statements are not enough. Plaintiffs must plead their allegations with particularity, and must include specific factual allegations about each defendant's involvement in the alleged scheme. As defendants note, if plaintiffs are alleging that defendants schemed to defraud them into purchasing their residence, there are no allegations supporting such a scheme, and the "predicate acts" from 2007 could not possibly support such a scheme. The Court cautions plaintiffs to carefully review the cases cited above, and the facts of this case, in deciding whether to amend the complaint. If plaintiffs wish to amend the complaint, they must file the amended complaint no later than **October 7, 2008**.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss without leave to amend, and DENIES plaintiffs' motions for default judgment and sanctions. (Docket Nos. 4, 7 and 12).

**IT IS SO ORDERED.**

Dated: September 30, 2008

SUSAN ILLSTON
United States District Judge

---

[3] The Court notes that plaintiffs are also pursuing several state court actions against many of the same defendants over the same issues, and the Court is of the view that the state court provides the proper forum for resolving all of plaintiffs' claims.

7